UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | * |  |
|---|---|---|
|  | * |  |
|  | * |  |
|  | * | Civil Action No. 16-cv-12653-ADB (Direct); |
| In re INTUNIV ANTITRUST | * | 16-cv-12396-ADB (Indirect) |
| LITIGATION | * |  |
|  | * |  |
|  | * |  |
|  | * |  |

**MEMORANDUM AND ORDER ON REQUESTS TO COMPEL
PRODUCTION OF VARIOUS WITHHELD AND REDACTED DOCUMENTS**

BURROUGHS, D.J.

      This case involves allegations that Defendants settled patent litigation concerning the

ADHD drug Intniv on anticompetitive terms.  Plaintiffs claim that Defendants engaged in sham

litigation over Intuniv, and then settled that litigation on terms that delayed competition for both

brand Intuniv, manufactured by Shire, and generic Intuniv, manufactured by Actavis.  Plaintiffs

bring claims on behalf of putative classes of direct and indirect purchasers of brand and generic

Intuniv.

      Before the Court are Plaintiffs' requests to compel production of various documents that

Defendants Actavis and Shire have withheld or produced with redactions under claims of

attorney-client privilege, work product protection, or irrelevance.  Direct Purchaser Plaintiffs

filed an August 7, 2018 letter concerning Actavis' productions [ECF No. 159],[1] and Actavis

responded on August 21, 2018 [ECF Nos. 173, 175].  The Direct Purchaser Plaintiffs also filed

an August 14, 2018 letter concerning Shire's productions [ECF Nos. 164, 166], which they

---

[1] ECF citations are to the Direct Purchaser Plaintiffs docket, <u>FWK Holdings LLC v. Shire PLC
(Direct Purchaser Antitrust Class Action Complaint)</u>, 16-cv-12653, unless otherwise indicated.

updated on August 22, 2018 [ECF Nos. 172, 174]; Shire responded on September 7, 2018 [ECF Nos. 181, 182]; and Direct Purchaser Plaintiffs filed a reply on September 14, 2018 [ECF No. 188]. The Indirect Purchaser Plaintiffs have joined the requests at issue. See Picone v. Shire U.S. Inc. (Indirect Purchaser Antitrust Class Action), 16-cv-12396 (D. Mass.), ECF Nos. 126, 131.

Plaintiffs claim that Actavis has improperly withheld or redacted four categories of responsive, non-privileged documents: (1) generic operations meeting minutes and charts, containing projected launch dates and other business information; (2) documents concerning business or financial matters, such as product development and testing; (3) documents containing information Actavis shared with third parties without an exception to the third-party privilege waiver rule; and (4) documents for which Actavis' privilege log entries provide overly limited descriptions. [ECF No. 159 at 1].

Plaintiffs also claim that Shire has improperly withheld or redacted three categories of responsive, non-privileged documents: (1) documents containing business or financial information, including launch dates, pre-settlement and post-settlement launch plans, and meeting agendas and minutes; (2) drafts of press releases and financial information; and (3) a document containing information that Shire shared with a third party without an exception to the third-party privilege waiver rule. [ECF Nos. 166 at 2, 174 at 2].

Plaintiffs request that the Court order Actavis and Shire to produce documents in these categories, or alternatively order *in camera* review of some or all of the associated documents. For the reasons explained below, Plaintiffs' requests with respect to Actavis are <u>DENIED</u> and their requests with respect to Shire are <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.

## I. DISCOVERY REQUIREMENTS AND PRIVILEGE LAW

Nonprivileged documents that are responsive to reasonable requests for production and relevant to any party's claim or defense must, as a general matter, be produced.  <u>See</u> Fed. R. Civ. P. 26(b)(1).  The Federal Rules require parties to "produce documents as they are kept in the usual course of business" or to "organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(2)(E)(i).  In this action, the parties have produced documents pursuant to a protective order that allows them to redact non-responsive, confidential information in documents that elsewhere contain responsive information.  The protective order also allows the parties to withhold confidential documents that do not contain responsive information, and which would otherwise be produced only to ensure document-family completeness.  [ECF No. 99 ¶ 28].  The parties are not obligated to ensure complete consistency in redacting non-responsive information, nor are they obligated to log redactions of non-responsive information, but the protective order does not permit redaction of any responsive information.  <u>See id.</u>

Under the federal rules and consistent with common law privileges, litigants are permitted to redact or withhold documents based on applicable privileges.  A party that withholds otherwise responsive documents under a claim of privilege must expressly assert the privilege claimed and produce a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed" and provides enough information for "other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981).  "By safeguarding communications between attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present

legitimate arguments when litigation arises." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011). "The privilege is not limitless, however, and 'courts must take care to apply it only to the extent necessary to achieve its underlying goals.' . . . '[T]he attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth.'" Id. at 23–24 (quoting XYZ Corp. v. United States (In re Keeper of Records), 348 F.3d 16, 22 (1st Cir. 2003)). "The party invoking the privilege must show both that it applies and that it has not been waived." Lluberes, 663 F.3d at 24 (citing XYZ Corp., 348 F.3d at 22.).

"The dimensions of the privilege itself are reasonably well honed. The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." XYZ Corp., 348 F.3d at 22. The privilege may extend to a third party who "helps the lawyer give legal advice," if the third party is "'necessary, or at least highly useful, for the effective consultation between the client and the lawyer.'" Lluberes, 663 F.3d at 24 (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)); see Lynx Sys. Developers, Inc. v. Zebra Enter. Sols. Corp., No. 15-12297-GAO, 2018 WL 1532614, at *2 (D. Mass. Mar. 28, 2018) (holding that the third party must be "nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications" and the communication must be "for the purpose of obtaining legal advice from the lawyer" (quoting Cavallaro v. United States, 284 F.3d 236, 247, 249 (1st Cir. 2002))). Courts also recognize that the privilege will not be waived when confidential information is communicated with third parties who share a common legal interest, so long as all parties are represented by counsel, and the information is communicated among privileged persons for the purpose of their common legal enterprise. See Cavallaro v. United States, 153 F. Supp. 2d 52, 62 (D. Mass. 2001), aff'd, 284 F.3d 236 (1st Cir.

2002) (citing <u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 447

(S.D.N.Y. 1995)).  Otherwise, when "privileged communications are disclosed to a third party,

the disclosure destroys the confidentiality upon which the privilege is premised."  <u>XYZ Corp.</u>,

348 F.3d at 22.

## II.  ACTAVIS DOCUMENTS

### a.  Redacted "Business Information"

Plaintiffs claim that Actavis has produced a significant quantity of documents containing

relevant business information with excessive redactions.  To illustrate their argument, Plaintiffs

provide exhibits, including several versions of minutes from Actavis' generic operations

meetings that were produced with redactions, excel sheets that track Actavis' generic drug

portfolio with redactions for projected launch dates and input from attorneys, and other business

documents with similar information redacted.  [ECF Nos. 159-2, 159-3, 159-4, 159-5].

According to Actavis, it redacted information pursuant to the attorney-client privilege and in

accordance with the protective order's allowance for redacting irrelevant, confidential

information.[2]  [ECF No. 173].

Actavis maintains that its redactions based on the attorney-client privilege were for legal

advice that was circulated within Actavis.  Confidential advice from an attorney does not lose its

privileged character merely because it affects business plans or is conveyed within a document

that also has non-privileged information.  <u>See</u> <u>Crane Sec. Techs., Inc. v. Rolling Optics, AB</u>, 230

F. Supp. 3d 10, 21–22 (D. Mass. 2017) ("The fact that communications are between non-lawyers

does not per se waive the privilege."); <u>United States v. Windsor Capital Corp.</u>, 524 F. Supp. 2d

---

[2] In some instances, Actavis redacted projected launch dates for drugs other than generic Intuniv within non-privileged communications and mistakenly indicated that the redaction was for both relevance and privilege.  Actavis intended such redactions to be on relevance grounds only. [ECF No. 173 at 5 n. 6].

74, 81 (D. Mass. 2007) (A communication primarily or predominantly for the purpose of legal advice does not lose its privileged character "by reason of the fact that it also dealt with nonlegal matters."). The attorney-client privilege redactions at issue primarily concern information communicated under a header labeled "legal" or "legal notes" and appear to conceal legal analysis rendered by Actavis attorneys.[3] Actavis has demonstrated that the privilege redactions in the business documents at issue permissibly conceal confidential legal advice and were proper.

Actavis has also redacted information concerning generic drugs that are not the subject of this litigation because it considers that information confidential and irrelevant. Plaintiffs claim that business documents that Actavis has produced with less substantial redactions show that the redacted business information in other documents is relevant, but they do not adequately explain what relevant information they are referring to. Plaintiffs also advance two arguments as to why they need information about all generics in Actavis' portfolio. First, Plaintiffs argue that they need to demonstrate that Actavis rarely, if ever, launches generic drugs "at risk," but this argument runs headlong into the fact that Actavis has already provided the information Plaintiffs need to make that argument through an interrogatory response. See [ECF No. 173 at 6]. Second, Plaintiffs claim that information about other Actavis generics is "highly relevant to Actavis' anticipated defense that it was not a pay-for-delay deal but some other reason that caused Actavis to delay the launch of its generic Intuniv." [ECF No. 159-1 at 3]. Although the parties failed to discuss this issue prior to Plaintiffs filing their letter with the Court, Actavis appears willing to

---

[3] Plaintiffs point out that Actavis produced one iteration of generic operations meeting minutes without redacting the text under its "legal" headers, but that unredacted text, which consists of updates about the status of litigations and advice about the terms of settlement agreements, is irrelevant to this case. The undredacted text could also arguably have been properly redacted as privileged, assuming the privilege was not waived. See [ECF Nos. 159 at 4–5, 159-1 at 4–5].

resolve this issue through a stipulation.  <u>See</u> [ECF No. 173 at 6].[4]  Considering that the

information at issue relates to Actavis' generic portfolio generally, as opposed to the generic at

issue here, that Actavis has already provided un-redacted launch date information for the generic

relevant to this litigation (guanfacine ER), and that Plaintiffs' asserted rationales for needing the

information are unpersuasive, Actavis has shown that it properly redacted confidential business

information associated with generics other than Intuniv.

### b.  Withheld "Business Information"

Plaintiffs next claim that Actavis has withheld communications simply because in-house

counsel were copied and that it logged its privilege assertions in insufficient, boilerplate terms.

"The attorney-client privilege protects communications between corporate officers and in-house

counsel," but "the privilege does not apply when in-house counsel is engaged in 'nonlegal

work.'"  <u>Windsor Capital</u>, 524 F. Supp. 2d at 81 (citing <u>Upjohn</u>, 449 U.S. at 389–90; <u>Burlington

Indus. v. Exxon Corp.</u>, 65 F.R.D. 26, 33 (D. Md. 1974)).

The Court finds no indication that Actavis is using the fact the attorneys were copied on

business documents to improperly shield documents from production.  It can be difficult to

describe the nature of documents that are withheld "in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess" the privilege

claimed.  Fed. R. Civ. P. 26(b)(5)(ii).  For most documents where Actavis has asserted a

privilege, its privilege logs provide document type, family relationship (i.e., email or

attachment), date, information on all persons who appear in the from, to, cc, and bcc fields, the

privilege asserted, and a description of the document.  Plaintiffs object to descriptions that they

---

[4] Going forward, the parties should meet and confer regarding stipulations or discovery
mechanisms that might negate their need for documents rather than making relevance arguments
to the Court in the first instance.

claim suggest that withheld documents do not reflect legal advice or that are too skimpy to allow Plaintiffs to assess the privilege such as, "Email string requesting and rendering legal advice of Sweet, Andrea J. ([in-house counsel]) regarding product launch" and "Email string rendering legal advice from Sweet, Andrea J. ([in-house counsel]) regarding product sales compiled in anticipation of Intuniv patent litigation." [ECF Nos. 159-6, 159-7]. These document-specific privilege assertions are not, as Plaintiffs contend, "boilerplate," and they contain sufficient information about the basis for the assertion of privilege. See Burlington N. & Santa Fe Ry. Co. v. District Court, 408 F.3d 1142, 1147 (9th Cir. 2005) ("Rule 26 clarifies that a proper assertion of privilege must be more specific than a generalized, boilerplate objection."). Plaintiffs' argument that documents concerning topics such as product development, testing, and sales should not be privileged is unpersuasive, particularly considering the realities of the pharmaceutical industry. Given the explanations provided in Actavis' privilege logs, the process that Actavis undertook to review and log privileged documents, and the importance and complexities of legal compliance within Actavis' business, Actavis has demonstrated that it properly withheld the documents at issue.

### c. Information Shared with Third Parties

Plaintiffs claim that Actavis has improperly withheld documents that it shared with third parties and drafts of documents where the final versions were shared with third parties. Specifically, Plaintiffs claims that Actavis cannot maintain its privilege claims over: (1) otherwise privileged information that Actavis shared in connection with its 2012 merger with Watson, and (2) documents in the custody of Actavis' in-house counsel, David Buchen, including drafts of settlement agreements for the underlying litigation. [ECF No. 159-1 at 7–10].

With respect to communications among Actavis' attorneys, third parties' attorneys, and non-lawyers in connection with Actavis' merger with Watson, see [ECF Nos. 159-8, 159-9, 159-

10, 159-11], the parties dispute whether the common interest doctrine applies. The common interest doctrine does not create an independent privilege, but rather avoids waiver of the attorney-client privilege when information is shared in confidence by a represented party with an attorney for a third party to further a common legal interest. See Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 870 N.E.2d 1105, 1110 (Mass. 2007). The proponents of the common interest protection must establish that the doctrine applies to the circumstances at issue. See FM Generator, Inc. v. MTU Onsite Energy Corp., No. 14-14354-DJC, 2016 WL 8902603, at *7 (D. Mass. Aug. 25, 2016); Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 93 (D. Mass. 2002)). "[P]rivileged information disclosed during a merger between two unaffiliated businesses falls within the common interest doctrine." FM Generator, 2016 WL 8902603, at *7; see also Cavallaro, 153 F. Supp. 2d at 62 ("The weight of the case law suggests that, as a general matter, privileged information disclosed during a merger between two unaffiliated businesses would fall within the common-interest doctrine.").

Plaintiffs object to redactions in several email chains that begin with the same July 25, 2012 email from the Actavis in-house attorney responsible for overseeing patent litigation and to the general counsels for Actavis and Watson, among others. The July 25 email requested Watson's consent to launch guanfacine ER tablets "at risk" if Actavis managed to obtain a favorable court decision, emphasized the confidential nature of the information being shared, and attached a "litigation summary." [ECF No. 159-8, 159-9].[5] The redactions to the email chains that begin with the July 25, 2012 email appear to conceal only legal advice and analysis, and Actavis has explained that the legal analysis was of consequence and of common interest to

---

[5] ECF No. 159-9 is a log of partially redacted documents that relate to subject matter of the July 25 email, and ECF No. 159-11 is yet another example of one of the email chains. Actavis has shown that all of the documents exhibited by Plaintiffs on this topic were properly redacted.

Actavis and Watson because of their merger plans. Based on those facts, Actavis has shown that it properly redacted the emails sent to and from counsel for Watson, as allowed by the common interest doctrine.

In addition to the redacted email chains, Actavis has withheld a July 25, 2012 Word document sent from Actavis to Watson that it describes as a "memorandum conveying legal advice . . . regarding Intuniv patent litigation . . . in connection with Actavis-Watson merger." For the same reasons that the email chains in ECF No. 159-9 were properly redacted, Actavis has shown that the memorandum was properly withheld.

Plaintiffs argue that, even assuming the common interest doctrine could apply to the July 25, 2012 email, memorandum and the subsequent communications among Actavis, Watson, and their attorneys, the attorney-privilege was waived because the information was also shared directly with a non-lawyer from Deutsche Bank. Deutsche Bank was, however, a party to the merger and a manager and de facto owner of Actavis at the time of the merger. The Court concludes that privileged information shared among attorneys for two merging parties can also be shared with a manger and de facto owner of one of the merging parties without running afoul of the common interest doctrine. See Crane, 230 F. Supp. 3d at 22; Restatement (Third) of the Law Governing Lawyers § 76 cmt. d (Am. Law Inst. 2000) (noting that the common interest doctrine permits "any member of a client set—a client, the client's agent for communication, the client's lawyer, and the lawyer's agent . . . [to] exchange communications with members of a similar client set" provided that the clients are represented and the communication is made for the purpose of communicating with a privileged person).

With respect to documents in the custody of Actavis' in-house counsel that Actavis has withheld as privileged, see [ECF Nos. 159-12, 159-13], Actavis has explained that the

documents are stand-alone draft settlement agreements and other documents that reflect

confidential legal advice. That the final version of a settlement agreement will necessarily be

shared with an adverse party and at that point will no longer be privileged, does not mean that

every draft of a settlement agreement is not privileged. See infra Section III.b (discussing draft

documents). To hold otherwise would infringe upon the ability of attorneys to work in a

confidential, iterative process to reach a final settlement proposal that meets their clients' needs

without creating a trail of discoverable settlement drafts that could reveal sensitive client

information and legal advice. Actavis has demonstrated that the documents at issue were

properly withheld.

### d. Privilege Logs

For the reasons described above in relation to Plaintiffs' claim that Actavis has

improperly withheld business documents, the Court finds that Actavis' privilege logs were

sufficient, with the possible exception of one entry for a document that Actavis has agreed to

produce. See [ECF No. 159-13 (log entry for ACTAVIS-INT-PRIV_000162)].

### III. SHIRE DOCUMENTS

### a. "Non-Legal" Advice, Communications Copying Attorneys, and Communications Collecting Historical Documents at an Attorney's Request

As the Supreme Court noted nearly forty years ago, "In light of the vast and complicated

array of regulatory legislation confronting the modern corporation, corporations, unlike most

individuals, 'constantly go to lawyers to find out how to obey the law.'" Upjohn, 449 U.S. at

392 (1981) (quoting Bryson P. Burnham, The Attorney–Client Privilege in the Corporate Arena,

24 Bus. Law. 901, 913 (1969)). Just as they did a half century ago, corporate employees still go

to lawyers for legal advice, and those communications may lead to the dissemination of legal

advice or the collection of information at the attorney's request, which will also be privileged.

The critical inquiry for determining whether the attorney-client privilege applies is whether the communication was made in confidence and primarily or predominantly for the purpose of obtaining or disseminating legal advice.  Windsor Capital, 524 F. Supp. 2d at 81 (citing City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 9 (D. Mass. 2000)); see also Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc., 892 F.3d 1264, 1267 (D.C. Cir. 2018) ("[T]he attorney-client privilege applies to communications between corporate employees and a corporation's counsel made for the purpose of obtaining or providing legal advice"); Crane, 230 F. Supp. 3d at 21–22 (communication between non lawyers may still be privileged); Roth v. Aon Corp., 254 F.R.D. 538, 541 (N.D. Ill. 2009) (explaining that deciding what information should be included in an SEC filing to ensure compliance with the law is a legal concern); Bank Brussels Lambert, 160 F.R.D. at 442 ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.").  When employees communicate with in-house counsel for the purpose of obtaining advice about what they must disclose in regulatory filings, the interpretation of contracts, the status and likely outcome of litigations, or the company's compliance with antitrust laws, the employee and the company, to which the privilege belongs, will generally expect those communications to be confidential.  See Upjohn, 449 U.S. at 389 ("[P]rivilege 'is founded upon the necessity . . . of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.'" (quoting Hunt v. Blackburn, 128 U.S. 464, 470 (1888)).  Although a corporation that uses its in-house counsel for non-legal "[b]usiness advice, such as financial advice," will not be permitted to inoculate that non-legal advice from discovery, communications with in-house counsel for legal

advice are privileged just as those with outside counsel are.  See Pacamor Bearings, Inc. v.
Minebea Co., 918 F. Supp. 491, 511 (D.N.H. 1996); Windsor Capital, 524 F. Supp. 2d at 81.

Plaintiffs claim that Shire has improperly withheld or over-redacted documents
containing relevant business and financial information, including information about earnings
releases, business presentations, long-range plans, and Intuniv.  Plaintiffs first argue that Shire's
privilege log entries for more than seventy documents, some of which have been produced with
redactions, suggest that Shire is withholding relevant financial and business information.  See
[ECF Nos. 172-2, 172-3].  Shire has explained that nearly half of these documents concern draft
securities filings that were sent from or to attorneys who had responsibility for reviewing or
editing SEC filings in a legal capacity.  [ECF No. 181 at 4].  Twenty-three documents are other
communications with in-house counsel for the purpose of obtaining advice related to a range of
matters including settlement negotiations, advice concerning intellectual property law, and
talking points related to legal issues.  Id. at 4–6.  Six documents have been produced almost in
their entirety but contain legal advice such as "met with Legal and we were told [redacted]," six
documents are communications in which non-lawyers convey communications from a Shire
attorney, and five documents were produced with redactions of legal advice that Shire
determined was provided by Shire attorneys who did not author the documents.  Id. at 6–7.
Plaintiffs also claim that Shire's privilege logs and productions suggest that Shire is over-
redacting communications that largely do not involve lawyers, see [ECF No. 172-4], but Shire
has explained that the emails in this category, like those discussed above, reflect attorneys'

advice.[6]  Shire has demonstrated that all of the communications that Plaintiffs claim were for

non-legal advice or that merely copied attorneys were properly withheld or redacted.

Plaintiffs next assert that Shire has improperly withheld non-privileged, historical

documents that were collected in connection with the underlying patent litigation simply because

they were requested by an attorney.  [ECF Nos. 172 at 5, 172-5].  Historical documents do not

become privileged simply because they are requested by or sent to an attorney in connection with

litigation.  See Pacamor Bearings, 918 F. Supp. at 511 ("Attachments which do not, by their

content, fall within the realm of the privilege cannot become privileged by merely attaching them

to a communication with the attorney." (citation omitted)).  An attorney's selection of documents

is, however, protected by the attorney work product doctrine where that selection is based upon a

legal judgment and is not intended to be conveyed to an adverse party.  See In re San Juan

Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1018 (1st Cir. 1988) (holding that the document

selection process comprises opinion work product where the attorney's selection is never meant

to see the light of day); Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985) (selection and

compilation of documents by counsel in preparation for pre-trial discovery may fall within

opinion work product protection).

Here, Shire has already produced all documents that were disclosed in the underlying

patent litigation, but it has not represented that Plaintiffs have received a historical version of all

the attachments listed in ECF No. 172-5, which it claims are covered by the work product

protection.  Shire cannot shield historical documents from discovery simply because the only

---

[6] Shire claims that twenty-five of the documents listed in ECF No. 172-4, which Plaintiff suggest concern business information, relate to the collection of documents for the underlying patent litigation.  [ECF No. 181 at 8].  Communications that concern the collection of information for a litigation are properly protected by the attorney-client privilege, and Shire has demonstrated that it properly withheld or redacted the documents listed in ECF No. 172-4.

available version was attached to a privileged communication. Shire has not shown that the historical versions it did not produce will reveal an attorney's opinion. Shire shall therefore produce every historical attachment listed in ECF No. 172-5 that is independently responsive to Plaintiffs' requests and for which no substantially identical historical document has been produced in this litigation.[7]

### b. Drafts of Press Releases and Financial Information

Plaintiffs challenge withheld and redacted draft press releases, securities filings, and associated documents that were drafted in whole or in part by Shire attorneys. [ECF No. 172-7]. There is disagreement among courts as to the circumstances under which draft press releases, securities filings, and other documents that will eventually be disclosed to third parties are privileged. See 1 McCormick On Evidence § 91 (7th ed. 2016). Here, the documents at issue required significant legal judgement to draft and revise, and most relate to disclosures in regulatory filings and public statements about litigations with obvious prospective legal effects, as evidenced by this action. In these circumstances, Shire was well-advised to obtain confidential legal advice and to involve its in-house attorneys in drafting the documents at issue. See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984) (finding confidentiality was intended where drafts reflected requests for legal advice and were not distributed). Further, based on Shire's representations and the date of the documents at issue, Shire has demonstrated that they were not yet final. Shire has demonstrated that these documents were privileged and were properly withheld or redacted.

---

[7] Substantially identical means a copy of the document that has no substantive difference as compared to the version associated with the privilege log entry in ECF No. 172-5, but a substantially identical document may have differences in metadata or markings that were caused by its collection for counsel.

### c. Information Shared with Third Parties

The parties last dispute concerns a redacted email sent from a Shire attorney to Peak Consulting Jury Consultant David McNeff that relates to the underlying Intuniv litigation. [ECF No. 172-8]. Considering Mr. McNeff's occupation and the non-redacted text of the email chain in question, Shire has demonstrated that the redacted email was necessary or highly useful to the Shire attorney's provision of legal advice and was made for that purpose.

## IV. CONCLUSION

For the reasons explained above, Plaintiffs' requests for relief with respect to Actavis' document productions are <u>DENIED</u>. Plaintiffs' requests for relief with respect to Shire's document productions are <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>. Shire shall produce all independently responsive historical document listed in ECF No. 172-5 for which a substantially identical document has not yet been produced in this action. The remainder of Plaintiffs' requests with respect to Shire's productions are denied.

**SO ORDERED.**

December 10, 2018

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE