## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ---------------------------------------------------------- : | |
| : | 16-cv-12396-ADB (Indirect) |
| : | 16-cv-12653-ADB (Direct) |
| : | |
| In re INTUNIV ANTITRUST LITIGATION : | **REDACTED PUBLIC VERSION** |
| : | |
| This Document Relates To: *All Actions* : | **LEAVE TO FILE UNDER SEAL** |
| : | **GRANTED APR. 10, 2020 (DPP** |
| : | **DKT. NO. 408; IPP DKT. NO. 299)** |
| : | |
| ---------------------------------------------------------- : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE***

**NO. 23 TO PRECLUDE ARGUMENT OR EVIDENCE BASED UPON DEFENDANTS' INVOCATION OF ATTORNEY-CLIENT PRIVILEGE**

**AND**

**NO. 24 TO PRECLUDE ASSERTION OF A PRIVILEGE WAIVER BASED UPON DEFENDANTS' STATEMENTS TO ONE ANOTHER AND THE PUBLIC**

Defendants Shire LLC and Shire US, Inc. ("Shire") and Actavis Elizabeth LLC, Actavis LLC, and Actavis Holdco U.S., Inc. ("Actavis") (collectively "Defendants") submit this joint Memorandum of Law in support of their Motions *in Limine* to preclude Plaintiffs from: (i) introducing argument or evidence at trial that seeks to use Defendants' invocations of the attorney-client privilege to draw negative inferences in front of the jury; and (ii) arguing that Defendants waived the attorney-client privilege by Defendants or their counsel making generalized statements to each other or the public about, *inter alia*, the underlying merits of their claims or defenses in the patent litigation between them or the legal implications of proposals leading to, and terms of, the settlement of the patent litigation.

## BACKGROUND

Plaintiffs have intimated a trial strategy to elicit adverse inferences against Defendants based merely on the fact and timing of certain privileged communications between Shire personnel and their outside counsel.  For example, Plaintiffs have attempted to use the occurrence of such privileged communications – and descriptions of them contained on privilege logs that Plaintiffs have gone so far as to mark as potential trial exhibits, *see* fn. 11, *infra* – to:

- Smear Shire and its 2014 post-settlement considerations of launching an Intuniv authorized generic ("AG") ████████████████ and ███████████████████████████

- Question the intentions of Defendants' negotiations of provisions of the Settlement Agreement[2] ████████████████████████████████████████ ████████████████████████████████████████████████████████

---

[1] *See* Declaration of Alicia Rubio-Spring in Support of Motions *In Limine* and Related Filings submitted herewith ("Rubio-Spring Decl."), Ex. 238 (Excerpts from Defendants' Rule 56 Statement of Undisputed Material Facts Including Plaintiffs' Response, dated Nov. 22, 2019), ¶¶ 67, 102, 112, 121, 144, 166; Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 355), pp. 9-10.

[2] References herein to the "Settlement Agreement" refer to the Settlement and License Agreement by and among Shire LLC, Supernus Pharmaceuticals, Inc., Amy F.T. Arnsten, Ph.D., Pasko Rakic, M.D., Robert Hunt M.D., and Actavis, Inc., Watson Laboratories, Inc.-Florida, Watson Pharma, Inc., ANDA, Inc., Actavis Elizabeth LLC, Actavis LLC.

███████████████████████████████████████████████████████████

Plaintiffs' arguments necessarily rely upon negative inferences drawn from the mere fact that attorney-client communications occurred and that Defendants have protected the substance of those privileged communications from disclosure. Defendants' privilege log entries are unchallenged and attempts to draw negative inferences from such proper privilege assertions are impermissible under law. If permitted, such negative inferences would mislead the jury and undermine the protections of the attorney-client privilege.[4]

In addition, Plaintiffs may advance arguments that Defendants' conduct constituted a subject matter waiver of the attorney-client privilege merely by commenting on the existence of the underlying ANDA litigation between Defendants, noting their respective beliefs that █████ ████████████ and discussing ████████████████████████████████████████ ██████████████████████████████████████████. The law is clear that such commentary is not made with an expectation of confidentiality and is, therefore, not privileged to begin with. The disclosure of these non-privileged statements thus cannot possibly result in the waiver of privilege as to communications that are protected. Moreover, even if the statements did arise from otherwise confidential attorney advice, characterizations of an attorney's general, overall conclusions are not the proper basis for a subject matter waiver. Otherwise, no conversations between parties about the merits of a case could ever comfortably occur, and settlement negotiations would be severely chilled.

---

[3] Rubio-Spring Decl., Ex. 238 (Excerpts from Defendants' Rule 56 Statement of Undisputed Material Facts Including Plaintiffs' Response, dated Nov. 22, 2019), ¶ 67; Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 355), pp. 39-40.

[4] It would be all the more unduly prejudicial to allow such an inference, as it would inevitably prejudice Actavis as well in the eyes of the jury, even when no privileged communications involving Actavis are at stake.

**ARGUMENT**

**I.   The Court Should Not Permit Plaintiffs To Draw Or Suggest Adverse Inferences Based On Defendants' Invocation Of The Privilege.**

Federal courts, including the First Circuit,[5] have long held that a court "cannot draw adverse inferences from the proper assertion of an attorney-client privilege." *Astra Pharm. Prods. v. Beckman Instruments, Inc.*, No. CA 79-1445-T, 1983 U.S. Dist. LEXIS 18289, at *11 (D. Mass. Mar. 24, 1983), *aff'd*, 718 F.2d 1201 (1st Cir. 1983); *accord Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) (per curiam) ("[A] client asserting the privilege should not face a negative inference about the substance of the information sought" from their lawyer).[6] "Disallowing adverse inferences is a logical extension of the attorney-client privilege since allowing a negative inference would in many cases oblige the client to produce the privileged materials." *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 566-67 (N.D. Ill. 1996). The same is true for attorney work product. *See United States v. One Tract of Real Prop.*, 95 F.3d 422, 428 (6th Cir. 1996) ("[A] court should not draw adverse inferences . . . if the work product privilege protects the information sought.").

For that reason, courts have prohibited parties from asking questions or introducing evidence in front of a jury that are designed to compel Defendants to assert attorney-client privilege. *See, e.g., Sharer v. Tandberg, Inc.*, No. 1:06cv626 (JCC), 2007 U.S. Dist. LEXIS

---

[5] Federal law governs the privilege and work product issues here.  Fed. R. Evid. 501; *Gargiulo v. Baystate Health Inc.*, 279 F.R.D. 62, 64 (D. Mass. 2012) ("[C]ourts have repeatedly applied the federal approach to privilege to both federal and state claims where both are included in the litigation.").

[6] *See also Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 479 n.25 (3d Cir. 2005) (rejecting argument that assertion of privilege over trademark search "constitutes evidence of [defendant's] bad faith" because "***it is improper to draw an inference of bad faith from the assertion of the attorney-client privilege***") (emphasis added); *Knorr-Bremse Sys. Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc) ("[C]ourts have declined to impose adverse inferences on invocation of the attorney-client privilege."); *Whitney v. City of Milan*, No. 1:09-cv-01127-JDB-egb, 2014 U.S. Dist. LEXIS 186463, at *3-5, n. 2 (W.D. Tenn. Feb. 27, 2014) ("There is . . . an abundance of authority holding that an adverse inference cannot be drawn from invocation of [] privilege") (internal citations omitted) (emphasis removed).

22391, at *3-6 (E.D. Va. Mar. 27, 2007) ("Accordingly, this Court sees no reason to allow . . . question[s] . . . regarding . . . consultations with counsel."); *Beraha v. Baxter Healthcare Corp.*, No. 88 C 9898, 1994 U.S. Dist. LEXIS 12523, at *8-9 (N.D. Ill. Sep. 2, 1994) (motion *in limine* granted where "the only purpose for which [plaintiff sought] to admit evidence of the fact that [attorney-client] communications occurred is to enable the jury to draw an adverse inference therefrom," which "is exactly what is prohibited").   Plaintiffs' attempts to undermine the credibility of Shire's analysis of a potential Intuniv AG launch in 2014 ████████████ ███████████████████████████████████████████ is precisely the type of speculation courts have prevented counsel from inviting.

Similarly, parties are generally precluded from commenting on or calling attention to meetings and consultations with counsel where doing so invites the jury to speculate about the contents of those conversations and draw adverse inferences from them.  *See Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 U.S. Dist. LEXIS 60447, at *3-9, 19-21 (N.D. Ill. Apr. 29, 2013) (adverse inference from attorney-client communications "is unfounded and highly speculative," and finding "no relevant basis to elicit evidence or make argument regarding [defendant's] consultation with or retention of lawyers" and thus prohibiting plaintiff from "ask[ing] any question which she reasonably expects will cause Defendants to assert the attorney-client privilege").[7]  Plaintiffs' evident intention to seek to undermine the credibility of Shire's analysis of a potential Intuniv AG launch or the impetus for proposed changes to drafts of

---

[7] *See also Loral Corp. et al. v. B.F. Goodrich Co.*, No. C-3-86-216, 1989 U.S. Dist. LEXIS 16865, at *104-05 (S.D. Ohio Jan. 27, 1989) (no adverse inference from privilege log as "[t]he mere fact that Goodyear's attorneys considered the proposals on several occasions does not prove . . . that Goodyear's attorneys consciously decided to deprive the PTO of *important* information"); *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 54-55 (D.D.C. 2017) ("[a]n assertion of privilege in this context [of an internal investigation and resulting memorandum concerning alleged bribery] cannot create an adverse inference" because "[i]f the assertion of attorney client privilege could produce an adverse inference 'persons would be discouraged from seeking opinions, or lawyers would be discouraged from giving honest opinions.  Such a penalty for invocation of the privilege would have seriously harmful consequences.'") (internal citation omitted).

the Settlement Agreement by pointing to the existence of privileged communications is the type

of speculation courts have prevented counsel from inviting.[8]

Following the same logic, courts have refused to allow parties to introduce privilege logs

as evidence when the log entries would be relevant only if the jury were to draw adverse

inferences.  *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 337-38

(N.D.N.Y. 2017) (refusing to "make adverse inferences based on a party's assertion of the

attorney-client privilege" on privilege log entries that supposedly evidenced "ill motives").

Courts have also refused to allow the introduction of privilege logs where, like here, the potential

inferences that a jury might draw from the mere assertion of privilege would be speculative.  *See*

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, Nos. 6:12-cv-00196 (BKS/ATB) and 6:13-

cv-00743 (BKS/ATB), 2018 U.S. Dist. LEXIS 106970, at *38-40 (N.D.N.Y. Jun. 27, 2018)

(precluding admission of privilege log where defendant "ha[d] not identified any relevant, non-

speculative inferences that could be drawn from it"); *Wilson v. AM Gen. Corp.*, No. 3:95-CV-

125RM, 1996 U.S. Dist. LEXIS 16831, at *39-41 (N.D. Ind. Sep. 16, 1996) (refusing inferences

from privilege log based on "rank speculation that the document not produced on the basis of

attorney-client privilege somehow would show" an overall scheme).  It is exactly the same

specter of an "ill motive" that Plaintiffs wish to deposit into the jury's consciousness through

Shire privilege log entries – discovery devices that are ***not*** evidence and serve the sole purpose of

---

[8] In *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, the court held that an adverse inference jury instruction would not cure the problem because "[i]t is inescapable that the jury would likely conclude that [defendant] received an unfavorable opinion, otherwise [defendant] would reveal it."  434 F. Supp. 2d 810, 812 (E.D. Cal. 2006).  The court granted defendant's motion *in limine*, precluding the plaintiff "from introducing evidence or testimony pertaining to [defendant's] assertion of the attorney-client privilege over the opinion of counsel it received[.]"  *Id.*; *see also Tallo v. United States*, 344 F.2d 467, 469-70 (1st Cir. 1965) (noting that "it is improper to require a defendant to claim other privileges [including the attorney-client privilege] in the presence of a jury" and holding that "defendant should be given an opportunity to claim the privilege against spousal testimony in the absence of the jury"); *In re Broyles*, Nos. 10-845-JJB-CBW and 10-857-JJB-CBW, 2016 U.S. Dist. LEXIS 122625, at *9-10 (M.D. La. Sep. 8, 2016) (precluding introduction of privileged "documents reflecting [defendants'] investigation into their due diligence process" because "calling the jury's attention to [invocations of privilege] would only serve to imply that the jury should draw an adverse inference").

permitting counsel a fair opportunity to challenge the grounds for assertions of privilege.[9]

Defendants' privilege logs remain unchallenged, and Plaintiffs cannot be allowed to invite such

rank speculation based on entirely appropriate privilege assertions.

Numerous courts in other cases alleging generic delay have granted motions to protect

privilege assertions analogous to this one, repeatedly declining to allow adverse inferences from

defendants' invocations of privilege.  For example, in *In re Terazosin Hydrochloride Antitrust

Litigation*, plaintiffs tried to "rais[e] a negative inference from Abbott's invocation of the

attorney-client privilege" regarding information it had considered before filing a patent

infringement suit.  335 F. Supp. 2d 1336, 1365 (S.D. Fla. 2004).  But the court ruled that "no

such negative inference can arise from the assertion of the privilege."  *Id.* (citing, *inter alia*,

*Parker*, 900 F.2d at 775).

The court reached the same result in *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,

where plaintiffs attempted to "highlight[] Defendants' invocation of the attorney-client privilege

or the work product doctrine."  Nos. 2:06-cv-1797 and 2:06-cv-2768, 2016 U.S. Dist. LEXIS

7477, at *25-28 (E.D. Pa. Jan. 22, 2016).  The court rejected those attempts, explaining that

"[c]alling the jury's attention to the invocation [of the privilege] would serve only to imply that

the [fact finder] should draw an adverse inference," but "***such an implication is wholly

improper***."  *Id.* at *28 (emphasis added).  The court held that the plaintiffs were not permitted to

"ask any question of a defense witness where it would be reasonable to conclude that the

---

[9] *See also Old Republic Ins. Co. v. Ness*, No. 03 C 5238, 2006 U.S. Dist. LEXIS 100992, at *35-36 (N.D. Ill. Dec. 21, 2006) (privilege log inadmissible because "the privilege log itself is not evidence; rather, the document named in the privilege log is the evidence" and "any probative value is substantially outweighed by the probability of jury confusion"); *Galderma Labs. v. Paddock Labs.*, No. 4:09-CV-002-Y, 2011 U.S. Dist. LEXIS 32196, at *13 (N.D. Tex. Mar. 28, 2011) (similar); *Anascape, Ltd. v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 111828, at *9-10 (E.D. Tex. Apr. 25, 2008), *reversed on other grounds Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333 (Apr. 13, 2010) (similar).

question will elicit an invocation of the attorney-client privilege." *Id.* at *28-29.[10]

Most recently, in *In re Loestrin 24 FE Antitrust Litigation*, the court granted in relevant part a motion *in limine* similar to this one, ruling that "Plaintiffs may not rely on an adverse inference or speculation regarding" privilege log entries as such entries "are protected by an unchallenged assertion of the attorney−client privilege and it is improper to base an adverse inference on the assertion of the attorney−client privilege." *See* Rubio-Spring Decl., Ex. 258 (Order, *In re Loestrin 24 FE Antitrust Litigation*, No. 1:13-md-2472 (D.R.I. Dec. 16, 2019) (citing *Astra Pharm.*, 1983 U.S. Dist. LEXIS 18289, at *10-11)).  The court also barred plaintiffs from offering a privilege log in evidence as "apart from these impermissible adverse inferences, the probative value of the [privilege] log is extremely limited and the danger of unfair prejudice and confusion great (in that speculation regarding the content of the communications is the principal probative fact to be established)[.]" *Id.* (citing Fed. R. Evid. 403; *Beraha*, 1994 U.S. Dist. LEXIS 12523, at *8-9); *see also In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-md-2472-WES-PAS, 2019 U.S. Dist. LEXIS 220262, at *39 n.18 (D.R.I. Dec. 17, 2019).

The result should be the same here.  Based on what Plaintiffs have done thus far (including their recent disclosure of anticipated trial exhibits),[11] it appears that they intend to highlight for the jury Defendants' (entirely proper) invocations of the attorney-client privilege to suggest an adverse inference that Defendants were engaging in deceptive conduct.  Reference to Defendants' privilege invocations would serve no purpose other than to trigger speculation from

---

[10] *See also FTC v. AbbVie Inc.*, 329 F. Supp. 3d 98, 125 (E.D. Pa. 2018) (court "will not draw any negative inference as to subjective intent based on defendants' decision to invoke the attorney-client privilege and the attorney work product doctrine"); Electronic Order on Motions *In Limine*, *In re Solodyn*, No. 14-02503 (D. Mass., Mar. 8, 2018), Dkt. No. 1189 (denying as moot defendant's Motion to preclude references to past invocations of the privilege where plaintiffs stated that "they do not intend to elicit any testimony or evidence reflecting or eliciting attorney-client privileged information.").

[11] *See* Rubio-Spring Decl., Exs. 253 - 257 (Plaintiff's proposed trial exhibits marked PTX1552, PTX1553, PTX1590, PTX1572, and PTX1608).

the jury about the contents of privileged discussions and to invite the jury to draw negative inferences regarding the substance of any advice received.  Such references would be entirely improper, particularly since Defendants may not be able to fully respond to Plaintiffs' insinuations without waiving the attorney-client privilege.[12]  These tactics are contrary to the law, and the Court should preclude Plaintiffs from attempting to compel invocation of privilege in the presence of the jury, calling attention to the occurrence of privileged communications, or referencing Defendants' invocations of the attorney-client privilege or work produce doctrine.

## II.   Defendants' Generalized Statements About the Underlying Patent Case or Proposed Settlement Terms Do Not Constitute A Waiver Of The Privilege.

Defendants also ask that the Court reject any argument by Plaintiffs that Defendants will have waived the attorney-client privilege through statements to one another or the public about the underlying patent litigation or whether proposed settlement terms were objectionable.  *See, e.g.*, Rubio-Spring Decl., Ex. 251 (SHIREINT0273263, █████████████████████ ████████████████████████████████████████████████████████ *id.*, Ex. 252 (SHIREINT0210299, ██████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████ ; Barlow Decl., Ex. 15 (T. May Depo. Tr.), pp. 71:25-74:21 ██████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *id.*,  Ex.  7 (SHIREINT0197156, March 12, 2013 email between T. May and D. Buchen) (███████ █████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

---

[12] Plaintiffs previously moved to compel production of documents withheld or redacted as privileged.  The Court largely denied that Motion.  *See* DPP Dkt. No. 211.

To the extent the parties commented on the general merits of their respective positions in the underlying patent litigation (*e.g.*, ▮▮▮▮▮▮▮▮▮▮ or their views on the propriety of certain proposed settlement terms, those bare statements do not trigger a subject matter waiver, regardless of whether they were informed by attorney advice.  The First Circuit has made clear that, ***even where counsel participates directly*** in an extrajudicial meeting or negotiation, that participation alone is not sufficient to "justify implying a broad subject matter waiver of the attorney client privilege."  *See XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 23-24 (1st Cir. 2003) (reversing finding of waiver on grounds that disclosure to third-party "could not have had any expectation of confidentiality" and there was, thus, no privilege to waive).  Here, any statements made between Defendants' in-house or outside counsel during the settlement negotiations regarding the general status of the litigation, their respective likelihood of success, or objections to proposed settlement terms fall within the circumstances described in *XYZ Corp*.  To hold otherwise would "leave attorneys out of commercial negotiations for fear that their inclusion would later force wholesale disclosure of confidential information."  *Id*. at 24.  Accordingly, the Court should rule that such statements by Defendants' counsel, or those informed by them, do not constitute a subject matter or any other type of waiver.

The same is true of general statements made to the public (or between Defendants) that arguably arose, directly or indirectly, from legal advice provided by counsel at some prior occasion or setting.  The mere restatement of an attorney's ultimate conclusions is ***not*** sufficient to waive the attorney-client privilege.  *See Trs. of Boston Univ. v. Everlight Elecs. Co.*, Nos. 12-11935-PBS, 12-12326-PBS, 12-12330-PBS (consolidated), 2015 U.S. Dist. LEXIS 68281, at *14 (D. Mass. May 27, 2015) ("disclosure of an attorney's ultimate conclusion, without more, may not be sufficient to waive the privilege"); *see also FURminator, Inc. v. Kim Laube & Co., Inc.*,

No. 4:08CV00367 ERW, 2009 U.S. Dist. LEXIS 118930, at *4-5 (E.D. Mo. Dec. 21, 2009) ("Several courts have determined that disclosing a *general summary* of a legal opinion does *not amount to a waiver* of privilege.") (emphasis added); *Joy Global, Inc. v. Wis. Dep't of Workforce Dev.*, No. 01-039-LPS, 2008 U.S. Dist. LEXIS 46495, at *16-17 (D. Del. Jun. 16, 2008) (disclosure that an attorney "approved a course of conduct" or gave a "green light" is not a waiver).  Accordingly, Defendants' statements to each other or the public regarding the general strength of their respective cases or view of proposed settlement terms cannot be the basis for a broad subject matter waiver of the attorney-client privilege.  Parties and their counsel must be able to make basic characterizations about ongoing litigations to negotiate settlements and inform the investing public free from the threat of exposing substantive attorney-client communications to which a reasonable expectation of confidentiality has attached.

## CONCLUSION

For each of these reasons, Defendants respectfully request that the Court issue an order precluding Plaintiffs from: (i) introducing argument or evidence that seeks to use the occurrence of privileged communications or Defendants' invocations of attorney-client privilege to suggest negative inferences to the jury; (ii) introducing into evidence or referring to the content of Defendants' privilege logs; (iii) questioning witnesses or arguing in a manner intended to elicit an invocation of the attorney-client privilege or work product doctrine in the presence of the jury; (iv) otherwise calling attention to the occurrence of privileged communications or Defendants' prior invocations of the attorney-client privilege or work product doctrine; or (v) invoking subject matter wavier of the attorney-client privilege related to Defendants' disclosures to one another or the public about their general view of their respective claims and defenses in the underlying patent litigation in order to elicit testimony about confidential attorney-client communications.

Dated: April 10, 2020

Respectfully submitted,

/s/ Joshua S. Barlow
Fred A. Kelly, Jr., BBO #544046
Joshua S. Barlow, BBO #667472
HAUG PARTNERS LLP
1 Post Office Square
Boston, MA 02109
Tel: (617) 426-6800
fkelly@haugpartners.com
jbarlow@haugpartners.com

Michael F. Brockmeyer, (*pro hac vice*)
David S. Shotlander, (*pro hac vice*)
HAUG PARTNERS LLP
1667 K Street, NW
Washington, DC 20006
Tel: (202) 292-1530
Fax: (202) 292-1531
mbrockmeyer@haugpartners.com
dshotlander@haugpartners.com

*Attorneys for Shire LLC
and Shire US, Inc.*

/s/ Christopher T. Holding
Christopher T. Holding (BBO# 600627)
Sarah K. Frederick (BBO# 679885)
Srikanth Reddy (BBO# 669264)
Alicia Rubio-Spring (BBO# 692640)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts  02210
T: 617 570-1000
F: 617 523-1231
CHolding@goodwinlaw.com
SFrederick@goodwinlaw.com
SReddy@goodwinlaw.com
ARubio-Spring@goodwinlaw.com

Aviv Zalcenstein (*pro hac vice*)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
T: 212 813-8800
F: 212 355-3333
AZalcenstein@goodwinlaw.com

*Counsel for Actavis Elizabeth LLC, Actavis LLC,
and Actavis Holdco U.S., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 10, 2020.

/s/ Joshua S. Barlow