# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re INTUNIV ANTITRUST LITIGATION<br><br>This Document Relates To: *All Actions* | 16-cv-12396-ADB (Indirect)<br>16-cv-12653-ADB (Direct)<br><br>**REDACTED PUBLIC VERSION**<br><br>**LEAVE TO FILE UNDER SEAL GRANTED APR. 24, 2020 (DPP DKT. NO. 424; IPP DKT. NO. 312)** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTIONS *IN LIMINE***

**NO. 23 TO PRECLUDE ARGUMENT OR EVIDENCE BASED UPON DEFENDANTS' INVOCATION OF ATTORNEY-CLIENT PRIVILEGE**

**AND**

**NO. 24 TO PRECLUDE ASSERTION OF A PRIVILEGE WAIVER BASED UPON DEFENDANTS' STATEMENTS TO ONE ANOTHER AND THE PUBLIC**

I.      **MIL No. 23: Plaintiffs Cannot Use Privilege Logs for Their Stated Purpose.**

Plaintiffs' persistent demand to place Shire's privilege logs at issue is sleight-of-hand. On the one hand, Plaintiffs *agree*: using Defendants' privilege invocations to invite negative or adverse inferences is improper.[1] On the other hand, Plaintiffs claim that they wish *only* to use the privilege log to provide "factual information" and "rebut defendants' factual assertions or as impeachment evidence" to allow "the jury [to] draw a reasonable inference in plaintiffs' favor."[2] The difference, Plaintiffs state, is that they "do not intend to *ask the Court to instruct the jury* about an adverse inference relating to defendants' privilege logs."[3] This is too cute by half.

Plaintiffs maintain that Defendants' cases are distinguishable because Plaintiffs "seek no" negative inference. That is incorrect. Regardless of whether Plaintiffs seek a formal instruction from this Court, the *only* conceivable relevance of the privilege-log evidence they wish to admit is to induce the jury to speculate about the content of privileged communications and draw an adverse inference against Defendants.[4] Plaintiffs' response to Defendants' motion *in limine* No. 21 regarding document designations makes this point explicitly, arguing that Shire's AG launch analysis ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[5] Intentionally seeking to elicit inferences of

---

[1] Pls.' Response to Defs.' Mot. *In Limine* Nos. 23 & 24 ("Pl. Opp."), Dkt. No. 425, at 1, 3-5 (noting the "*unremarkable* proposition that an adverse inference may not be drawn solely based on the assertion of privilege") (emphasis added). All emphasis added and internal citations and quotations omitted unless otherwise stated.
[2] *Id.* at 1, 6.
[3] *Id.* at 3.
[4] Plaintiffs try to disguise this purpose by describing it in vague and abstract terms, stating that they intend to use "certain log entries to identify facts about the timing of, and individuals involved in, certain communications that are set forth in the log descriptions." *Id.* at 3. But as discussed, Plaintiffs make clear that the only "facts" they seek to establish are ████████████████████████████████████ And the only conceivable relevance of those facts turns on speculation about *the content* of the privileged communications—speculation that Plaintiffs expressly advance. *See id.*
[5] Pltfs' Response to Defs' Omnibus Mot. *In Limine*, Dkt. No. 430, at pp. 55, 56; *see also id.*, at p. 57. Plaintiffs' position is based on its specious waiver argument that the *drafter* of certain produced documents labeled them as

1

***fraud or deception*** by mere virtue of the fact privileged communications took place is the very definition of an adverse inference.[6] Rule 403 precludes such misuse of a privilege log, regardless of whether Plaintiffs describe their strategy as seeking an adverse inference.[7] The fact of a privileged communication cannot be used in this way precisely because it would never be possible to rebut an opponents' speculation without intruding on the privilege.[8] Thus, even if the privilege log entries were relevant, Plaintiffs have not shown how their incremental probative value outweighs the prejudice to Defendants if the jury were to infer (as Plaintiffs plan) that the privileged documents contained harmful evidence.[9]

In opposition, Plaintiffs chiefly rely on the maxim that the existence of an attorney-client

---

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and, therefore, in producing such documents, Shire waived privilege.  Notably, Plaintiffs do not argue that the documents are privileged.  They are not, and as case law Plaintiffs cite makes clear, merely labeling something as privileged does not make it so.  *See* Pl. Opp., at p. 2 (citing *Baez-Eliza v. Instituto Psicoterapeutico De P.R.*, 275 F.R.D. 65, 71 (D.P.R. 2011) ("Labeling a document as confidential . . . does not at all prove the existence of privilege.")); *see also Walker v. N.H. Admin. Office of the Courts*, No. 11-cv-421-PB, 2013 WL 672584, at *8 (D.N.H. Feb. 22, 2013) (same).  Plaintiffs, in effect, seek sanctions against Shire for undertaking its discovery obligations in good faith, producing relevant, non-privileged documents and withholding privileged documents while providing an appropriate privilege log.  Plaintiffs have ***not*** and could not successfully challenge Shire's privilege assertions, and there can be no waiver from Defendants' reliance on ***non-privileged*** evidence.  *See In re Chevron Corp.*, 650 F.3d 276, 289 n. 17 (3d Cir. 2011) ("[T]he risk of a party using the privilege both as a sword and shield by selectively disclosing communications to gain an advantage in litigation simply does not exist when the selectively disclosed communications were not privileged when made.").  Defendants address this waiver argument in more detail in their Opposition to Plaintiffs' Motion *in Limine* no. 19, which they hereby incorporate by reference.  Defs.' Opp. to Pls.' Omnibus Mot. *In Limine*, Dkt. No. 426, at pp. 24-30.

[6] Additionally, Plaintiffs—not Defendants—put "at issue" the information they argue is an impermissible use of a sword and shield by alleging that Shire agreed not to launch an AG.  Defendants' non-disclosure of privileged communications did not, and cannot, constitute an affirmative act putting the content of those communications "at issue."  *See In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2018 WL 2363577, at *3 (E.D. Pa. May 24, 2018) (rejecting argument of at-issue waiver where "defendants did not inquire into the role that the advice of counsel or the merits of the underlying litigation played in [making a] decision" and "[t]hose issues were raised by plaintiffs, and defendants blocked further inquiry on the basis of attorney-client privilege.").

[7] *See Sharer Inc. v. Tandberg*, No. 1:06cv626 (JCC), 2007 U.S. Dist. LEXIS 22391, at *5-6 (E.D. Va. Mar. 27, 2007) (granting motion *in limine* excluding use of a privilege log at trial because "[t]he fact that [plaintiff] met with an attorney prior to the email exchange . . . is only relevant to the extent that an inference may be drawn as to the substance of legal communications between attorney and client").

[8] *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 566-67 (N.D. Ill. 1996) ("Disallowing adverse inferences is a logical extension of the attorney-client privilege since allowing a negative inference would in many cases oblige the client to produce the privileged materials."); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1108 (D. Kan. 2006) ("[I]t would be inappropriate to . . . force defendant to either invoke the privilege in the jury's presence (creating the negative inference desired by plaintiffs) or waive the privilege by responding to the question.").

[9] *See Beraha v. Baxter Healthcare Corp.*, No. 88 C 9898, 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994) (excluding evidence that privileged communications occurred because "the probative value of the mere fact that these privileged conversations occurred is substantially outweighed by its potentially unfair prejudicial effect").

communication is not itself privileged, but that general rule provides no support for Plaintiffs' intended purpose for admitting privilege logs: to nudge the jury to draw inferences about **the substance** of communications on those logs.  No authority cited by Plaintiffs supports this use.  Indeed, while Plaintiffs rely on *Beraha* for the basic maxim, the court there **granted** a similar motion *in limine* as it was "evident" that "the only purpose for which Beraha seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom[,]" stating that "[t]his is exactly what is prohibited."[10]  The *Beraha* court reached this conclusion without ever suggesting, as Plaintiffs do here, that this inference could be tolerated so long as the plaintiffs did not ask for the court's express instructions.[11]

In arguing to the contrary, Plaintiffs misconstrue the case law.  They rely, for example, on *Mutual Insursance Company v. Murphy*, but that case is far afield.[12]  For one, the issue arose at summary judgment (rather than at trial before a jury), and it involved a dispute between an insurer and insured who **shared the same lawyer**.[13]  That a client to an otherwise privileged conversation can waive the privilege has no relevance here.[14]  Similarly, Plaintiffs' reference to

---

[10] 1994 WL 494654, at *3.

[11] Plaintiffs other cases are all easily distinguishable.  *Davine v. Golub Corp.*, No. 3:14-30136-MGM, 2017 WL 517749, at *1 (D. Mass. Feb. 8, 2017) (discovery dispute where Plaintiffs requested *in camera* review of documents withheld as privileged or work product); *Baez-Eliza*, 275 F.R.D. at 67 (same); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 483 (D. Kan. 1997) (same); *Howell v. United States*, 442 F.2d 265, 268-69 (7th Cir. 1971) (appeal from a criminal case where defendant objected to his attorney being called to testify after the defendant waived privilege by voluntarily "testif[ying] with some specificity regarding conversations with his attorney.").

[12] 630 F. Supp. 2d 158 (D. Mass. 2009), *as amended* (July 2, 2009).

[13] *Id.* at 162-63, 167 ("Mutual and the Herald jointly engaged the firm of Baker & Hostetler . . . .").

[14] Plaintiffs' other cases involve claims making the fact of legal consultation relevant to the claims at issue, regardless of their substance, which is not the case here.  *Knox Energy, LLC v. Gasco Drilling, Inc.*, 637 F. App'x 735, 738 (4th Cir. 2016) (fact of communication disputed defendants' narrative that contract addendum was not unusual to it: "When Gasco received the Addendum, [Gasco] consulted an attorney before signing it, although his usual practice was to make contract decisions alone."); *Siemens v. Seagate Tech.*, No. SACV 06-788JVS (ANx), 2009 U.S. Dist. LEXIS 132522, at *18, 21 (C.D. Cal. Apr. 27, 2009) (fact of diligent prosecution (versus unreasonable delay) consistent with "the fact of communications" with attorneys).  Moreover, *Kellogg v. Nike, Inc.*, sustained in part a motion *in limine* to preclude "[r]eference to or evidence regarding Nike's privilege log" only for purposes of impeachment, in a one sentence order with no analysis.  No. 8:07CV70, 2008 WL 4216130, at *2-3 (D. Neb. Sept. 12, 2008).  While the court noted that "[l]ogic and common sense dictate that defendants consulted counsel," it held that questions "concerning specific conversations with or inquiries to defendants' attorneys may be

Judge Young admitting portions of a privilege log during the *Nexium* trial is misplaced.[15]  As Plaintiff recognize, he only did so ***after*** finding that a privilege waiver occurred during the trial, not before.[16]  There has been no waiver here.  Plaintiffs are also wrong that *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.* "confirmed" admissibility of privilege logs as statements of a party opponent;[17] the court merely noted that a "privilege log *may* constitute the admission of a party opponent."[18]  It ultimately did not reach the issue, finding instead that "Munich has not identified any relevant, non-speculative inferences that could be drawn from [the privilege log]" and thus ***granted*** Utica's motion to preclude its admission.[19]  The same holds true here; there is no legitimate reason for Plaintiffs' to use Defendants' privilege logs at trial.

There is also no justification for permitting Plaintiffs to achieve the same end—inviting the jury to speculate about the contents of privileged communications—by forcing Defendants to continually object to questioning on privilege grounds at trial.  The *Cephalon* court's careful analysis of that issue in the context of a purported at-issue waiver is instructive; Plaintiffs' attempt to distinguish the ruling fails.[20]  In considering at-issue waiver, the court discussed the same argument Plaintiffs make, *i.e.*, that "Defendants' Counsel or defense witnesses will" rely

---

improper" and that "[q]uestions asked to elicit the fact that the attorney-client privilege has been asserted are improper and will not be allowed." *Id.* at *2.  Defendants have not put the fact of legal consultation at issue here.

[15] *See* Pl. Opp., at p. 2 & n.9.

[16] *Id.*, at 3 n.10, 8 & n.35 ("In *In re Nexium* . . . defendants waived privilege by making statements *during his direct examination*" and "the defendants opened the door to at-issue waiver through witness questioning at trial.")

[17] *Id.*, at 2 n.6.

[18] Nos. 6:12-cv-00196 (BKS/ATB) and 6:13-cv-00743, 2018 WL 3135847, at *13 (N.D.N.Y. Jun. 27, 2018).

[19] *Id.*  Plaintiffs also argue that privilege logs "are regularly admitted" "as impeachment evidence." Pl. Opp., at 1-3. No witness has denied the existence of any communication on Shire's privilege log.  Even in courts that allowed such use, courts have ruled *in limine* to "[preclude] any reference to a privilege log before the jury without first approaching the bench or requesting leave the evening before trial begins the following day with an explanation for how the privilege log will be used and for what purpose." *Huawei Tech. Co. v. T-Mobile US, Inc.*, Nos. 2:16-cv-00052-JRG-RSP, 2:16-cv-00055-JRG-RSP, 2:16-cv-00056-JRG-RSP, and 2:16-cv-00057-JRG-RSP, 2017 WL 7052463, at *2 (E.D. Tex. Sept. 20, 2017) (reasoning that a "privilege log carries with it the potential for the jury to conclude that a document has been withheld because it includes damaging information, ***and that is the inference the Court must prevent***.").

[20] Pl. Opp., at p. 7.

on a "good faith[.]" defense.[21]  The court found that whether a statement constitutes a waiver will have to be decided at trial, but still **granted** defendants' motion *in limine*, holding that "Plaintiffs also may not ask any question of a defense witness where it would be reasonable to conclude that the question will elicit an invocation of the attorney-client privilege."[22]  The Court should set the same boundaries for examination here.

## II.   MIL No. 24: Plaintiffs Do Not Contest Defendants' Request.

Defendants' request No. 24, to preclude Plaintiffs from arguing that Defendants waived privilege where Defendants make generalized statements about legal matters to each other or the public, should be granted.  Plaintiffs do not oppose the substance of Defendants' motion; to the contrary, they state that they "do not seek waiver based merely on 'generalized statements'" and that "plaintiffs do not currently seek waiver here."[23]  On the basis of that statement alone, the Court should grant Defendants' Motion.  The possibility that Plaintiffs *might* later raise a *different* waiver argument, as they intimate, is no reason to withhold ruling on this issue.[24]

---

[21] *King Drug Co. of Florence v. Cephalon*, Nos. 2:06-cv-1797 and 2:06-cv-2768, 2016 U.S. Dist. LEXIS 7477, at *26-27 (E.D. Pa. Jan. 22, 2016).

[22] *Cephalon*, 2016 U.S. Dist. LEXIS 7477, at *28.

[23] Pl. Opp., at p. 8 & n.31.  Plaintiffs reliance on *Lidoderm* is misplaced for all the reasons discussed in Defendants' Opposition to Plaintiffs' Omnibus Motions *In Limine*.  Dkt. No. 426, at pp. 29-30.

[24] Such an order would not be an impermissible advisory opinion, as Plaintiffs argue, because the public statements at issue were *already* made.  Cf. *XYZ Corp. v. United States. (In re Keeper of the Records)*, 348 F.3d 16, 25 (1st Cir. 2003) ("At the risk of carting coal to Newcastle, we add that a *prospective* waiver will very rarely be warranted") (emphasis in original).  "A motion *in limine* is a request for guidance by the court regarding an evidentiary question. The trial court may, within its discretion, provide such guidance by making a preliminary ruling with respect to admissibility." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir 1983), *aff'd*, 469 U.S. 38 (1984) (citing, *inter alia*, *United States v. Oakes*, 565 F.2d 170, 171-72 (1st Cir. 1977)).  Thus, "***[a] ruling on a motion in limine is therefore essentially an advisory opinion by the trial court***." *Id*. (emphasis added).

Dated: May 8, 2020                                              Respectfully submitted,

/s/ Joshua S. Barlow                                            /s/ Christopher T. Holding
Fred A. Kelly, Jr., BBO #544046                                 Christopher T. Holding (BBO# 600627)
Joshua S. Barlow, BBO #667472                                   Sarah K. Frederick (BBO# 679885)
HAUG PARTNERS LLP                                               Srikanth Reddy (BBO# 669264)
1 Post Office Square                                            Alicia Rubio-Spring (BBO# 692640)
Boston, MA 02109                                                GOODWIN PROCTER LLP
Tel: (617) 426-6800                                             100 Northern Avenue
fkelly@haugpartners.com                                         Boston, Massachusetts 02210
jbarlow@haugpartners.com                                        T: 617 570-1000
                                                                F: 617 523-1231
Michael F. Brockmeyer, (*pro hac vice*)                         CHolding@goodwinlaw.com
David S. Shotlander, (*pro hac vice*)                           SFrederick@goodwinlaw.com
HAUG PARTNERS LLP                                               SReddy@goodwinlaw.com
1667 K Street, NW                                               ARubio-Spring@goodwinlaw.com
Washington, DC 20006
Tel: (202) 292-1530                                             Aviv Zalcenstein (*pro hac vice*)
Fax: (202) 292-1531                                             GOODWIN PROCTER LLP
mbrockmeyer@haugpartners.com                                    620 Eighth Avenue
dshotlander@haugpartners.com                                    New York, NY 10018
                                                                T: 212 813-8800
*Attorneys for Shire LLC*                                       F: 212 355-3333
*and Shire US, Inc.*                                            AZalcenstein@goodwinlaw.com

                                                                *Counsel for Actavis Elizabeth LLC, Actavis LLC,*
                                                                *and Actavis Holdco U.S., Inc.*


## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 8, 2020.

                                                                       /s/ *Joshua S. Barlow*