UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re INTUNIV ANTITRUST LITIGATION<br>(Direct Purchasers) | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 1:16-cv-12653-ADB |

# MEMORANDUM AND ORDER
# ON DEFENDANTS' MOTION TO DECERTIFY THE CLASS

BURROUGHS, D.J.

Direct-Purchaser Plaintiff Rochester Drug Co-Operative, Inc. ("RDC") filed this antitrust action on behalf of a putative class comprised of entities that purchased the pharmaceutical Intuniv (the brand name for extended release guanfacine hydrochloride) from the drug's brand manufacturer Shire LLC and Shire U.S., Inc. (collectively, "Shire") or from the drug's generic manufacturer Actavis Elizabeth LLC, Actavis Holdco US, Inc., and Actavis LLC (collectively, "Actavis" and, together with Shire, "Defendants").  The Direct-Purchaser Plaintiffs ("DPPs") allege that Defendants improperly delayed competition for both brand Intuniv and generic Intuniv in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, causing the DPPs to pay an inflated price for Intuniv.  See generally [ECF No. 140 ("Consolidated Amended Complaint" or "CAC")].

Presently before the Court is Defendants' motion to decertify the DPP Class in light of RDC's bankruptcy.  [ECF No. 404].  For the reasons explained herein, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

The Court has previously discussed the facts that brought about this class-action antitrust action in its memorandum and order on Defendants' motion to dismiss, [ECF No. 92-1], and its memorandum and order on the DPPs' motion for class certification, [ECF No. 343]. For purposes of considering Defendants' motion to decertify the DPP Class, the Court provides the following limited background.

On September 2, 2009, the Food and Drug Administration ("FDA") approved a New Drug Application ("NDA") for Defendant Shire's ADHD medication Intuniv. [ECF No. 343 at 2]. On December 29, 2009, Defendant Actavis filed an Abbreviated New Drug Application ("ANDA") for a proposed generic version of Intuniv. [Id.]. As the first generic manufacturer to file an ANDA, Actavis would have enjoyed "a 180-day period of exclusivity during which no other generic" manufacturers could have manufactured an Intuniv alternative. In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538, 543 (1st Cir. 2016). During that exclusivity period, Shire and Actavis would have been the only manufacturers approved by the FDA for Intuniv or a generic alternative. See Sanofi-Aventis v. Apotex Inc., 659 F.3d 1171, 1175 (Fed. Cir. 2011). After Actavis filed its ANDA, several other companies also sought FDA approval to manufacture generic Intuniv. [ECF No. 343 at 3].

Shire filed suit against Actavis pursuant to 21 U.S.C. § 355(j)(5)(B)(iii), triggering "an automatic 30-month stay of any FDA approval of . . . generic Intuniv." [ECF No. 343 at 2–3]. After a bench trial, the 30-month stay expired and the FDA approved Actavis' ANDA. [Id. at 3]. The DPPs argue that it appeared likely that Actavis would receive a favorable verdict. [Id.]. "On April 25, 2013, before any judgment or opinion had entered on [Shire's] claim, [however,] Shire and Actavis entered into a settlement agreement." [Id.].

The DPPs argue that the settlement agreement was a reverse payment agreement, which guaranteed Actavis a 180-day exclusivity period in return for Actavis delaying the launch of its generic Intuniv until December 1, 2014. [Id. at 4]. Therefore, the DPPs allege, the Defendants were able to guarantee monopolistic profits which resulted in the DPPs paying artificially inflated prices for both brand and generic Intuniv. [Id.].

### A. The Court's Order on Class Certification

On September 24, 2019, the Court granted the DPPs' motion to certify the following class:

> All persons or entities in the United States and its territories, or subsets thereof, that purchased Intuniv and/or generic Intuniv in any form directly from Shire or Actavis, including any predecessor or successor of Shire or Actavis, from October 19, 2012 through June 1, 2015 (the "Class").

[ECF No. 343 at 4, 23]. After noting that RDC's adequacy as a class representative was "a close call," the Court appointed RDC as the class representative. [Id. at 18, 23]. Though RDC had "entered into a deferred prosecution agreement [("DPA")] and settled civil claims brought by the United States in connection with [its alleged] failures to report suspicious opioid purchases," [id. at 17], "RDC [wa]s under new management, its conduct in this case to date seem[ed] conscientious, and there [wa]s no obvious credibility issue that w[ould] impinge on its ability to adequately represent the class," [id. at 18]. Finally, there was no evidence of "any conflict among the class as a result of the allegations against RDC . . . ." [Id.].

### B. RDC Declares Bankruptcy

As part of its DPA with the Government, RDC agreed to forfeit $20 million, providing an initial payment of $10 million, and then an annual payment of $2 million for five years. [ECF No. 406-2 at 3]. In January 2020, RDC informed the Government that it could not make its first $2 million payment. [ECF No. 433-1 at 3]. On March 12, 2020, RDC filed for bankruptcy

3

under Chapter 11 in the United States Bankruptcy Court for the Western District of New York. See In re Rochester Drug Co-Operative, Inc., No. 20-cv-20230 (Bankr. W.D.N.Y.).

Upon RDC's filing for bankruptcy, the Government rescinded its forbearance in order to protect its rights in bankruptcy. [ECF No. 433-1 at 3–4]. The Government has not indicated that it will reinstate the underlying criminal prosecution. [Id. at 4].

The parties agree that RDC owes roughly $114 million in total. [ECF No. 405 at 20; ECF No. 433 at 10]. The Defendants argue that RDC "presently has assets totaling $70 million," [ECF No. 405 at 20], while RDC claims that it has assets of $112 million, [ECF No. 433 at 10].[1] The Defendants argue that RDC presently owes them almost $2 million as unsecured creditors. [ECF No. 405 at 12]. RDC responds that it does not owe Actavis anything and only owes Shire $185,666. [ECF No. 433 at 10].

C.      **Procedural History**

FWK Holdings, LLC ("FWK") originally filed this action on December 30, 2016. [ECF No. 1]. On January 11, 2017, RDC filed similar claims, and on March 1, 2017, the Court granted a joint motion to consolidate the two actions. [ECF No. 19]. RDC is a regional distributor of pharmaceuticals and FWK holds, by assignment, the antitrust claims of Frank W. Kerr Co., a former pharmaceutical wholesaler that entered bankruptcy and subsequently closed. This consolidated action has proceeded in coordination with claims brought on behalf of a putative

---

[1] The Defendants rely on a previous declaration from RDC's interim Chief Executive Officer which included an estimation of RDC's assets, [ECF No. 406-1 at 17], whereas RDC references its Summary of Assets and Liabilities filed with the Bankruptcy Court, [ECF No. 433 at 10 n.13].

4

class of indirect purchasers of Intuniv. See Picone v. Shire U.S. Inc. (Indirect Purchaser Antitrust Class Action), No. 16-cv-12396 (D. Mass.).[2]

After RDC declared bankruptcy in March 2020, Defendants filed their motion to decertify the class on April 3, 2020, [ECF No. 404], and RDC opposed on May 4, 2020, [ECF No. 433].

## II. LEGAL STANDARD

Under Rule 23 of the Federal Rules of Civil Procedure, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Decertification may be justified by post-certification developments 'such as the discovery of new facts or changes in the parties or in the substantive or procedural law.'" Donovan v. Philip Morris USA, Inc., No. 06-cv-12234, 2012 WL 957633, at *4 (D. Mass. Mar. 21, 2012) (quoting O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000)). "A decision to decertify a previously certified class is not taken lightly, and, as other courts have noted, 'should only be done where defendants have met their "heavy burden" of proving the necessity of taking such a "drastic" step.'" Id. (citing In re Vivendi Universal, S.A. Sec. Litig., No. 02-cv-05571, 2009 WL 855799, at *3 (S.D.N.Y. Mar. 31, 2009)).

## III. DISCUSSION

### A. RDC's Bankruptcy Does Not Automatically Stay This Proceeding

As a preliminary matter, RDC's bankruptcy proceeding does not automatically stay this class action. The automatic stay provision in 11 U.S.C. § 362(a) "'only stays proceedings against the debtor,' and 'does not address actions brought by the debtor which would inure to the

---

[2] The Court denied a motion to certify a class of indirect purchasers on August 21, 2019. In re Intuniv Antitrust Litig. (Indirect Purchasers), No. 1:16-cv-12396, 2019 WL 3947262, at *9 (D. Mass. Aug. 21, 2019).

5

benefit of the bankruptcy estate.'" In re Fin. News Network Inc., 158 B.R. 570, 572 (S.D.N.Y. 1993) (emphasis omitted) (quoting Carley Capital Grp. v. Fireman's Fund Ins. Co., 889 F.2d 1126, 1127 (D.C. Cir. 1989)).

### B. RDC's Alleged Conflict of Interest

The Court must now consider, as a matter of first impression in this circuit, whether a debtor-in-possession may act as an adequate representative for absent class members when the Defendants in the case are also the debtor-in-possession's creditors. As more fully set forth below, the Court finds that RDC would be an inadequate representative and therefore orders that it be replaced as class representative.

"[A] class representative *always* has a conflict of interest of sorts, because he has an individual as well as a representative interest in the outcome of the case." Dechert v. Cadle Co., 333 F.3d 801, 802–03 (7th Circ. 2003). Further, "there is a danger remarked in numerous cases that the lawyer will negotiate a settlement with the defendant that gives the lawyer a large fee but the class a meager recovery." Id. at 802–03. "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. 'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)). A conflict must be more than "merely speculative or hypothetical" to disqualify a class representative. In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., No. 14-cv-02503, 2017 WL 4621777, at *13 (D. Mass. Oct. 16, 2017) (quoting In re Nexium Antitrust Litig., 777 F.3d 9, 21 (1st Cir. 2015)).

RDC has "total scheduled liabilities of $113 million . . . ." [ECF No. 433 at 15 n.44]. Of that total, RDC owes Defendant Shire $185,666.78. [Id.]. Additionally, according to RDC, it owes Actavis' affiliates Takeda and Teva $857,496.49 and $942,931.47, respectively. [Id.]. As a debtor in possession, RDC must therefore "act as a 'fiduciary' for the benefit of the creditor[s]," IRS v. Energy Res. Co. (In re Energy Res. Co.), 871 F.2d 223, 229 (1st Cir. 1989) (citing 11 U.S.C. § 1107)), including the Defendants in this case. Defendants argue that "RDC now has a fiduciary duty to act solely in the interest of preserving the bankruptcy estate to maximize the recovery of its creditors," a duty which is directly in conflict with its fiduciary duty "to absent class members to vigorously prosecute class claims on their behalf." [ECF No. 404 at 2 (citing Dechert, 333 F.3d at 803)].

In response, RDC argues that it is "required to pursue claims to maximize the value of [its] estate." [ECF No. 433 at 12; see also id. at 12 n.24 ("[T]he code not only authorizes the chapter 11 debtor to manage the estate's legal claims, but in fact requires the debtor to do so in a way that maximizes the estate's value." (quoting In re Smart World Techs., LLC, 423 F.3d 166, 175 (2d Cir. 2005)); La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 249 (5th Cir. 1988) ("If a valid—and potentially profitable—cause of action exists under state law which the debtor-in-possession may assert on behalf of the corporation, *all* creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished." (emphasis in original))].

Defendants rely on out-of-circuit cases holding that a Chapter 7 trustee is an inappropriate class representative. The Seventh Circuit has found that a bankruptcy trustee could not act as a representative plaintiff because "[h]e has a duty to seek to maximize the value of his claim, and this duty may collide with his fiduciary duty as class representative (if he is permitted

7

to be the class representative) to represent all members of the class equally." Dechert, 333 F.3d at 803. The Seventh Circuit has further explained:

> The named plaintiff in a class action usually has only a small stake in the action, . . . and while the stakes for the class as a whole may be large, very few of the benefits of settling the class action or prosecuting it to judgment would be received by the trustee (which is to say the creditors), since he would just be the named plaintiff's surrogate. Most of the benefits would go to the other members of the class and to the lawyers for the class, so that the trustee, as class representative yet having fiduciary obligations exclusively to the estate in bankruptcy, would have a potential conflict of interest . . . .

Morlan v. Univeral Guar. Life Ins. Co., 298 F.3d 609, 619 (7th Cir. 2002).

The Southern District of New York has likewise found that a Chapter 7 trustee "cannot serve as the named plaintiff in [a class] action, because his dual role as a fiduciary for [the plaintiff's] creditors and as a representative of the putative class of plaintiffs would create an insuperable and impermissible conflict of interests." In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig., 375 B.R. 719, 726 (S.D.N.Y. 2007).

Here, RDC is acting as a debtor-in-possession. "[F]or the purpose of Chapter 11 bankruptcy cases, '"debtor in possession" means debtor except when a person that has been qualified under section 322 of this title is serving as trustee in the case.'" MHI Shipbuilding, LLC v. Nat'l Fire Ins. Co. of Hartford, 286 B.R. 16, 24 (D. Mass. 2002) (quoting 11 U.S.C. § 1101(1)). "Thus, 'the debtor automatically becomes a debtor in possession' when a Chapter 11 bankruptcy case commences, and retains debtor in possession status 'until such time, if any, as the court orders the appointment of a chapter 11 trustee . . . .'" Id. (quoting 7 Collier on Bankruptcy ¶ 1101.01[2] (Lawrence P. King et al. eds., rev. 15th ed. 2002)). But, "the duties and responsibilities of either a Chapter 11 trustee or debtor-in-possession as a fiduciary for the bankruptcy estate are virtually the same as those imposed on a Chapter 7 trustee." Muratore v.

Darr, 375 F.3d 140, 145 n.5 (1st Cir. 2004) (quoting Corzin v. Fordu (in re Fordu), 201 F.3d 693, 706 n.18 (6th Cir. 1999)).

As a debtor-in-possession and class representative, RDC therefore has at least two conflicting duties. First, it must maximize the value of its assets and the value of this lawsuit for the benefit of its creditors, including the Defendants in this case. Second, it must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court therefore finds that RDC is now an inappropriate class representative. "When the named plaintiff is a fiduciary, . . . [h]e has a duty to seek to maximize the value of his claim, and this duty may collide with his fiduciary duty as a class representative (if he is permitted to be the class representative) to represent all members of the class equally." Dechert, 333 F.3d at 803. Like the Seventh Circuit, however, the Court will not adopt a "flat rule" that a debtor-in-possession or bankruptcy trustee could never be an adequate class representative. See id. at 803 (declining to adopt a "flat rule that a trustee in bankruptcy (or, what is the equivalent, a debtor in possession) can never be a class representative"). For reasons specific to this case, however, the Court finds decertification appropriate.

First, the conflict of interest is all the more pertinent where, as here, the Defendants are creditors of the Plaintiff's bankruptcy estate. Because "the trustee in bankruptcy is the representative of all [the estate's] unsecured creditors, he is (via the affiliation) [the defendant creditor's] representative . . . ." Dechert, 333 F.3d at 804. Other courts have declined to allow a bankruptcy estate to act as a named plaintiff in a class action for exactly this reason. See, e.g. In re Merrill Lynch, 375 B.R. at 726–27 ("[W]ere he to be substituted as named plaintiff, [the bankruptcy trustee] would be called upon to work both sides of the street in this case."); Ritz Camera & Image, LLC v. Sandisk Corp., No. 10-cv-02787, 2013 WL 3387817, at *3 (N.D. Cal.

9

July 5, 2013) (allowing a bankruptcy trustee to act as a class representative because, unlike in Dechert, the defendant "[wa]s not a creditor of [the plaintiff's] bankruptcy estate, and therefore the Trustee [wa]s not on both sides of the controversy").

Second, RDC is the only class representative for the DPP class.  Even those courts that have rejected Dechert's reasoning have found that a bankruptcy trustee may be an appropriate class representative so long as it is not the only class representative.  See In re Rail Freight Surcharge Antitrust Litig., 287 F.R.D. 1, 34 (D.D.C. 2012) ("[O]ther courts have allowed [a bankruptcy trustee to act as a class representative] where, as here, 'an additional representative [is designated] to appear as plaintiff along with the Trustee . . . .'" (quoting Ernst & Ernst v. U.S. Dist. Court for the S. Dist. of Texas, 457 F.2d 1399, 1400 (5th Cir. 1972))), vacated on other grounds, 725 F.3d 244 (D.C. Cir. 2003), and remanded to 300 F.R.D. 19 (D.D.C. 2013).  The District Court for the District of Columbia, for example, allowed a bankruptcy trustee to act as a class representative when "there [were] eight representative plaintiffs only one of which . . . [wa]s under the control of a trustee in a bankruptcy."  Id.  In this case, however, because the Court found that FWK was an inappropriate class representative, RDC is the only class representative.

Third, because the Defendants are RDC's unsecured creditors, the parties both may have incentives to settle the case to lessen the amount owed in bankruptcy or to use the amount owed in bankruptcy as a bargaining tool in seeking a lower settlement in this case.  The Defendants additionally make the more general argument that RDC cannot adequately represent absent class members when any potential recovery would go directly to its creditors.  See [ECF No. 405 at 20 (citing Order, Birmingham Steel Corp. v. Tenn. Valley Auth., No. 2:99-cv-02294 (N.D. Ala. Sept. 19, 2002), vacated on other grounds, 353 F.3d 1331 (11th Cir. 2003) (explaining that

because any recovery would "not ultimately benefit the [bankrupt] plaintiff," but would instead be paid "for the benefit of the plaintiff's creditors" the plaintiff could "no longer be expected to vigorously prosecute the litigation"))]. RDC responds that any potential set-off to the Defendants in this case would be greatly outweighed by their overall damages award, such that they still have an incentive to prosecute the case vigorously. See [ECF No. 433 at 17 ("RDC has every incentive to reduce its debt, especially because its proportionate share of the class's aggregate treble damages vastly exceeds Shire's $185,000 unsecured claim, and could even return RDC to solvency.")]. Regardless of the specific set-off amounts at issue, RDC now has competing incentives. It is in its own interest to accept a settlement award that would mitigate any potential debt in the bankruptcy proceeding. Similarly, Defendants may have an interest in utilizing the bankruptcy debt to encourage settlement in this case. On the other hand, RDC, Defendants, and all other creditors have an interest in RDC maximizing the value of this lawsuit in order to maximize the company's value. Such a web of potentially conflicting and misaligned interests would be unfair to those absent plaintiffs (neither debtors nor creditors) who would depend on RDC to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The Court notes that the Defendants' interest in RDC's bankruptcy is a small amount when compared to RDC's total liability. RDC argues that in Merrill Lynch, for example, the bankrupt plaintiff owed the class-action defendant over two-thirds of the alleged liability. [ECF No. 433 at 21]. In this case, however, even assuming that RDC owed the Defendants the claimed $2 million, that would represent only two percent of RDC's total liabilities. [ECF No. 433 at 21]. Certainly, there may be cases in which the representative plaintiff's debt to a defendant would be insignificant enough that it would not undermine the plaintiff's adequacy,

particularly if the representative plaintiff was sharing the role with another plaintiff. Here, however, given the constellation of potential conflicts and issues impacting adequacy, the Court is not prepared to find that the amount of the debt warrants allowing RDC to continue to represent absent plaintiffs.

### C.     RDC's Alleged Lack of Resources

Beyond any conflicts of interest, Defendants also claim that RDC now lacks the resources to be an adequate class representative. [ECF No. 404 at 2].

In its filings before the Bankruptcy Court, RDC represented that it does not have sufficient staff to "perform the required internal review of financial records and affairs" necessary to address the expected "overwhelming amount of claims" arising from its bankruptcy. [ECF No. 405 at 20]. The Defendants therefore argue that because RDC does not have the resources necessary for its bankruptcy proceeding, it would likewise be unable to effectively act as a class representative in this case. [Id.]. RDC responds that it is well established in this Circuit that class counsel may advance litigation costs and accept a contingency fee depending on the outcome of the case. [ECF No. 433 at 13–14].

A representative plaintiff's ability to fund a class action is irrelevant if class counsel agrees to advance the costs of litigation. See Loef v. First American Title Ins. Co., No. 08-cv-00311, 2011 U.S. Dist. LEXIS 36117 (D. Mass. Apr. 4, 2011) (rejecting the argument that the named plaintiff was an inadequate class representative based on his financial resources when the court had already determined that class counsel had the necessary resources to represent the class and indicated that they would advance costs and expenses); Randle v. SpecTran, 129 F.R.D. 386, 392 (D. Mass. 1988) ("With respect to defendants' contention that Randle is an inadequate representative due to her limited financial resources, I conclude that plaintiff's representations

that her fellow representatives are able to assist her and that counsel have agreed to advance the costs of litigation sufficiently show plaintiff's ability to adequately represent the class."); see also Becker v. Bank of N.Y. Mellon Tr. Co., N.A., No. 11-cv-06460, 2016 WL 5816075, at *24 (E.D. Pa. Oct. 5, 2016) ("There is no requirement that a class representative pay litigation costs out of their own pocket."). The Court has previously determined, and the parties do not contest, "that class counsel is qualified, experienced, and has and will continue to adequately represent the class." [ECF No. 343 at 14]. Further, class counsel has represented that they will cover the costs in bringing this case. See [ECF No. 433 at 20 ("[H]ere, class counsel is advancing the expenses of RDC's participation in the case, and is representing RDC on a contingency fee basis.")]. Therefore, the Court declines to find that RDC would be an inadequate class representative based solely on their ability to fund the litigation.

### D.   RDC's Alleged Lack of Credibility

The Defendants next argue that RDC's bankruptcy raises "concerns about its credibility and the possibility of future criminal prosecution." [ECF No. 404 at 3].

As part of its DPA with the Government, RDC represented that it had "reviewed its financial situation, that it [was] not insolvent as such term is defined in 11 U.S.C. § 101(32)" and that it "believe[d] that it [would] remain solvent following payment to the Government of the Stipulated Forfeiture Amount." [ECF No. 405 at 22–23]. Specifically, RDC had agreed to forfeit $20 million, paying an initial installment of $10 million and then an additional $2 million per year for five years. [Id. at 22]. RDC defaulted on its first $2 million payment. [Id. at 23]. RDC also represented to this Court, through the DPPs, that it had the resources to act as class representative. See [ECF No. 266 at 15 ("RDC is ready, willing, and able to fulfill its obligation as a class representative, which includes participating in discovery and testifying at trial. RDC

13

has already committed substantial resources to this litigation, and is fully prepared to commit whatever additional resources are required.  Further inquiry into RDC's financial status is not required . . . .")].

Though the Court finds that RDC would be an inappropriate class representative given its conflict of interest, the Court wishes to make clear that it does not base its decision on any alleged lack of credibility on the part of RDC.  RDC did not suffer a liquidity crisis until December 2019 and did not file for bankruptcy until March 2020, both of which were well after its previous representations before the Court regarding its ability to represent the class.

### E.     Replacement of the Class Representative

Having determined that RDC would be an inappropriate class representative, the Court will not simply decertify the class.  In finding RDC inappropriate, the Court seeks to protect the interests of absent class members.  This goal would be summarily undermined by decertifying the class.  "Rule 23 is designed to assure that the rights of absent class members are not prejudiced by the voluntary actions of the representative plaintiff.  Accordingly, . . . the procedures inherent in Rule 23 enable some effort to bolster representation or to find some suitable substitute class representative, following notice to all or part of the class."  1 Newberg on Class Actions § 2:17.  The Court will therefore allow motions to substitute a new class representative.  See, e.g., In re Brewer, 863 F.3d 861, 876 (D.C. Cir. 2017) (directing the district court to allow intervenors to file motions to substitute new class representatives and renewed motions for class certification on remand); McRae v. Sch. Reform Comm'n, No. 17-cv-04054, 2018 WL 4283056, at *5 n.8 (E.D. Pa. Sept. 6, 2018) ("[P]laintiffs frequently move to substitute a class representative whose individual claim has been mooted with a potential class representative with a live claim.  Such substitutes of class representatives are freely permitted.").

### IV.     CONCLUSION

The Court is not advocating a blanket rule that a debtor-in-possession could never be an adequate class representative.  Nonetheless, here, given that RDC is in bankruptcy, that Defendants are a creditor in that bankruptcy and RDC has potentially conflicting duties to debtors and absent class members, as well as the Court's earlier stated belief that RDC's adequacy as a class representative was a "close call," [ECF No. 343 at 18], the Court finds that RDC would not be an appropriate class representative.  Accordingly, the motion to decertify the class, [ECF No. 404], is <u>GRANTED</u> in part and <u>DENIED</u> in part.  Although RDC is no longer an adequate class representative, rather than decertify the class, the Court will consider motions to substitute for RDC as a class representative, including Meijer, Inc. and Meijer Distribution, Inc.'s motion to intervene, filed on June 2, 2020, [ECF No. 439], which has been fully briefed and is ripe for the Court's consideration.

**SO ORDERED.**

July 8, 2020                                                                                  <u>/s/ Allison D. Burroughs</u>
                                                                                                     ALLISON D. BURROUGHS
                                                                                                     U.S. DISTRICT JUDGE