UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re INTUNIV ANTITRUST LITIGATION (Direct Purchasers) | * * * * * * * * * | Civil Action No. 1:16-cv-12653-ADB |

## MEMORANDUM AND ORDER
## ON MEIJER'S MOTION TO INTERVENE

BURROUGHS, D.J.

On July 8, 2020, the Court found that Rochester Drug Co-Operative Inc. ("RDC") could no longer adequately represent a class of Direct-Purchaser Plaintiffs (the "DPPs").  [ECF No. 456].  Perhaps anticipating the need for a new class representative, Meijer, Inc. and Meijer Distribution, Inc. (collectively "Meijer"), members of the DPP class, moved to intervene under Rule 24 of the Federal Rules of Civil Procedure before the Court issued its order.  [ECF No. 439].  For the reasons explained herein, the motion to intervene, [ECF No. 439], is GRANTED.

I.      BACKGROUND

A.      The Case Thus Far

This case arises from an alleged anticompetitive agreement made between the brand and generic manufacturers of an ADHD medication.  Defendants Shire LLC and Shire U.S., Inc. (collectively, "Shire") manufacture Intuniv, the brand-name for extended release guanfacine hydrochloride.  Defendants Actavis Elizabeth LLC, Actavis Holdco US, Inc., and Actavis LLC (collectively "Actavis" and, together with Shire, "Defendants") manufacture Intuniv's generic counterpart.  DPPs allege that they paid inflated prices for Intuniv due to Defendants' having

improperly agreeing to delay competition for both brand Intuniv and generic Intuniv in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2.  See generally [ECF No. 140 ("Consolidated Amended Complaint" or "CAC")].  For purposes of this motion, the following facts, as summarized from the Court's previous order on the DPPs' motion for class certification, [ECF No. 343], will suffice.

On September 2, 2009, the Food and Drug Administration ("FDA") approved a New Drug Application ("NDA") for Shire's brand-name drug, Intuniv.  [ECF No. 343 at 2].  A few months later, on December 29, 2009, Actavis filed an Abbreviated New Drug Application ("ANDA") for its proposed generic version of Intuniv.  [Id.].  Several other companies subsequently sought FDA approval to manufacture their own generic alternatives to Intuniv. [ECF No. 343 at 3].  As the first generic manufacturer to file an ANDA, Actavis would have enjoyed "a 180-day period of exclusivity during which no other generic" manufacturer could have manufactured an Intuniv alternative.  In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538, 543 (1st Cir. 2016).  During that exclusivity period, Shire and Actavis would have been the only manufacturers approved by the FDA for Intuniv or a generic alternative.

Shire filed suit against Actavis pursuant to 21 U.S.C. § 335(j)(5)(B)(iii), which triggered a 30-month stay of the FDA's approval of Actavis' ANDA for generic Intuniv.  See F.T.C. v. Actavis, Inc., 570 U.S. 136, 143 (2013) ("If the brand-name patentee brings an infringement suit within 45 days, the FDA then must withhold approving the generic, usually for a 30-month period, while the parties litigate patent validity (or infringement) in court." (citing 21 U.S.C. § 355(j)(5)(B)(iii))).  After a bench trial, the 30-month stay of the FDA's consideration of Actavis' ANDA expired and the FDA approved generic Intuniv.  [ECF No. 343 at 3].

Before the trial court could issue its opinion, however, Shire and Actavis entered into a settlement agreement.  [Id.].  The DPPs argue that it appeared likely that the verdict was going to be in Actavis' favor and that the settlement was a reverse payment agreement, which guaranteed Actavis a 180-day exclusivity period in return for its delaying the launch of generic Intuniv until December 1, 2014.  [Id.].

FWK Holdings, LLC ("FWK") filed this action on December 30, 2016, [ECF No. 1], and RDC filed similar claims on January 11, 2017.  The Court granted a joint motion to consolidate the two actions.  [ECF No. 19].  The case has proceeded in coordination with claims originally brought on behalf of a putative class of indirect purchasers of Intuniv.  See Picone v. Shire, LLC, No. 16-cv-12396 (D. Mass. June 8, 2020).[1]

On September 24, 2019, the Court granted the DPPs' motion to certify the following class:

> All persons or entities in the United States and its territories, or subsets thereof, that purchased Intuniv and/or generic Intuniv in any form directly from Shire or Actavis, including any predecessor or successor of Shire or Actvais, from October 19, 2012 through June 1, 2015 (the "Class").

[ECF No. 343 at 4, 23].  The Court, however, dismissed FWK as a class representative after finding that the relationship between FWK and class counsel was too entangled.  [Id. at 16].  The Court had reservations about RDC's adequacy as a class representative given that it had entered into a deferred prosecution agreement and settled civil claims with the United States in connection with failures to report suspicious opioid purchases, but ultimately agreed that it could serve as class representative.  [Id. at 17–18].  As the case progressed, the parties filed a number

---

[1] On August 21, 2019, the Court denied the indirect purchaser's motion to certify two classes of indirect purchasers.  [ECF No. 230].  The indirect purchasers filed a petition with the First Circuit to appeal the Court's decision.  The Court of Appeals has not yet ruled on the petition. See generally Picone, et al. v. Shire, No. 19-8023 (1st Cir. 2019).

of evidentiary motions, as well as motions for summary judgment, which remain pending. [ECF Nos. 294, 295, 296, 297, 298, 299, 327, 329, 331, 333, 335, 337, 339, 341, 382, 412, 413, 416, 418].

On March 12, 2020, RDC filed for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Western District of New York. See In re Rochester Drug Co-Operative, Inc., No. 20-cv-20230 (Bankr. W.D.N.Y.). Defendants moved to decertify the DPP class, in light of RDC's bankruptcy. [ECF No. 404]. The Court granted the motion in part and found that RDC could no longer adequately represent the interests of absent class members due to a conflict of interests arising from its bankruptcy. [ECF No. 456]. The Court declined to decertify the class, however, and allowed motions to intervene. [Id. at 14–15].

Meijer is a pharmacy retailer headquartered in Michigan. As a member of the DPP class, it received notice of the class action on January 24, 2020. [ECF No. 440-1 ¶ 6]. Meijer claims to have "purchased many millions of dollars of brand and generic Intuniv throughout the class period." [ECF No. 440 at 8; ECF No. 440-1 ¶ 5]. Additionally, it holds a long-standing agreement for assignment of direct-purchaser claims for brand Intuniv from Frank W. Kerr Co. [ECF No. 440 at 8; ECF No. 440-1 ¶ 5]. Meijer has prepared a complaint in intervention, which is nearly identical to the second amended complaint, but adds Meijer as a class representative. [ECF No. 440-1 ¶ 9; ECF No. 440-3].

### B.   Procedural History

Meijer filed its motion to intervene on June 2, 2020, [ECF No. 439], and Defendants opposed, [ECF No. 449]. On July 8, 2020, the Court found that RDC could no longer adequately represent the DPP class due to its bankruptcy and informed the parties that it would consider the pending motion to intervene. [ECF No. 456]. The following day, the Defendants filed a non-

motion letter in which they reiterated arguments made in their opposition to the motion to intervene.  <u>See</u> [ECF No. 449 at 24–26; 457 at 1].  With leave of the Court, Meijer replied in support of its motion on July 10, 2020.  [ECF No. 460].

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure allow intervention of right and permissive intervention.  Rule 24(a) addresses "intervention of right" and states that, upon a "timely application," the Court "*must* permit anyone to intervene who . . . claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2) (emphasis added).  A party may intervene under Rule 24(a)(2) if that party meets the following four requirements:

> First, the application must be timely.  Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action.  Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest.  Fourth, the applicant must show that [its] interest will not be adequately represented by existing parties.

<u>Travelers Indem. Co. v. Dingwell</u>, 884 F.2d 629, 637 (1st Cir. 1989).

Under Rule 24(b), which addresses "permissive intervention," the court "may," on a timely motion, "permit anyone to intervene who . . . has a claim . . . that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Permissive intervention is 'wholly discretionary,' and a court should consider whether intervention will prejudice the existing parties or delay the action."  <u>In re Bos. Scientific Corp. ERISA Litig.</u>, 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) (quoting <u>In re Sonus Networks, Inc. Sec. Litig.</u>, 229 F.R.D. 339, 345 (D. Mass. 2005)).  When considering whether to allow a party to intervene under Rule 24(b), the

Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Federal Rules' Advisory Committee notes explain that "a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court." Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment. The 1966 Amendment "provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i), as amended, unless his interest is already adequately represented in the action by the existing parties." Id.

## III.    DISCUSSION

### A.    Mandatory Intervention Under Rule 24(a)

As a member of the DPP class, Meijer plainly has an interest relating to the case that would be impaired if it could not intervene to protect its own interests. See In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation. Therefore, when absent class members seek intervention as matter of right, the gravamen of the court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation."). For example, in considering whether an unnamed class member has standing, the Supreme Court has explained that class members have an interest in the case that "creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability." Devlin v. Scardelletti, 536 U.S. 1, 6–7 (2002) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 580 (1992)). See also id. at 7 ("Because petitioner is a member of the class bound by the judgment, there is no question that he satisfies these three requirements.

6

The legal rights he seeks to raise are his own, he belongs to a discrete class of interested parties, and his complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members.").  Further, because the Court has found that neither FWK nor RDC can adequately represent the DPP class, see [ECF Nos. 343, 456], it is beyond dispute that Meijer's interests are not adequately represented.  Likely recognizing these interests, Defendants argue only that the motion to intervene is untimely.  See [ECF No. 449 at 16–24].  The Court therefore limits its consideration of the motion to that issue.

"[T]imeliness . . . is the sentinel that guards the gateway to intervention." Candelario-Del-Moral v. UBS Fin. Servs. (In re Efron), 746 F.3d 30, 35 (1st Cir. 2014).  A party seeking to intervene under Rule 24(a) must "file[] their motion soon after learning that their interests may be affected." Fiandaca v. Cunningham, 827 F.2d 825, 834 (1st Cir. 1987).  The Court's consideration of the timeliness of Meijer's motion "centers on how diligently the putative intervenor [] acted once [it] received actual or constructive notice of the impending threat" to its rights. R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 8 (1st Cir. 2009).  In assessing the timeliness of the proposed intervention, the Court considers

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

Caterino v. Barry, 922 F.2d 37, 40 (1st Cir. 1990) (quoting United States v. Metro. Dist. Comm'n, 865 F.2d 2, 5 (1st Cir. 1989)).  The timeliness inquiry "is inherently fact-sensitive and depends on the totality of the circumstances." R&G Mortg. Corp., 584 F.3d at 7.  Therefore, the Court considers each factor "in light of the posture of the case at the time the motion is made." Id.

1.      Meijer's Motion to Intervene Was Filed Shortly After It Appeared That
RDC Could No Longer Adequately Represent the DPP Class

Defendants argue that Meijer has been on notice of FWK and RDC's potential

inadequacies for years and that its motion to intervene is therefore untimely.  [ECF No. 449 at 7–

8].  In support, Defendants cite to a separate antitrust action concerning the allegedly delayed

entry of a generic version of Restasis where FWK also acted as class representative, but Meijer

nonetheless filed its own complaint and moved to join the action because it anticipated a

challenge to FWK's adequacy.  [ECF No. 449 at 9].  Additionally, Defendants argue that Meijer

could have done the same here where it was aware of RDC's potential inadequacy given the

Department of Justice's ongoing criminal investigation.  [Id. at 10–11].  Meijer maintains that it

relied on RDC's adequacy and therefore did not move to intervene until it appeared that RDC

might no longer be able to adequately represent the absent plaintiffs' interests.  [ECF No. 440 at

10–11].

A motion's timeliness is relative and fact-specific.  See R&G Mortg., 584 F.3d at 8 ("The

passage of time is measured in relative, not absolute, terms."); see also Chase Manhattan Bank v.

Corporacion Hotelera de P.R., 516 F.2d 1047, 1049 (1st Cir. 1975) ("Timeliness is to be gauged

from all the circumstances, including the stage to which the proceedings have progressed before

intervention is sought.").  "[T]he most important factor is the length of time that the putative

intervenor knew or reasonably should have known that his interest was imperiled before he

designed to seek intervention."  In re Efron, 746 F.3d at 35.  The timeliness of the motion to

intervene is "measured from the point at which the applicant knew, or should have known, of the

risk to its rights."  In re Sonus Networks, Inc. Secs. Litig., 229 F.R.D. 339, 346 (D. Mass. 2005)

(quoting In re Safeguard Scientifics, 220 F.R.D. 43, 47 (E.D. Pa. 2004)).

"Although the timeliness requirement 'is often applied less strictly with respect to intervention as of right,' compared to permissive intervention, 'even in the case of a motion to intervene as of right, the district court's discretion is appreciable, and the timeliness requirement retains considerable bite.'" Photographic Illustrators Corp. v. Orgill, Inc., 316 F.R.D. 45, 48 (D. Mass. 2016) (quoting R&G Mortg. Corp., 584 F.3d at 8). "[T]imeliness turns on when the applicant first learned that he had any interest in the case, not when the applicant decides he might be needed." In re Bos. Sci. Corp. ERISA Litig., 254 F.R.D. 24, 34 (D. Mass. 2008). A class member that is aware of his interest in the action "act[s] at his peril in not seeking to become a lead plaintiff and class representative." In re Sonus, 229 F.R.D. at 346.

In this case, Meijer moved to intervene only after it appeared that RDC could no longer adequately represent the interests of absent class members due to its bankruptcy. "In cases where the potential intervenor's interest is, at least at the outset, subsumed by that of a representative litigant, the trigger requiring intervention does not occur until it is apparent that the representative no longer protects the intervenor's interest." Chen-Oster v. Goldman, Sachs & Co., No. 10-cv-06950, 2015 WL 4619663, at *6 (S.D.N.Y. Aug. 3, 2015). The Ninth Circuit has explained that "the relevant circumstance [] for determining timeliness is when the intervenor became aware that its interest would no longer be adequately protected by the parties." Legal Aid Soc'y of Alameda Cty. v. Dunlop, 618 F.2d 48, 50 (9th Cir. 1980). The Supreme Court, for example, has determined that post-judgment intervention by a class member is appropriate when the representative plaintiff declines to appeal a court's denial of class certification, explaining that "as soon as it became clear to [intervenor] that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests." United Airlines, Inc. v. McDonald, 432 U.S. 385, 394

(1977); see also Dimond v. District of Columbia, 792 F.3d 179, 193 (D.C. Cir. 1986) (finding

that a motion to intervene had been wrongfully denied because "the potential inadequacy of

representation came into existence only at the appellate stage").

Though Defendants argue that Meijer must have been aware of RDC's potential

inadequacy as a class representative earlier, [ECF No. 449 at 21], Meijer did not act

inappropriately in relying on the Court's finding that RDC could adequately represent the DPP

class members' interests in this case.  As the Court has previously explained, RDC's adequacy as

class representative was a "close call."  [ECF No. 343 at 18].  RDC had entered into a deferred

prosecution agreement and settled claims brought by the United States in connection with its

alleged failure to report opioid purchases.  [Id. at 17].  Additionally, two of its former executives

had been charged criminally.  [Id.].  Still, the Court found that RDC could adequately represent

the interests of the class because, among other things, it was under new management and there

were no credibility issues that suggested that it would not be an adequate representative.  [Id. at

18].  Meijer could therefore have reasonably and fairly relied on RDC's adequacy in good faith,

and moved to intervene when it appeared as though RDC could no longer adequately represent

its interests.

It was not until Defendants filed their motion to decertify the class that Meijer became

aware that RDC might no longer be able to adequately represent the interests of the DPP class

members.  See Kostovestksy v. Ambit Energy Holdings, LLC, 242 F. Supp. 3d 708, 729 (N.D.

Ill. 2017) ("[T]he timeliness rules are more forgiving where the lawsuit is a class action and the

intervenor is a putative or actual class member; unnamed class members may reasonably

presume, at least until events prove the presumption accurate, that their interests are being

adequately represented by the class representative.").  Meijer then moved promptly to intervene.

"Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims." Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 352–53 (1983) (finding that the filing of a class action tolls the applicable statute of limitations for all members of the putative class, until class certification is denied).

In support of their argument that RDC's inadequacies had long been apparent, Defendants rely on two cases, In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339 (D. Mass. 2005), and In re Loestrin 24 FE Antitrust Litig., No. 13-md-02472, ECF No. 657 (D.R.I. Dec. 14, 2018). See [ECF No. 449 at 6 n.1]. In Sonus Networks, the court found that a class member in a securities class action did not satisfy the timeliness requirement for intervention because he failed to move to intervene when the court first advised that the issue of the adequacy of the class representative could be dispositive. 229 F.R.D. at 346. The court then found that there was no longer an adequate class representative and decertified the class. Id. at 348. Thereafter, a different party filed a new action that made the same allegations as the class action. See State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc., No. 06-cv-10040, 2006 WL 3827441, at *1 (D. Mass. Dec. 27, 2006). Under the Private Securities Litigation Reform Act, the court appointed the Public Employees' Retirement System of Mississippi (the "Mississippi System") as lead plaintiff, finding that the Mississippi System had "made the *prima facie* showing of adequacy and typicality required by Rule 23." Id. at *2. Despite the fact that the Mississippi System had not been the party to file the complaint, the court found that, due to its "status as an institutional investor, its substantial stake in th[e] dispute, its apparently typical claims, and its retention of qualified counsel, the presumption that it should be appointed lead plaintiff [wa]s not rebutted by the fact that" another party had filed the case. Id. at *3. Unlike in Sonus Networks, here, the

11

Court did not put the parties on notice that RDC may not be an adequate class representative. Instead, the Court noted that its adequacy was a "close call," but ultimately found that it was appropriate in this case. As previously discussed, class members should be permitted to rely on findings made by the Court. Once it became apparent that RDC was potentially no longer an adequate class representative due to its bankruptcy, Meijer quickly moved to intervene.

In re Loestrin, No. 13-md-2472, ECF No. 657 at *10 (D.R.I. Dec. 14, 2018), offers further support for the Court's decision. In that case, the court stated that, though the class had an adequate class representative at the time of the motion to intervene, "[i]f, at some later date, [the class representative] [wa]s unable to serve as a class representative, the DPPs [would be] free to return to the [c]ourt with an appropriate motion." Id. That is what happened in this case. Although the Court initially found RDC adequate, once it determined that RDC was no longer an adequate class representative due to its bankruptcy, it was appropriate to consider intervention.

2.     Defendants Will Not Be Prejudiced by Meijer's Intervention

Defendants argue that they would be prejudiced by Meijer's intervention because "[n]ot only will Defendants be required to engage in written discovery and deposition(s) to determine Meijer's adequacy to serve as a class representative, Defendants will need to re-brief and re-argue class certification (potentially after re-engaging experts), at considerable additional expense, and at the expense of the Court's time." [ECF No. 449 at 19–20]. Meijer counters that it will produce documents and make itself available for deposition promptly to avoid delaying the trial schedule. [ECF No. 440 at 15].

"[T]he timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion." Fiandaca v. Cunningham, 827 F.2d 825, 834 (1st Cir. 1987) (citation omitted). "[T]he purpose of the basic requirement that the

application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." Culbreath v. Dukakis, 630 F.2d 15, 22 (1st Cir. 1980).  Though the motion to intervene must be evaluated against the point to which the action has progressed, "timeliness is to be determined from all the circumstances." Fiandaca, 817 F.3d at 833 (quoting NAACP v. New York, 413 U.S. 345, 366 (1973)).  For example, the First Circuit has held that interested parties should be permitted to intervene, even if a case has already gone to trial, when it is evident that relief in the case may impact their interests.  See, e.g., id. at 834.

This case was filed in 2016 and the Court understands that the parties have invested resources in addressing the adequacies of the DPP class representatives, including opposing class certification and moving to decertify the class in light of RDC's bankruptcy.  Although the parties have already filed a number of evidentiary motions and motions for summary judgment, none of them are dependent on the class representative, as evidenced by the fact that identical motions were filed both in this case and the related indirect-purchaser action.  See, e.g., In re Bos. Sci. Corp., 254 F.R.D. at 34 (finding that defendants would be prejudiced by allowing a class member to intervene as class representative because defendants had focused their opposition on the pending motion to certify the class on the alleged inadequacies of the class representatives).  Further, though Defendants may be prejudiced by having to address Meijer's adequacy as a class representative, they would be more prejudiced by having to defend themselves in numerous individual actions, which is the alternative.  Therefore, assuming the Court allowed the motion to intervene, the only potential additional issue that could have to be briefed and then decided would be Meijer's adequacy as a class representative.

3.      Disposition of the Action Without a Class Representative Would Impair Meijer's Interest

Defendants argue that Meijer will not be prejudiced if it is not permitted to intervene in this action, because it could pursue its individual claims in a separate action.  [ECF No. 449 at 21–22].  "The availability of an adequate alternative remedy softens any plausible claims of prejudice."  R&G Mortg. Corp., 584 F.3d at 10.  "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment.  As Meijer notes, this case was certified to proceed as a class action because the value of an individual judgment would likely be insufficient to justify the costs of bringing the claim.  [ECF No. 440 at 18].  Defendants maintain that, even if the costs of bringing a separate action would be prohibitive, Meijer and other absent class plaintiffs could proceed by joinder.  [ECF No. 449 at 22].  This Court has already found, however, that joinder would be impracticable in this case. See [ECF No. 343 at 11] ("Considering the number of class members, the geographic dispersion of the class, the economic and logistical barriers to joinder, and the interests of judicial economy, the Court finds that joinder of all class members is impracticable.").

Meijer would undoubtedly be substantially prejudiced if it were not allowed to intervene in this action and the class was decertified.  The Court therefore finds that the balance of prejudices favors allowing Meijer to intervene.  See, e.g., Littlefield v. U.S. Dept. of the Interior, 318 F.R.D. 558, 560 (D. Mass. 2016) (allowing a defendant to intervene, despite prejudice to the plaintiffs, because "given the [intervenor's] undeniable and compelling interest in the outcome of th[e] litigation, their risk of prejudice [wa]s substantial").

    4.      <u>The Unusual Circumstances in This Case Counsel in Favor of Permitting Intervention</u>

Finally, the circumstances of this case provide further support for Meijer's intervention. If the Court were to deny the motion to intervene, there would be no other proposed class representative and the class would need to be decertified. It is obviously in the interest of all of the absent class members that a class member be permitted to intervene as a plaintiff. <u>See Manual for Complex Litigation, Fourth</u>, § 21.26 (2020) ("Replacement . . . may be appropriate if a representative has engaged in conduct inconsistent with the interests of the class or is no longer pursuing the litigation. In such circumstances, courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements. The court may permit intervention by a new representative or may simply designate that person as a representative in the order granting class certification."). "Intervention of class representatives to ensure adequate class representation is highly desirable . . . . If replacement is needed, the Court may permit intervention by a new representative." <u>Trief v. Dun & Bradstreet Corp.</u>, 144 F.R.D. 193, 202 (S.D.N.Y. 1992); <u>see, e.g.</u>, <u>McKay v. Tharaldson</u>, No. 3:08-cv-00113, 2011 WL 13232315, at *2 (D.N.D. Aug. 5, 2011) (denying a motion to intervene, which was filed three weeks after the court certified the class, because intervenor failed to demonstrate that the named plaintiff would not adequately represent his interests, but explaining that "[a] new class representative can be appointed if the named representative becomes no longer adequate at later stages in the litigation").

Therefore, the Court finds that Meijer may intervene. Meijer filed its motion to intervene shortly after it became apparent that RDC might no longer be able to adequately represent Meijer's interests, and the interests of other class members. Though Defendants may be prejudiced by having to address Meijer's adequacy as a potential class representative, such

prejudice is minimal when compared to the potential prejudice to Meijer and absent class

plaintiffs who would otherwise have no adequate alternative remedy.  Because the Court finds

that Meijer may intervene under Rule 24(a), it need not consider the issue of permissive

intervention under Rule 24(b).

     **B.**     **The Court Will Allow Limited Discovery on Meijer's Adequacy**

     Having determined that Meijer should be permitted to intervene in this action, in order to

protect its own interests and the interests of other absent DPP class members, the Court must

next determine whether Meijer may act as class representative.  In order for an intervenor to act

"as a class representative, [it] must meet the requirements for class representation."  Lawrence v.

Phillip Morris Cos., Inc., No. 94-cv-01494, 1999 WL 51845, at *4 (E.D.N.Y. Jan. 9, 1997).

     A court need not decertify a class when it appears that the class representative can no

longer adequately represent the class' interests.  Sirota v. Solitron Devices, Inc., 673 F.2d 566,

572 (2d Cir. 1982).  Because a class has a legal status that is separate from that of the named

plaintiffs, "should the class representatives become inadequate, substitution of an adequate

representative is appropriate to protect the interests of the class."  In re Currency Conversion Fee

Antitrust Litig., No. 01-md-01409, 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005).  The

Supreme Court has explained that, "provided the initial certification was proper . . . the claims of

the class members would not need to be mooted or destroyed because subsequent events or the

proof at trial has undermined the named plaintiffs' individual claims."  E. Tex. Motor Freight

Sys. v. Rodriguez, 431 U.S. 395, 406 n.12 (1977) (first citing Franks v. Bowman Transp. Co.,

424 U.S. 747, 752–57 (1976); then citing Moss v. Lane Co., 471 F.2d 853, 855–56 (4th Cir.

1973)).  Any issues regarding the named plaintiff's representation "may be resolved by

appointment of replacement class representatives."  In re Indep. Energy Holdings PLC Sec.

Litig., 210 F.R.D. 476, 484 (S.D.N.Y. 2002); see also Cobell v. Norton, 213 F.R.D. 43, 45

(D.D.C. 2003) ("Under Rule 23, the court may . . . . invite interventions to bolster or substitute

for class representation.  It may alter, amend, or modify its class ruling at any time before a

judgment on the merits." (quoting Alba Conte & Herbert Newberg, Newberg on Class Actions §

3.42 (4th ed. 2002)).

Subsequent to the filing of the motion to intervene, the Court found that RDC could no

longer adequately represent the interest of the DPP class due to its bankruptcy.  "[I]f after the

class has been certified and its claims heard and the representatives are found to be inadequate

for some reason during the course of the class claims or during a bifurcated hearing with respect

to individual claims, the appropriate step is the appointment of new representatives from the

existing class, not decertification."  Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608,

617–18 (5th Cir. 1983).  Therefore, the Court advised the parties that it would consider motions

to intervene from new class representatives.  [ECF No. 456 at 14–15]; see, e.g., Lafollette v.

Liberty Mut. Fire Ins. Co., No. 2:14-cv-04147, 2017 WL 1026424, at *18 (W.D. Mo. Mar. 16,

2017) ("[R]ather than decertifying the class on the ground that the named plaintiffs are no longer

adequate representatives, the better course is to afford plaintiffs' counsel a reasonable period of

time for the substitution or intervention of a new class representative." (quoting Smook v.

Minnehaha Cty., 457 F.3d 806, 815 (8th Cir. 2006))); Monaco v. Hogan, No. 98-cv-3386, 2016

WL 3212082, at *2 (E.D.N.Y. June 8, 2016) ("Prior to the Decertification Order, no party

briefed whether the court should permit Plaintiffs to pursue intervention if the court were to find

that there was no longer an adequate class representative.  Indeed, even now, neither party has

addressed the proper legal response when a court finds that a class lacks an adequate

representative.  Nevertheless, the court believes that manifest injustice could arise if Plaintiffs

are not given an opportunity to find an intervenor class representative."); <u>McAnaney v. Astoria</u>

<u>Fin. Corp.</u>, No. 04-cv-01101, 2007 WL 2702348, at *13 (E.D.N.Y. Sept. 12, 2007) ("[R]ather

than decertifying the instant class on the ground that the named plaintiffs are no longer adequate

representatives of the class, [the court] affords plaintiffs' counsel a reasonable period of time for

the substitution or intervention of a new class representative." (internal quotation marks and

citation omitted)).

   Rule 23 of the Federal Rules of Civil Procedure provides that "[i]n conducting an action

under this rule, the court may issue orders that . . .  require—to protect class members and fairly

conduct the action—giving appropriate notice to some or all class members of . . .  the members'

opportunity to signify whether they consider the representation fair and adequate, to intervene

and present claims or defenses, or to otherwise come into the action."  Fed. R. Civ. P.

23(d)(1)(B)(iii).  Courts have therefore allowed class members to intervene as class

representatives.  <u>See, e.g.</u>, <u>Allen v. Dairy Farmers, Inc.</u>, No. 5:09-cv-00230, 2015 WL 4758255,

at *6–7 (D. Vt. Aug. 11, 2015) (appointing intervenors as class representatives under Rule 24(b)

because "the factual record is largely developed and many of the pretrial-legal issues were

resolved . . . there is no reason to believe that [intervenors'] participation in th[e] action would

cause undue delay"); <u>In re Arakis Energy Corp. Sec. Litig.</u>, No. 95-cv-03431, 1999 WL

1021819, at *13 (E.D.N.Y. April 27, 1999) ("Because the addition of the [intervenor] plaintiffs

as class representatives will in no way alter the legal or factual claims of the already certified

class, and because their intervention will not result in undue delay or prejudice to the original

parties, the court grants plaintiffs' motion to add the [intervenor] plaintiffs as class

representatives."); <u>Lawrence</u>, 1999 WL 51845, at *4–5 (allowing a class member to intervene as

a class representative because his claims were typical of the class and he otherwise met the requirements of Rule 23).

In arguing that the Court should instead allow further discovery and briefing on the issue of adequacy, Defendants rely on cases in which the class had not yet been certified.  See [ECF No. 449 at 24 n.68 (citing Minute Entry, In re Restasis Antitrust Litig., No. 18-md-02819 (E.D.N.Y. June 13, 2019) (granting a motion to consolidate Meijer's case with other DPP cases and setting a briefing schedule for Meijer's motion to be appointed as class representative); Berry v. Pierce, 98 F.R.D. 237, 240–41 (E.D. Tex. 1983) ("Before addressing sequentially defendant's arguments, it will promote clarity and understanding to point out what has not been placed at issue by these motions . . . the propriety under Rule 23, Fed. R. Civ. P., of certification of this class, or of Vinson's qualifications under that rule to act as a representative, are not being resolved.  Such issues would more properly be addressed, assuming defendant should raise them, after intervention is allowed and some discovery has been had."))].

The Court finds that Meijer has made a *prima facie* showing that it will adequately represent the DPP class in this case.  Meijer has previously been appointed as a direct-purchaser plaintiff class representative in other pharmaceutical antitrust cases, including cases in this District.  See, e.g., In re Asacol Antitrust Litig., No. 15-cv-12730, 2017 WL 4118967, at *1–2 (D. Mass. Sept. 14, 2017); In re Nexium (Esomeprazole) Antitrust Litig., 296 F.R.D. 47, 53–54 (D. Mass. 2013); see also In re Neurontin Antitrust Litig., No. 02-cv-01830, 2011 WL 286118, at *4 (D.N.J. Jan. 25, 2011); Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd., 246 F.R.D. 293, 305 (D.D.C. 2007).  Still, because the Court acknowledges that Defendants may be prejudiced by Meijer's intervention at this point in the proceedings and because Meijer has represented that it "has already prepared to produce its documents responsive to the defendants' RFPs to direct

purchaser plaintiffs and will make witnesses available for deposition promptly," [ECF No. 440 at 6], the Court shall allow limited discovery into Meijer's adequacy.

IV.     **CONCLUSION**

Accordingly, because Meijer sought to intervene shortly after it appeared that RDC might no longer be able to adequately represent its interests and because the plaintiff class would be unduly prejudiced if Meijer were not permitted to intervene, the motion to intervene, [ECF No. 439], is <u>GRANTED</u>.  The parties shall have thirty days of discovery from the entry of this Order to evaluate Meijer's adequacy as a class representative.  At the close of that limited discovery, Meijer shall file its motion to be appointed class representative by August 24, 2020.  Any opposition shall be filed within fourteen days.

**SO ORDERED.**

July 24, 2020                                          /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE