# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE INTUNIV ANTITRUST LITIGATION<br><br>This Document Relates to: *Direct Purchaser Actions* | C.A. No. 16-cv-12653-ADB (Direct) |

**MEMORANDUM IN SUPPORT OF MEIJER'S MOTION TO RECONSIDER ORDER DENYING MEIJER'S MOTION TO BE APPOINTED CLASS REPRESENTATIVE <u>AND GRANTING SHIRE'S MOTION TO COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................ 1

II.  BACKGROUND .......................................................................................................... 2

    A. The Meijer Arbitration Referral Order ................................................................ 3

    B. The Arbitrator's Decision .................................................................................... 4

    C. The Actavis Settlement ........................................................................................ 6

III. LEGAL STANDARD ................................................................................................. 7

IV. ARGUMENT ............................................................................................................. 7

    A. The Court should reconsider the Meijer Arbitration Referral Order ................... 7

        1.  *Morgan* sweeps away an oft-cited preference for arbitration. ..................... 8

        2.  The arbitrator failed to address the arbitrability question of whether
           the arbitration provisions continued to exist and were valid ....................... 9

    B. The Court should conclude that no further arbitration proceedings are
        warranted, and that Meijer is an adequate class representative. ...................... 10

        1.  This Court should decide the questions of whether the parties to a
           contract waived arbitral rights and whether there remains a valid
           agreement to arbitrate .......................................................................... 11

        2.  Actavis waived any contractual rights to arbitrate and there no
           longer remains a valid agreement to arbitrate these antitrust claims. ....... 11

        3.  This Court should decide the question of whether Shire can attach
           itself to contractual rights to arbitrate that the parties relinquished
           and waived ............................................................................................ 13

        4.  As a non-signatory, Shire cannot force arbitration based on a
           contract the parties waived and relinquished and is therefore invalid ....... 15

        5.  The Post-*Morgan* waiver factors overwhelmingly favor Meijer. ............... 19

V.  CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air-Con, Inc. v. Daikin Applied Latin Am.,*
    LLC, 21 F.4th 168 (1st Cir. 2021) ........................................................11

*Al Rushaid v. Nat'l Oilwell Varco, Inc.,*
    757 F.3d 416 (5th Cir. 2014) ...............................................................15

*Apollo Computer, Inc. v. Berg,*
    886 F.2d 469 (1st Cir. 1989)..............................................................4, 14

Apollo Computer, Inc. v. Berg, 886 F.2d 469 (1st Cir. 1989).................10, 15

*Bethlehem Steel Export Corp. v. Redondo Constr. Corp.,*
    140 F.3d 319 (1st Cir. 1998)...................................................................7

*Bossé v. New York Life Ins. Co.,*
    992 F.3d 20 (1st Cir. 2021)...................................................................14

*In re Cox Ents., Inc. Set-Top Cable Television Box Antitrust Litig.,*
    790 F.3d 1112 (10th Cir. 2015) ............................................................16

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,*
    *S.A.S.,*
    269 F.3d 187 (3d Cir. 2001)..................................................................18

*FPE Found. v. Cohen,*
    801 F.3d 25 (1st Cir. 2015)................................................................4, 12

*Geffon v. Micrion Corp.,*
    249 F.3d 29 (1st Cir. 2001)....................................................................7

*Greene v. Union Mut. Life Ins. Co. of Am.,*
    764 F.2d 19 (1st Cir. 1985)....................................................................7

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019).......................................................................11, 14

*Marie v. Allied Home Mortg. Corp.,*
    402 F.3d 1 (1st Cir. 2005).................................................................11, 14

*McKenzie v. Brannan,*
    19 F.4th 8 (1st Cir. 2021).....................................................................11

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022) ........................................................................................ *passim*

*Ruiz Rivera v. Pfizer Pharms., LLC*,
    521 F.3d 76 (1st Cir. 2008) ......................................................................................7

*See Restoration Preservation Masonry, Inc. v. Grove Europe LTD.*,
    325 F.3d 54 (1st Cir. 2003) ....................................................................................18

*United States v. Allen*,
    573 F.3d 42 (1st Cir. 2009) ......................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................12

Fed. R. Civ. P. 23(a) .................................................................................................3

Fed. R. Civ. P. 54(b) .................................................................................................7

# I.    INTRODUCTION

Meijer[1] respectfully requests that this Court reconsider its January 2021 decision referring its claim against Shire[2] to an arbitrator for a determination as to whether the claims are subject to arbitration.[3] Class counsel also move, in two concurrently filed motions, to vacate the arbitration order that responded to this Court's Meijer Arbitration Referral Order and to add BI-LO, LLC as a new class representative.

The combined effect of three developments warrant reconsideration. First, in May 2022, the Supreme Court issued a unanimous decision in *Morgan v. Sundance Inc.*[4] The ruling represents an intervening change in the law, abrogating the previous widespread presumption in favor of arbitration that created special federal rules that forced into arbitration matters that do not belong there. Second, in June 2022, an arbitrator issued her order in response to this Court's Meijer Arbitration Referral Order.[5] Rather than decide the full scope of that referral, the arbitrator both (a) refused to decide the arbitrability question of whether Actavis waived or relinquished its arbitration rights over these claims such that there was no continuing and valid arbitral rights for Shire to seek to enforce, and (b) refused to accept briefing on, or apply, *Morgan.* Third, the issuance of *Morgan* and the inadequacies of the Arbitrator's Decision occur against the background that in December 2020, this Court approved the settlement of all direct purchaser claims against Actavis[6]; the final judgment, effective in January 2021, several months

---

[1] Meijer, Inc. and Meijer Distribution, Inc. (collectively, "Meijer").

[2] Shire, LLC and Shire U.S., Inc. (collectively, "Shire").

[3] Jan. 29, 2021 Mem. & Order, ECF No. 553 ("Meijer Arbitration Referral Order").

[4] *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).

[5] Barnes Decl. Ex. 1, June 8, 2022 Order on Dispute as to Arbitrability on Referral from the District of Massachusetts ("Arbitrator's Decision").

[6] Dec. 9, 2020 Order Granting Final J. & Order of Dismissal Approving Direct Purchaser Class Settlement with Actavis and Dismissing Direct Purchaser Class Claims Against Actavis, ECF No. 551 ("Actavis Final Approval Order").

after briefing on the motion to compel arbitration was complete, released Actavis (and Meijer and other class members from counterclaims), supersedes all prior agreements, and gave exclusive jurisdiction over the settlement to this Court.[7] Because of the timing, the Meijer Arbitration Referral Order gives no indication that the Court considered the Actavis Settlement Agreement and its effect on these issues when granting Shire's motion.

The arbitration provision Actavis inserted into agreements with distributors such as Meijer entitled *Actavis* to assert contractual rights if it so wished. It did not. For years it defended these antitrust claims in federal court, never raising arbitration as to any unnamed class members, and took the case through summary judgment and close to trial. Actavis then settled with the class, used the federal court's ability to bar all claims through an agreement that superseded all previous ones regarding the claims, and agreed that this Court would have exclusive jurisdiction over any issues pertaining to the subject matter, including whether these antitrust claims were settled. Not only has no signatory (plaintiff or defendant) to the arbitration provisions sought enforcement of them, both sides expressly eschewed them.

It can no longer be that non-signatory Shire may enforce a contract provision that both parties to that contract deliberately chose not to enforce. With special federal rules that used to favor arbitration now swept away by *Morgan*, with the arbitrator not seeing it as its role to decide whether Actavis's waiver vitiated any contract rights Shire might seek to jump onto, and with the finality of this Court's judgment that all of Actavis's contract rights regarding these claims are to be within the exclusive jurisdiction of this Court, the claims properly belong here, and we should move to trial.

## II.      BACKGROUND

The Meijer Arbitration Referral Order sets forth history of the arbitration agreements.

---

[7] Sept. 1, 2020 Settlement Agreement ¶¶ 10, 19, 25, ECF No. 480-1 ("Actavis Settlement Agreement).

In brief, direct purchasers filed this antitrust case in December 2016 against Shire and Actavis. For several years, the parties actively litigated in federal court. Actavis had two relevant arbitration agreements: one executed years before the case was filed, another as a part of a buying group that was executed while the case was pending. At no time did Actavis raise arbitration, either as a defense or a reduction of claims when the Court certified a nationwide class of all direct purchasers of branded and generic Intuniv, including all members of the buying group. The case proceeded through summary judgment and was approaching trial. After the Court concluded that each of the two proposed class representatives failed the Rule 23(a) adequacy test, Meijer sought and obtained intervention for the purpose of asserting its claims and representing the class.

## A. The Meijer Arbitration Referral Order

On August 28, 2020, shortly before Meijer and Actavis sought approval of a proposed settlement agreement, Shire moved to compel Meijer to arbitrate its claims against Shire, asserting the Actavis provisions as a basis for its arbitration demand.[8] Shire acknowledges it is neither a party to nor a third-party beneficiary of either contract; instead, Shire contended that a doctrine known as "equitable estoppel" permits Shire to enforce arbitration clauses contained in the Actavis contracts.[9] Yet in doing so, it pointed to no detrimental reliance by it on anything done by the various plaintiffs (or Actavis).

On January 29, 2021, the Court granted Shire's motion for the limited purpose of having the threshold issue of arbitrability decided by an arbitrator.[10] Applying the First Circuit's

---

[8] Aug. 28, 2020 Shire's Mot. to Compel Arbitration and Dismiss Meijer's Compl. In Intervention, or Stay Pending Arbitration, ECF 475-1 ("Shire Mot. to Compel Arbitration"). Shire also addressed the issue of arbitration in its Sept. 22, 2020 Opposition to Direct Purchaser Plaintiff Meijer Motion to Be Appointed Class Representative, ECF 503 at 3–7.

[9] Shire Mot. to Compel Arbitration, ECF 475–1 at 1.

[10] Meijer Arbitration Referral Order at 24–25.

decision in *Apollo Computer, Inc. v. Berg*, the Court ruled that "it is for an arbitrator, rather than the Court, to decide whether nonsignatory Shire can compel Meijer to arbitrate its claims," including issues relating to "the existence and validity of the arbitration agreement."[11] With respect to Meijer's argument that Actavis's decision not pursue enforcement waived any arbitration rights, this Court ruled it was Shire's knowledge and conduct, not Actavis's, that matters.[12] In doing so, the Court applied (the then often relied upon) case law grounded in the "presumption against waiver" and desire to "resolve doubts in favor of arbitration."[13]

## B.     The Arbitrator's Decision

In accordance with the Meijer Arbitration Referral Order, Meijer filed an "Arbitration Demand Pursuant to Court Order" on March 16, 2021 and requested a ruling from the arbitrator that Shire cannot compel Meijer to arbitrate its antitrust claims.[14]

Though there were others, the gravamen of Meijer's position in arbitration was that Actavis had waived or relinquished all contractual rights to arbitrate these claims, and that therefore there was nothing for Shire to piggyback. After briefing concluded but before the arbitrator ruled, the Supreme Court issued its decision in *Morgan*, holding that "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration," and that "a court may not devise novel rules to favor arbitration over litigation."[15] Because

---

[11] *Id.* at 12–13 (citing *Apollo*, 886 F.2d 469 (1st Cir. 1989)).

[12] *Id.* at 19–22.

[13] *Id.* at 20 ("Although Shire could have sought discovery from Meijer prior to class certification and did not, the Court is not prepared to find that Shire waived its right to arbitrate by failing to do so, especially in light of the presumption against waiver"); 21 (quoting *FPE Found.*, 801 F.3d at 29 ("Although a party may waive a right to arbitrate—either explicitly or through its conduct—we resolve any doubts in favor of arbitration.")); 24 ("Thus, after considering the six waiver factors, and resolving any doubt in favor of arbitration, *FPE Found.*, 801 F.3d at 29, the Court finds that Shire has not waived its right to seek arbitration of Meijer's claims against it.").

[14] Barnes Decl., Ex. 2, March 16, 2021 Arbitration Demand Pursuant to Court Order at 1–2 ("Arbitration Demand").

[15] 142 S. Ct. at 1713.

*Morgan* bears directly on the arbitrability of Meijer's antitrust claims against Shire, Meijer sought leave for supplemental briefing.[16] The arbitrator denied Meijer's request; according to the arbitrator, "[t]he issue presented in the Supreme Court's opinion is insufficiently instructive on the issue in this arbitration to aid the decisional process."[17]

On June 8, 2022, the Arbitrator's Decision issued.[18] The arbitrator drew tight boundaries on her ruling, stating "the District Court had to decide that a valid arbitration agreement existed in order to defer issues of enforceability to the arbitrator" and so the "issues to be addressed by the arbitrator are, therefore, whether Meijer's claims against Shire are covered by the arbitration provision, and whether Shire can invoke the doctrine of equitable estoppel . . . ."[19] So tightly prescribed in the interpretation of its charge, the decision fails to consider Meijer's arguments that the arbitration agreement between Actavis and Meijer with respect to these claims was long waived, and that it was released, superseded, and extinguished by the Actavis Settlement Agreement.[20] The arbitrator also declined to follow the Supreme Court's ruling in *Morgan*; instead, the arbitrator disregards *Morgan* by applying a novel rule to favor arbitration over litigation based on a "pro-arbitration policy" that the Supreme Court rejected in *Morgan*.[21] As to an explicit reference to *Morgan*, the arbitrator only stated: "The District Court has already addressed the issue of waiver, and should it wish to review the

---

[16] Barnes Decl. Ex. 3, May 24, 2022 Meijer's Letter Requesting Supplemental Briefing.

[17] Barnes Decl. Ex. 4, May 24, 2022 Arbitrator's Letter Denying Supplemental Briefing.

[18] Barnes Decl. Ex. 1, Arbitrator's Decision.

[19] Barnes Decl. Ex. 1, Arbitrator's Decision at 6–7.

[20] Barnes Decl. Ex. 1, Arbitrator's Decision at 6–7; *see also Meijer's* arbitration submissions: Barnes Decl., Ex. 5 Jan. 24, 2022 Meijer's Reply in Opp'n to Compel Arbitration of Meijer's Antitrust Claims Against Shire at 1–4, 5–10 ("Meijer Reply"), and Barnes Decl., Ex. 6, March 25, 2022 Meijer Suppl. Submission in Opp'n to Shire's Mot. to Compel Arbitration of Meijer's Antitrust Claims at 3 ("Meijer Suppl. Submission").

[21] Barnes Decl. Ex. 1, Arbitrator's Decision at 7, 8, 10, 11.

determination in light of the recent precedent it is free to do so."[22]

## C.     The Actavis Settlement

These developments occur against the backdrop of this Court's finalization of the Actavis settlement. On September 1, 2020, Meijer and Actavis entered into a settlement agreement conditioned upon the approval of this Court.[23] On December 9, 2020, this Court held a fairness hearing and approved the settlement agreement. By its terms, the Actavis Settlement Agreement became final and effective on January 8, 2021, upon the expiration of the time for appeal from the Final Approval Order.[24]

The Actavis Settlement Agreement released Meijer from "all claims, regardless of legal theory, that would have been a compulsory counterclaim in this Action"; it "supersede[d] all prior agreements or understandings … with respect to the subject matter"; and it contains its own provision for resolving disputes pertaining to the subject matter, providing that the parties "hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Massachusetts for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement."[25]

The Court had not approved the Actavis Settlement Agreement and the settlement was neither final nor effective when the parties briefed Shire's motion to compel arbitration. The Meijer Arbitration Referral Order thus gives no indication that the Court considered the Actavis Settlement Agreement and its effect on these issues when granting Shire's motion.

---

[22] Barnes Decl. Ex. 1, Arbitrator's Decision at 10.

[23] Actavis Settlement Agreement ¶ 6.

[24] Actavis Final Approval Order ¶ 6; Actavis Settlement Agreement ¶ 6.

[25] Actavis Settlement Agreement ¶¶ 10, 19, 25.

### III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[26] District courts have the inherent power to grant relief from interlocutory judgments at any time prior to final judgment as justice requires,[27] and decisions to render such relief are at the district court's discretion.[28] A court has "substantial discretion and broad authority to grant or deny" a motion for reconsideration.[29] It may grant such a motion "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."[30]

### IV.   ARGUMENT

We first address whether the Court should exercise its discretion to reconsider the Meijer Arbitration Referral Order. If the Court grants reconsideration, we the argue the Court should conclude that no further arbitration proceedings are warranted, and that Meijer is an adequate class representative.

**A.   The Court should reconsider the Meijer Arbitration Referral Order.**

The Court should reconsider the Meijer Arbitration Referral Order given (i) the intervening change in the law presented by *Morgan*, (ii) the changed circumstances presented by the Arbitrator's Decision, and (iii) manifest injustice.

---

[26] Fed. R. Civ. P. 54(b).

[27] *Bethlehem Steel Export Corp. v. Redondo Constr. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998); *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985).

[28] *Geffon v. Micrion Corp.*, 249 F.3d 29, 38 (1st Cir. 2001) (interlocutory orders "remain open to trial court reconsideration" until the entry of judgment (quoting *Perez v. Crespo-Guillén*, 25 F.3d 40, 42 (1st Cir. 1994))).

[29] *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir. 2008).

[30] *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).

1.  ***Morgan*** **sweeps away an oft-cited preference for arbitration.**

*Morgan* is the kind of rare, precedent setting, and controlling decisional law that serves as a basis for the grant of reconsideration.

*Morgan* was a largely unexpected decision. But it changes the prevailing arbitration waiver law of many circuits, including the First Circuit law relied on by this Court, by holding that arbitration should not be favored over litigation. Like this case, *Morgan* involved the question of whether a party had waived a right to arbitrate by participating in litigation too long prior to any demand for arbitration.[31] As here, the Eighth Circuit held no waiver had occurred, based on "the strong federal policy favoring arbitration."[32] As a result, the Eighth Circuit required the imposition of an arbitration specific rule and required that the party opposing arbitration demonstrate prejudice caused by the delay.[33]

The Supreme Court disagreed, holding that:

> [T]he FAA's "policy favoring arbitration" does not authorize federal courts to invent special, arbitration-preferring procedural rules. Our frequent use of that phrase connotes something different. "Th[e] policy," we have explained, "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." Or in another formulation: The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

> And indeed, the text of the FAA makes clear that courts are not

---

[31] 142 S. Ct. at 1711–12.

[32] *Id.* at 1712.

[33] *Id.* at 1711–12.

to create arbitration-specific procedural rules like the one we address here. Section 6 of the FAA provides that any application under the statute—including an application to stay litigation or compel arbitration—"shall be made and heard in the manner provided by law for the making and hearing of motions" (unless the statute says otherwise). A directive to a federal court to treat arbitration applications "in the manner provided by law" for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness. Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration.[34]

The Meijer Arbitration Referral Order—quite understandably, of course—relied on the special federal rule that arbitration is to be favored.[35] For example, with respect to the prejudice factor of waiver (a rule that no longer exists), this Court held that the factor favored Shire because any prejudice from the waiver to Meijer individually, or to the DPPs collectively, was "minimal" and "insufficient to support a finding of litigation-conduct waiver."[36] As another example, the Court held that "after considering the six waiver factors, and resolving any doubt in favor of arbitration, the Court finds that Shire has not waived its right to seek arbitration of Meijer's claims against it."[37] The Court added that it was "sympathetic to Plaintiffs' position and takes no pleasure in potentially further delaying a case that has gone on for this long."[38]

## 2. The arbitrator failed to address the arbitrability question of whether the arbitration provisions continued to exist and were valid.

Changed circumstances also warrant reconsideration.

When this Court issued the Meijer Arbitration Referral Order, it referred to the

---

[34] *Id.* at 1713–14 (citations omitted).

[35] *See* Meijer Arbitration Referral Order at 17 ("we resolve any doubts in favor of arbitration. Such an approach is consistent with a liberal federal policy favoring arbitration" (quoting *FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015); 20–21 ("the Court is not prepared to find that Shire waived its right to arbitrate by failing to do so, especially in light of the presumption against waiver" and again citing *FPE Found.*, 801 F.3d at 29); *see also id.* at 17 (noting that the question of waiver of an arbitration right "is a matter of federal law.").

[36] Meijer Arbitration Referral Order at 23–24.

[37] *Id.* at 24 (citation omitted).

[38] *Id.* at 25.

arbitrator all issues of arbitrability, including the continuing enforceability of the contract. It was reasonable for the Court to expect that all such issues would be addressed by the arbitrator. After all, in *Apollo* (a case heavily relied upon by the Meijer Arbitration Referral Order), the First Circuit concluded that where there is a clear and unmistakable delegation to an arbitrator, issues of arbitrability include "[w]hether the right to compel arbitration survives the termination of the agreement, and if so, whether that right was validly assigned to the defendants and whether it can be enforced by them against Apollo are issues relating to the continued existence and validity of the agreement."[39]

So, before the arbitrator, Meijer presented facts and argument showing that Actavis had waived rights to enforce the arbitration provisions as to these antitrust claims, and that Actavis had relinquished those rights in a binding federal court judgment. In short, it presented the argument that there was no current valid agreement to arbitrate.

But the Arbitrator's Decision does not address the issue. Instead, it addressed only the narrow scope issue (to which there was little dispute) and applied a pre-*Morgan*, arbitration-friendly concept of equitable estoppel (to which we have moved to vacate).

Reconsideration is therefore warranted because the Meijer Arbitration Referral Order was premised on the assumption the arbitrator would decide this issue, but it did not.

## B. The Court should conclude that no further arbitration proceedings are warranted, and that Meijer is an adequate class representative.

Upon re-evaluation of the issues considering *Morgan*, the Arbitrator's Decision and the Actavis Settlement, this Court should conclude that no further arbitration proceedings are warranted, and that Meijer is an adequate class representative.[40]

---

[39] 886 F.2d at 473.

[40] As to any non-arbitration issues related to the adequacy of Meijer as a class representative, we incorporate the prior briefing on those issues. *See* Sept. 8, 2020 Meijer Mot. to be Appointed Class Representative,

1. **This Court should decide the questions of whether the parties to a contract waived arbitral rights and whether there remains a valid agreement to arbitrate.**

The question whether a contractual agreement to arbitrate exists is a matter for a court, not an arbitrator.[41] "The court's first step in determining whether to compel arbitration is to identify a valid and enforceable agreement to arbitrate between the parties."[42] And—as the Meijer Arbitration Referral Order observed—whether a party to that agreement has waived its rights is also a matter for a court.[43] This Court can and should decide the questions whether Actavis waived any rights to arbitrate these antitrust claims and whether the parties to the agreement (Meijer and Actavis) extinguished any arbitral rights through the Actavis settlement.

2. **Actavis waived any contractual rights to arbitrate and there no longer remains a valid agreement to arbitrate these antitrust claims.**

Under the Arbitration Act, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."[44] The so-called policy favoring arbitration "does not authorize federal courts to invent special, arbitration-preferring procedural rules" but

---

ECF No. 75; Sept. 22, 2020 Shire's Opp'n to Meijer Mot. to be Appointed Class Representative, ECF No. 503; Oct. 9, 2020 Meijer Reply in Support of Meijer's Mot. to be Appointed Class Representative, ECF 526; Oct. 27, 2020 Shire's Sur-Reply in Opposition to Meijer's Mot. to be Appointed Class Representative, ECF 536.

[41] *See, e.g., McKenzie v. Brannan*, 19 F.4th 8, 17 (1st Cir. 2021) ("We employ a presumption that courts (not arbitrators) must 'resolve gateway disputes about whether a particular arbitration clause binds parties in a particular case.'" (citations omitted)). *See id.* at 18 ("'courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement.'" (quoting *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011) and *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299–300 (2010)).

[42] *Air-Con, Inc. v. Daikin Applied Latin Am.*, LLC, 21 F.4th 168, 174 (1st Cir. 2021).

[43] Meijer Arbitration Referral Order at 16-17 (noting *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005) holds that "waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court" and finding *Marie* "require[`s]" the Court to "rule on the issue of waiver.").

[44] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019) (citing *Rent–A–Center*, 561 U.S. at 67).

rather "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."[45]  Thus, "the policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.' Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation."[46]

In this case, while the contracting parties—Meijer and Actavis—agreed to the two arbitration provisions, both waived them and both relinquished rights to enforce arbitration of these antitrust claims. Actavis participated for years in the litigation (*e.g.*, Rule 12(b)(6) practice, discovery, class certification, experts, *Daubert* motions, summary judgment) without ever raising arbitration, even as a defense or set-off to certification of a class that included all its direct purchasers. Actavis then entered a settlement, invoked the jurisdiction of the federal court to approve a nationwide settlement of all claims, and agreed that this Court would have exclusive jurisdiction over the settlement of these claims. At no point in the process did Actavis even suggest a reservation of arbitral rights. In short, as a matter of basic contract law, as between the parties to the agreement, the arbitration provisions were waived and relinquished and are no longer are valid for these purposes.

In the Meijer Arbitration Referral Order, this Court employed the six-part test of the First Circuit in *FPE Found. v. Cohen*[47] to determine the issue of waiver of an arbitration provision.[48] That test is based on arbitration-friendly principles; after *Morgan*, it is no longer good law. As the Supreme Court wrote in *Morgan*, "[o]utside the arbitration context, a federal

---

[45] *Morgan*, 142 S. Ct. at 1713 (citations and internal quotation marks omitted).

[46] *Id.* (citations omitted).

[47] *FPE Found*, 801 F.3d at 29.

[48] Meijer Arbitration Referral Order at 17.

court assessing waiver does not generally ask about prejudice." Instead,

> Waiver, we have said, is the intentional relinquishment or abandonment of a known right. To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other. As Judge Colloton noted in dissent below, a contractual waiver "normally is effective" without proof of "detrimental reliance."[49]

Applying the (now) correct test for waiver of a contractual right, the arbitration provisions were waived by Actavis as to the antitrust claims in this case. Focusing "on the actions of the person who held the right" (as *Morgan* dictates we must), Actavis's acts show the intentional relinquishment and abandonment of the known arbitral rights it had placed into its distribution agreements, including that with a buying group of purchasers. This occurred both well before the settlement (by litigation conduct over several years through virtually every stage of civil litigation other than trial), and under the settlement. There is no valid agreement to arbitrate these claims.

> **3.** **This Court should decide the question of whether Shire can attach itself to contractual rights to arbitrate that the parties relinquished and waived.**

In assessing whether Shire, as a non-signatory to the agreements, may nevertheless take advantage of contract rights long waived by the parties to the agreement, a threshold questions crops up: is that question a matter of the existence of contractual rights *vel non* (which undoubtedly is a matter for the Court to decide), or an issue of the arbitrability of those rights (which may or may not be a matter for the Court).

The better view on these facts is the former.

The issue whether a contract to arbitrate exists is always for a court. In *Henry Schein,*

---

[49] *Morgan,* 142 S. Ct. at 1713 (citations omitted).

the Supreme Court reiterated the long-standing principle that "before referring a dispute to an arbitrator, the court determines whether a *valid* arbitration agreement exists."[50] Even "where there is a clear and unmistakable delegation of arbitrability issues, the court's proper inquiry" remains to determine "whether a *valid* arbitration agreement exists."[51] Decisions regarding the validity of an arbitration provision are for a court.

And whether a party has waived those rights is also for a court.[52] Were Actavis to have asserted arbitration here, the issue whether a contractual right still existed for it to do so would certainly have been decided by this Court. And if an assignee or third-party beneficiary to those agreements sought to do so, the existence of a contractual right would also have been decided by this Court. The notion, then, that Shire—as a non-signatory, non-assignee, non-third-party beneficiary to the contract—can test the existence of those contracts rights before an arbitrator is non-sensical. Shire should not have greater arbitration rights than a signatory, assignee, or third-party beneficiary to that agreement.

Here, the question whether there are arbitral rights to which Shire might attach itself is best treated as an issue of the validity of the provisions as applied to these antitrust claims. And that issue should be decided by this Court.

We recognize that the second view—that the issue is one of arbitrability, not validity—is not without merit. In *Apollo Computer, Inc. v. Berg*, the First Circuit treated as an issue of arbitrability "[w]hether the right to compel arbitration survives the termination of the agreement, and if so, whether that right was validly assigned to the defendants and whether it

---

[50] 139 S. Ct. at 530 (emphasis added).

[51] *Bossé v. New York Life Ins. Co.*, 992 F.3d 20, 28 (1st Cir. 2021) (emphasis added).

[52] *See Bossé*, 992 F.3d at 32 (addressing plaintiff's argument that the defendant "forfeited its right to arbitrate his claims" as a result of waiver because it was a "quintessentially legal issue[]"); Meijer Arbitration Referral Order at 16-17 (noting *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005) holds that "waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court" and finding *Marie* "require[s]" the Court to "rule on the issue of waiver.").

can be enforced by them against Apollo are issues relating to the continued existence and validity of the agreement."[53] And this Court, in the Meijer Arbitration Referral Order, did the same.

The problem here, however, is that the arbitrator did not. The arbitrator simply assumed that this Court must have ruled that the arbitration provisions continued to exist and were valid. Based on that assumption, the arbitrator decided only the issues of scope and "equitable estoppel." (We challenge the merits of the latter ruling in a separate motion to vacate filed on this date.) So, the matter is back before this Court for a ruling.

4. **As a non-signatory, Shire cannot force arbitration based on a contract the parties waived and relinquished and is therefore invalid.**

Since there is no continuing, valid agreement to arbitrate, Shire has nothing to enforce. Shire cannot force arbitration based on a contract the parties waived and relinquished and is therefore invalid. Reconsideration should reach a result different than that inherent in the Meijer Arbitration Referral Order.

When addressing the "participating in lawsuit" waiver factor, this Court chose to focus not on Actavis's acts, but only on Shire's, and not impute Actavis's action to Shire. The Court reasoned that that Shire had not "stepped into Actavis' shoes" and that knowledge to Shire cannot be imputed "from an unaffiliated co-defendant." This Court did not cite authority for those positions,[54] but in any event after *Morgan*, the analysis must change. *Morgan* holds that to "decide whether a waiver has occurred, the court focuses on the actions of *the person who held the right*" and that the "analysis applies to the waiver of a contractual right, as of any other."[55] The

---

[53] 886 F.2d 469, 473–74 (1st Cir. 1989).

[54] Meijer Arbitration Referral Order at 19. The order then cites to *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 422-23 (5th Cir. 2014), though, which reached the opposite result.

[55] *Morgan*, 142 S. Ct. at 1713 (emphasis added).

party who held the right is Actavis, not Shire; it is Actavis's actions to which the waiver analysis must apply. (We note how this makes practical sense. Non-signatories to an agreement will likely be unaware of the arbitral rights of another until well into litigation, during which the signatories will have waived those rights. Focusing on the timing of the non-signatory's decision to seek arbitration would allow it to acquire greater rights than those of the parties to the agreement itself.) And in addressing the duty to investigate, the Meijer Arbitration Referral Order chose not to impose a duty upon Shire to do so "especially in light of the presumption against waiver." This, too, cannot hold after *Morgan*.

When addressing the second waiver factor, *i.e.*, whether Shire has invoked the litigation machinery, the Meijer Arbitration Referral Order again chose not to focus on Actavis's actions, but instead noted Shire's ignorance of the arbitration provisions during most of the litigation.[56] The order does cite *In re Cox*,[57] a Tenth Circuit case finding waiver where a party, knowing of arbitration rights, participated in litigation but later tried to unwind a certified class "by asserting its purported right to arbitrate 87% of the class's claims."[58] Applied here, *In Re Cox* would certainly result in Actavis waiver. Shire also actively litigated the case for years and through summary judgment. But the Meijer Arbitration Referral Order again uses Shire's ignorance of the arbitral rights as a reason to allow it to arbitrate.[59]

When addressing the fifth waiver factor, *i.e.*, whether discovery had progressed beyond where it might for arbitration, the Meijer Arbitration Referral Order again says there was no

---

[56] Meijer Arbitration Referral Order at 21.

[57] *In re Cox Ents., Inc. Set-Top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1118-19 (10th Cir. 2015).

[58] Meijer Arbitration Referral Order at 21 (describing *In re Cox*, 790 F.3d at 1118-19).

[59] The Meijer Arbitration Referral Order acknowledges that the third factor, how close the case was to trial, weighed in favor of waiver. As to the fourth waiver factor, Shire had filed no counterclaims. *Id.* at 22.

abuse because "Shire was not aware of its asserted right when it engaged in the discovery."[60] The order notes that the "waiver defense is meant to avoid gamesmanship by preventing a party from unduly delaying a motion to arbitrate to gain a strategic or tactical advantage during the course of litigation."[61] That certainly would have applied to any effort by Actavis to arbitrate on the eve of a trial of these antitrust claims. The order, however, cites no authority as to why Shire acquires greater rights to the agreement than Actavis had.

As to the sixth waiver factor, the Meijer Arbitration Referral Order employed the prejudice rule against Meijer.[62] After *Morgan*, no such arbitration-friendly federal procedural rule exists.

And as to the totality of the waiver decision, the Meijer Arbitration Referral Order states that "after considering the six waiver factors and resolving any doubt in favor of arbitration . . . the Court finds that Shire has not waived its rights to seek arbitration of Meijer's claims against it."[63] In summary, the Meijer Arbitration Referral Order applied pre-*Morgan* precedent, focused solely on Shire's conduct, rather than that of Actavis, and evaluated waiver because of the "presumption against waiver" and desire to "resolve doubts in favor of arbitration."[64]

After *Morgan*, the Court's analysis no longer holds. Without the presumptions against waiver and in favor of arbitration, the Court cannot disregard Actavis's waiver when evaluating Shire's attempt to compel arbitration based on Actavis's extinguished right to arbitration.

The (now) correct legal analysis is to look to Delaware law to determine if traditional

---

[60] *Id.* at 23.

[61] *Id.* at 21.

[62] *Id.* at 23–24.

[63] *Id.* at 24.

[64] *See supra* n.13.

(*i.e.*, not arbitration specific) contract law affords a non-party a basis to sue under the circumstances. Here, there is none. Shire does not claim it is an agent of Actavis, or an assignee, or a third-party beneficiary; it cannot legitimately claim any such status. And Delaware has stringent requirements for qualification as a third-party beneficiary of a contract, such that an arbitration clause could be enforced—requirements which Shire does not even argue are satisfied here.[65] Under generally applicable contract law (rather than the special arbitration rules that may no longer be applied), a non-signatory (and non-beneficiary) to an agreement has no basis to enforce rights that a signatory to the agreement had waived, let alone those that were extinguished and superseded.[66] Under *Morgan*, arbitration waivers can no longer be treated any differently. Courts "may not devise novel rules to favor arbitration over litigation,"[67] so it is Actavis's conduct, not Shire's, that counts. Because *Actavis* had arbitration agreements with Meijer, and because *Actavis* indisputably waived its rights under those agreements, there are no arbitration rights for Shire to invoke.

Failing to attribute Actavis's waiver to Shire—even though Shire's claimed "equitable" right to arbitration derived entirely from Actavis's right—amounts to the application of a "novel rule" favoring arbitration over litigation. Although understandable given the First

---

[65] *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (holding that if it was "not the promisee's intention to confer benefits upon a third party … the third party will have no enforceable rights under the contract.").

[66] The assignor/assignee and third-party beneficiary contexts are two examples. *See Restoration Preservation Masonry, Inc. v. Grove Europe LTD.*, 325 F.3d 54 (1st Cir. 2003) (holding that an assignee takes what the assignor possesses - "warts and all" – and is therefore subject to defenses that apply to an assignor, including waiver); Restatement (Second) of Contracts, Chapter 14 § 311(1) and (2) ("Discharge or modification of a duty to an intended beneficiary by conduct of the promisee or by subsequent agreement between promisor and promisee is ineffective if a term of the promise creating the duty so provides."). Meijer recognizes that the Court previously distinguished *Restoration* because it viewed contractually assigned rights as distinct from rights obtained via arbitration estoppel. Meijer respectfully submits, though, that *Morgan's* directive to treat arbitration rights like any other contract rights eliminates the relevance of this distinction. As for the third-party beneficiary rule stated in the Restatement, Actavis made no promise to Shire not to waive arbitration rights. Accordingly, Actavis's waiver would bind Shire under black letter beneficiary law.

[67] *Morgan*, 142 S. Ct. at 1713.

Circuit law at the time, such a rule now directly conflicts with *Morgan*. In addition, the Meijer Arbitration Referral Order is grounded in part on the belief that waiver requires prejudice, something the plaintiffs could not show. But after *Morgan*, requiring a showing of prejudice to Meijer caused by the delay in invoking arbitration is no longer permitted in waiver analysis.

Any rights to arbitration Shire may possess derive from whatever contract rights Actavis had retained. While the Court previously rejected this argument, the Court's ruling was based on a legal test that improperly favored arbitration and is no longer governing law. After Morgan, the Court should reconsider and hold the arbitration clause was waived.

5.      **The Post-*Morgan* waiver factors overwhelmingly favor Meijer.**

The factors that remain of the First Circuit waiver test, when considered post-*Morgan*, favor waiver and thus Meijer. Regarding the first and second factors, there is no question that Actavis (and Shire) "actually participated in the lawsuit" and "invoked the litigation machinery" before Shire sought to arbitrate. They participated actively and in a sustained fashion, for nearly four years, through Rule 12 motions, answers, extensive fact discovery, expert reports, and discovery, *Daubert* motions, class motions, summary judgement motions and a variety of other pre-trial work. Had the Court considered Actavis's conduct relevant, waiver was easily established. The Court found these factors favored Shire, however, because the "relevant time period begins when Shire learned of Meijer's agreements with Actavis" and Shire was not at fault for not seeking discovery into the alleged defense sooner.[68] This prior analysis cannot be squared with *Morgan* because it disregarded Actavis's knowledge and conduct and was based on a now defunct presumption and special rules favoring arbitration.[69] Moreover, the Court's

---

[68] Meijer Arbitration Referral Order at 19–20.

[69] The same is true of the Court's holding that waiver required a showing of gamesmanship. While the Court held there was no evidence "Shire used the litigation machinery for improper purpose," Meijer Arbitration Referral Order at 21, Actavis litigated for years knowing it could seek to arbitrate instead.

conclusion that Shire's failure to discover its defense sooner was excusable was also expressly premised in part on the presumption against waiver.[70] This decision should also be reconsidered and reversed given the change in law.

The Court previously held that the third factor—how close the matter was to trial—favored waiver.[71] *Morgan* does not change this factor so it once again favors Meijer. As to the fourth factor—whether the party seeking to compel arbitration has invoked the jurisdiction of the court by filing a counterclaim—the Court did not give it significant weight before[72] and there is no reason to now. In sum, the factors that remain after *Morgan* overwhelmingly favor Meijer and a finding of waiver. Thus under the binding *Morgan* framework, the Court's ruling can and should be different.

## V.   CONCLUSION

*Morgan* radically changes the landscape with respect to arbitration waivers. The threshold for waiver is unquestionably lower than it was at the time of Court's prior decision, and the focus is on what contractual rights exist to enforce arbitration. Under the post-*Morgan* framework, a finding of waiver is justified and necessary based on the litigation conduct and settlement by Actavis. Accordingly, Meijer respectfully requests that this Court reconsider its ruling considering *Morgan*, deny Shire's Motion to compel arbitration, and appoint Meijer as a class representative so that this case can go to trial.

---

[70] Meijer Arbitration Referral Order at 20–21.

[71] *Id.* at 22.

[72] *Id.* at 22 n.13.

Dated: July 8, 2022                    Respectfully submitted,

/s/ *Lauren G. Barnes*
Lauren G. Barnes (BBO #663819)
Thomas M. Sobol (BBO #471770)
Kristie A. LaSalle (BBO #692891)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
lauren@hbsslaw.com
tom@hbsslaw.com
kristiel@hbsslaw.com

*Counsel for Proposed Intervenor BI-LO, LLC,
Plaintiffs Meijer, Inc. and Meijer Distribution,
Inc., and Lead Class Counsel for the Direct
Purchaser Class*

Richard M. Brunell (BBO #544236)
HILLIARD & SHADOWEN, LLP
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-2398
rbrunell@hilliardshadowenlaw.com

*Counsel for Proposed Intervenor BI-LO, LLC*

Joseph M. Vanek
Paul E. Slater
David P. Germaine
John P. Bjork
SPERLING & SLATER, P.C.
55 W. Monroe, Suite 3500
Chicago, IL 60603
Telephone: (312) 224-1500
Facsimile: (312) 224-1510
jvanek@sperling-law.com
pslater@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com

*Counsel for Plaintiffs Meijer, Inc. and Meijer
Distribution, Inc. and Additional Counsel for the
Direct Purchaser Class*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 8, 2022.

Dated: July 8, 2022                    /s/ *Lauren G. Barnes*
                                       Lauren G. Barnes