**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSSETS**

In re INTUNIV ANTITRUST LITIGATION

This Document Relates to: *Direct Purchaser Actions*

Civil Action No. 1:16-cv-12653-ADB

**SHIRE'S OPPOSITION TO MEIJER'S MOTION TO
VACATE THE ARBITRATOR'S FINAL AWARD (ECF No. 695) AND CROSS-
MOTION TO CONFIRM THE FINAL AWARD**

**[LEAVE TO FILE UNDER SEAL GRANTED ON JANUARY 25, 2024 (ECF No. 715)]**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

LEGAL STANDARD............................................................................................................6

ARGUMENT .....................................................................................................................9

    I.     Arbitrator Duncan Did Not Engage In Misconduct Or Refuse To Hear Pertinent And Material Evidence ......................................................................... 9

    II.    Arbitrator Duncan Did Not Exceed Her Powers...................................................... 11

        A.    Arbitrator Duncan Had Continuing Jurisdiction To Award Attorneys' Fees .........................................................................................11

        B.    The Fee Award Was Properly Based On And Required By The Agreements ........................................................................................16

    III.    The Court Should Confirm The Final Award And Deny Meijer's Request For A Stay Of Enforcement Of The Final Award.................................................. 19

    IV.    The Court Should Award Shire Its Fees For Responding To Meijer's Motion................................................................................................................... 19

RELIEF REQUESTED........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arriola v. Martinez*,
2016 WL 11582656 (W.D. Tex. May 20, 2016) ....................................................14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...............................................................................................7

*Axia Netmedia Corp. v. Massachusetts Tech. Park Corp.*,
973 F.3d 133 (1st Cir. 2020)..................................................................6, 8, 16, 19

*Azod v. Robinson*,
2022 WL 18143882, at *11-13 (C.D. Cal. Nov. 9, 2022), *aff'd*, 2024 WL
163371, at *2  (9th Cir. Jan. 16, 2024) ................................................................10

*Colonial Wholesale Bev. v. Loc. 59, Int'l Bhd. of Teamsters*,
549 F. Supp. 3d 198 (D. Mass. 2021) ..................................................................20

*Crawford Grp., Inc. v. Holekamp*,
2007 WL 844819 (E.D. Mo. Mar. 19, 2007) .......................................................12

*Cytyc Corp. v. DEKA Prods. Ltd. P'ship*,
439 F.3d 27 (1st Cir. 2006)....................................................................................7

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*,
932 F.3d 1 (1st Cir. 2019)......................................................................................9

*Doral Fin. Corp. v. Garcia-Velez*,
725 F.3d 27 (1st Cir. 2013).......................................................................6, 8, 9, 11

*First Federal Finance Corp. v. Carrion-Concepcion*,
2014 WL 12726391 (D.P.R. Aug. 6, 2014)..............................................9, 14, 16

*FleetBoston Fin. Corp. v. Alt*,
638 F.3d 70 (1st Cir. 2011)....................................................................................9

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008)...............................................................................................8

*Hewlett v. IBM Corp.*,
636 F. Supp. 3d 260 (D. Mass. 2022) ........................................................7, 8, 10

*Hewlett-Packard Co. v. Berg*,
61 F.3d 101 (1st Cir. 1995).................................................................................19

*Hoolahan v. IBC Advanced Alloys Corp.*,
    947 F.3d 101 (1st Cir. 2020) ................................................................. *passim*

*Hoteles Condado Beach, La Concha and Convention Ctr. v. Unión De
    Tronquistas Loc. 901*,
    763 F.2d 34 (1st Cir. 1985) .................................................................8, 9, 10

*Int'l Ass'n of Heat & Frost Insulators v. Thermo-Guard Corp.*,
    880 F. Supp. 42 (D. Mass. 1995) ...............................................................20

*Jules v. Andre Balazs Prop.*,
    2023 WL 5935626 (S.D.N.Y. Sept. 2023) ...............................................7, 10

*Keebler Co. v. Truck Drivers, Loc. 170*,
    247 F.3d 8 (1st Cir. 2001) ............................................................................8

*Ky. Peerless Distilling Co. v. Fetzer Vineyards Corp.*,
    2023 WL 2160851 (W.D. Ky. Feb. 22, 2023) .............................................15

*Lobster 207, LLC v. Pettegrow*,
    2021 WL 5868129 (D. Me. Dec. 10, 2021) ..................................................8

*Loc. 285, Serv. Empl. Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*,
    64 F.3d 735 (1st Cir. 1995) .......................................................................20

*Morgan v. Sundance*,
    596 U.S. 411 (2022), and (b) ...................................................5, 7, 16, 17

*Northern New England Tel. Operations LLC v. Loc. 2327, Int'l Bhd. of Elec.
    Workers, AFL-CIO*,
    735 F.3d 15 (1st Cir. 2013) .......................................................................20

*Providence J. Co. v. Providence Newspaper Guild*,
    271 F.3d 16 (1st Cir. 2001) ...................................................................13, 14

*Raymond James Fin. Servs., Inc. v. Fenyk*,
    780 F.3d 59 (1st Cir. 2015) ..........................................................................6

*Remote Sol. Co. v. FGH Liquidating Corp.*,
    349 F. App'x 696 (3d Cir. 2009) ...............................................................18

*Shire LLC et al v. Meijer, Inc. et al*,
    No. 1:23-cv-10479-AT (S.D.N.Y.), Dkt. No. 1 .............................................6

*Sparton Corp. v. O'Neil*,
    2018 WL 3025470 (Del. Ch. June 18, 2018) ..............................................18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................................8

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010)..................................................................13

*Toddle Inn Franchising, LLC v. KPJ Associates, LLC*,
    8 F. 4th 56 (1st Cir. 2021)....................................................................18

*United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*,
    484 U.S. 29 (1987)................................................................................9

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union v. Wise Alloys, LLC*,
    807 F.3d 1258 (11th Cir. 2015) ...........................................................19

*Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*,
    861 F.3d 287 (1st Cir. 2017) (Souter, J. (Ret.), sitting by designation)..........................13, 14

*White v. N.H. Dep't of Emp't Sec.*,
    455 U.S. 445 (1982)..............................................................................13

**Statutes**

9 U.S.C. § 9....................................................................................................9, 19, 20

9 U.S.C. § 13.........................................................................................................20

9 U.S.C. § 16(a)(1)(D)...........................................................................................19

FAA...................................................................................................................*passim*

FAA, Section 10(3).............................................................................................7, 9

FAA, Section 10(4)..................................................................................................7

FAA Section 10(a)...................................................................................................7

Federal Arbitration Act............................................................................................1

**Other Authorities**

AAA Commercial Arbitration Rules ...................................................................*passim*

Fed. R. App. P. 4(a)...............................................................................................19

Rule 47(d)(2)............................................................................................................4

## INTRODUCTION

Meijer's Motion to Vacate the Final Award is the latest chapter in what former Fourth Circuit Judge, Arbitrator Allyson K. Duncan called ██████████████████████████ ECF No. 696, Declaration of Lauren G. Barnes ISO Meijer's Mot. to Vacate ("Barnes Decl."), Ex. 9 at 5.  The Motion treads no new ground and simply rehashes arguments that both Arbitrator Duncan and this Court have previously considered and rejected.

Meijer's "aggressive resistance" has caused Shire to incur over ████████ in fees and costs to compel Meijer to arbitrate, with Meijer re-litigating each stage of the dispute.  Consistent with the underlying arbitration agreements, █████████████████████████████, at the conclusion of the arbitration, Shire petitioned Arbitrator Duncan to award Shire's fees and costs.  On November 2, 2023, after full briefing and a hearing, Arbitrator Duncan ████████████ ████████████████████████████.  *Id.*  In the Final Award, Arbitrator Duncan correctly and reasonably applied the relevant rules and agreements and determined, *inter alia*, that ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████.  *See generally id.* ████████████████████████████████████.  *See generally id.*

As shown below, there is simply no basis to vacate the Final Award, and Meijer's Motion does not come close to meeting the exceedingly high standard for vacatur under the Federal Arbitration Act ("FAA").  To the contrary, the Final Award should be confirmed and Shire awarded its fees.[1]

---

[1] The present Opposition to Meijer's Motion to Vacate and Cross-Motion to Confirm the Final Award is submitted without prejudice to Shire's outstanding motion to transfer Meijer's Motion to Vacate to SDNY, where Shire's first-filed Petition to Confirm the Final Award is pending.  *See* ECF Nos. 700, 701.

## FACTUAL AND PROCEDURAL BACKGROUND

The present antitrust litigation was initiated in this Court on December 30, 2016 ("Antitrust Litigation").  ECF No. 1.  On June 2, 2020, non-party Meijer moved to intervene in the Antitrust Litigation, and on September 8, 2020, Meijer asked to serve as class representative.  *See* ECF Nos. 439, 485; *see also* ECF No. 613 at 1.  After limited discovery into Meijer's adequacy to serve as class representative, Shire moved to compel Meijer to arbitrate its claims in accordance with two agreements (ECF No. 475); namely: (i) a certain Retail Purchase Agreement ("RPA") (ECF No. 476, Ex. 1) and (ii) a certain Generic Products Purchase Agreement ("GPPA") (ECF No. 476, Ex. 4) (collectively, the "Agreements").

The Agreements provide that (i)  (ii) ; and (iii) . ECF No. 476, Ex. 1 (RPA), § 14.2; *Id.*, Ex. 4 (GPPA), §§ 14.3(a)-(b).  The Agreements also provide that *Id.*, RPA, § 14.2; *Id.*, GPPA, § 14.3(b).[2]

On January 29, 2021, this Court granted Shire's motion to compel arbitration, compelling Meijer to arbitrate the arbitrability of its claims.  *See* ECF Nos. 553, 554.  On June 8, 2022, Arbitrator Duncan entered her "Order on Dispute as to Arbitrability on Referral from the District of Massachusetts" ("Arbitrability Order"), which found Meijer's claims to be arbitrable and that Shire, as a non-signatory to the Agreements, could enforce the Agreements' arbitration provisions under the doctrine of equitable estoppel.  ECF No. 696 ("Barnes Decl."), Ex. 2 at 6-14; *see also*

---

[2] All emphasis added, and internal citations, quotations, and alterations omitted, unless otherwise stated.

ECF No. 613 at 8.  In the closing section of the Arbitrability Order, Arbitrator Duncan instructed

the parties 

Barnes Decl., Ex. 2 at 14.  The parties complied on July 8, 2022, with ***Meijer's counsel*** sending

the following email to Arbitrator Duncan:



*Id.*, Ex. 3; *see also id.*, Ex. 9 (Final Award), at 2.  Meijer did *not* contend that Arbitrator Duncan

had relinquished her jurisdiction in rendering the Arbitrability Order, or that she lacked authority

to hear Shire's fee application.  *See id.*, Ex. 3.  To the contrary, Meijer informed Arbitrator Duncan

that                                                                              for Shire's application.  *Id.*

Also on July 8, 2022, Meijer filed a motion with this Court to vacate the Arbitrability Order,

as it stated it would.  ECF No. 574.  On November 3, 2022, Shire cross-moved to confirm the

Arbitrability Order.  ECF No. 602; *see also* ECF No. 613 at 2.

On February 5, 2023, 

.  Barlow Decl., Ex. A at 3.

On March 15, 2023, this Court denied Meijer's motion to vacate and granted Shire's cross-motion to confirm.  ECF No. 613.  Less than a week later, on March 20, 2023, ███████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Barlow Decl., Ex. A at 2.

████████████████████████████████████████████████████████████████

██████ . *Id.*  Again, Meijer said nothing.  *Id.*

As it had stated it would, ██████████████████████████████████████

███████████████████████ *See* Barnes Decl., Ex. 9 at 2.  The parties conferred on a briefing

schedule, as they had previously agreed to (*id.*, Ex. 3), and submitted the agreed-upon schedule,

which Arbitrator Duncan adopted.  Barlow Decl., Exs. B, C.  The schedule did not contemplate

Meijer filing a sur-response.  *Id.*, Ex. C. ██████████████████████████

█████████████████████████████ .  Barnes Decl., Exs. 5, 6.

████████████████████████████████████████ .  *See* Barnes Decl., Ex. 7; *see*

*also id.*, Ex. 9 at 2. ████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████ Barlow Decl., Ex. D at 1. ██████████████████████

███████████████████████████████████████████████████ *Id.*

On July 30, 2023, ████████████████████████████████████████████

███████████████████████████ .  Barnes Decl., Ex. 8. ███████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* at 2. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ Barlow Decl., Exs. E, F.

On August 25, 2023, ████████████████████████████████████

█████████████████████. Barnes Decl., Ex. 9 at 2. ████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████. *Id.* On September

11, 2023, ████████████████████████████████████████████ *Id.* at

3. █████████████████████████████████. *Id.* ████████████████

████████████████████████████████████████████████████

██████████████. *Id.* The re-opened record was closed again on October 9, 2023. *Id.*

On November 2, 2023, Arbitrator Duncan rendered the Final Award,[3] holding that:

(i)   ████████████████████████████████████████████
      ████████████████████ (Barnes Decl., Ex. 9 at 2, 7);

(ii)  ████████████████████████████████████████████
      █████████ (*id.*, Ex. 9 at 6-7); and

(iii) ████████████████████████████████████████.

*Id.*, Ex. 9 at 8. In total, pursuant to the Final Award, ████████████████████████

████████████████████████████████████████████

Arbitrator Duncan also analyzed and ***rejected*** each of Meijer's arguments, including, *inter*

*alia*, that (i) ████████████████████████████████; (ii) ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████; and

(iii) ████████████████████████████. Barnes Decl., Ex. 9 at 3-6.

---

[3] In its Motion to Vacate, Meijer gratuitously and misleadingly mislabels the Final Award—which Arbitrator Duncan expressly styled as a "Final Award"—as the "Post-Arbitration Fee Award." Mot. to Vacate, *passim*.

On November 30, 2023, Shire filed a Petition to Confirm the Final Award in the Southern

District of New York.[4]  Rather than challenge Shire's first-filed Petition to Confirm in SDNY by

filing a motion to vacate in that court, on January 12, 2024, Meijer filed its Motion to Vacate with

this Court.  ECF Nos. 695, 696.  For the reasons explained below, should the Court address the

merits of Meijer's Motion, it should deny the Motion, confirm the Final Award, and award Shire

its fees for responding to Meijer's latest round of redundant motion practice.

## LEGAL STANDARD

A federal court's authority to vacate an arbitration award is "extremely limited" and

"tightly circumscribed."  *Hoolahan v. IBC Advanced Alloys Corp.*, 947 F.3d 101, 111 (1st Cir.

2020) ("[A] federal court's authority to defenestrate an arbitration award is extremely limited.");

*Axia Netmedia Corp. v. Mass. Tech. Park Corp.*, 973 F.3d 133, 140 (1st Cir. 2020) ("The authority

of a federal court to disturb an arbitration award is tightly circumscribed."); *see also* ECF No. 613

at 9-10.  Accordingly, "[a court's] evaluation of an arbitrator's ruling is extremely narrow and

exceedingly deferential...and is indeed among the narrowest known in the law."  *Raymond James*

*Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 63-64 (1st Cir. 2015).  In fact, "[a]rbitral awards are nearly

impervious to judicial oversight."  *Doral Fin. Corp. v. Garcia-Velez*, 725 F.3d 27, 31 (1st Cir.

2013).

Meijer bears the heavy burden of proving that the Final Award should be vacated.  *Axia*,

973 F.3d at 141; *see also Hoolahan*, 947 F.3d at 110.  Section 10(a) of the FAA enumerates the

---

[4] *Shire LLC et al v. Meijer, Inc. et al*, No. 1:23-cv-10479-AT (S.D.N.Y.), Dkt. No. 1.  Contrary to
Meijer's contention that Shire filed its Petition to Confirm in SDNY to avoid "fac[ing] this court"
(Mot. to Vacate at 1), Shire filed in SDNY—as was proper under the FAA—in the interest of
efficiency, to avoid further strain on this Court's docket, and in view of the fact that Meijer is no
longer a party to the Antitrust Litigation.  *See* ECF No. 700-1, Declaration of Joshua S. Barlow
ISO Shire's Motion to Transfer (January 16, 2024), ¶ 3.

limited grounds for vacatur.  *See* 9 U.S.C. § 10(a).[5]  Meijer has invoked two such grounds (Mot. to Vacate at 7), namely:

> (i)      "where the arbitrators were guilty of misconduct...in refusing to hear evidence pertinent and material to the controversy..." (FAA, Section 10(3)); and

> (ii)     "where the arbitrators exceeded their powers...." (FAA, Section 10(4)).[6]

For **Section 10(a)(3)**:"[A] court may only vacate an arbitration award if the arbitrator's refusal to hear evidence is 'in bad faith or so gross as to amount to affirmative misconduct.'" *Hewlett v. IBM Corp.*, 636 F. Supp. 3d 260, 264 (D. Mass. 2022) (quoting *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).

> Vacatur [under Section 10(a)(3)] is "appropriate only when the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing,"...such as where "evidence effectively excluded by the arbitrator was both ***central and decisive to the party's position***" [or where]..."the evidence at issue was the ***only evidence*** in support of the movant's position."

*Id.* at 264-66.  "To demonstrate arbitral misconduct, the challenging party must show that his ***right to be heard has been grossly and totally blocked***, and that th[e] ***exclusion of evidence prejudiced him***."  *Jules v. Andre Balazs Prop.*, 2023 WL 5935626, at *5 (S.D.N.Y. Sept. 2023).

Section 10(a)(3) "does ***not*** require arbitrators to consider every piece of relevant evidence presented to them."  *Doral*, 725 F.3d at 31.  Instead, "[t]he ***arbitrator is the judge of the***

---

[5] *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350-51 (2011) ("review under §10 focuses on misconduct rather than mistake").

[6] Meijer also alludes to, but does not expressly invoke, a common law ground for vacatur—"manifest disregard of law"—the continuing applicability of which is in doubt.  *See* Mot. to Vacate at 16 (arguing that the Arbitrator "disregarded" the Supreme Court's decision in *Morgan v. Sundance*); *Hoolahan*, 947 F.3d at 111 n.14 (availability of manifest disregard "is in question"). Given that Meijer has not expressly invoked the "manifest disregard" vacatur ground, and in view of its doubtful availability, Shire does not address that standard herein, except to note that—if it were available at all—it would be an exceedingly high standard that Meijer cannot meet.  *See, e.g.*, *Cytyc Corp. v. DEKA Prods. Ltd. P'ship*, 439 F.3d 27, 35 (1st Cir. 2006) ("A party seeking to establish manifest disregard of the law...must demonstrate that the arbitrators appreciated the existence and applicability of a controlling legal rule but intentionally decided not to apply it.").

*admissibility and relevancy of evidence* submitted in an arbitration proceeding" and an arbitrator must simply give each side "an *adequate opportunity* to present its evidence and arguments." *Hoteles Condado Beach, La Concha and Convention Ctr. v. Unión De Tronquistas Loc. 901*, 763 F.2d 34, 39-40 (1st Cir. 1985). Put differently, "[an] *arbitrator is free to set his own rules of procedure* so long as he stays within the bounds of fundamental fairness." *Keebler Co. v. Truck Drivers, Loc. 170*, 247 F.3d 8, 11 (1st Cir. 2001). "[I]t is not misconduct for an arbitrator to determine that he does not need to hear certain evidence when he is able to base his finding on other relevant evidence before him." *Hewlett*, 636 F. Supp. at 265.[7] Moreover, an arbitrators' award will not be overturned "for the arbitrator's refusal to hear evidence that is cumulative." *Hoteles*, 763 F.2d at 40.

For **Section 10(a)(4)**: An arbitrator acts in excess of power when the arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). This is an "exacting standard." *Lobster 207, LLC v. Pettegrow*, 2021 WL 5868129, at *3 (D. Me. Dec. 10, 2021). "If [] the award draws its essence from the contract that underlies the arbitration proceeding and the arbitrator was *even arguably construing or applying the contract* and acting within the scope of his authority, the award must stand—even if the arbitrator committed serious legal or factual error." *Axia*, 973 F.3d at 141. Rather, "absent a strong implication that an arbitrator exceeded his or her authority, the arbitrator is presumed to have based his or her award on proper grounds." *Hoolahan*, 947 F.3d at 116.[8]

---

[7] *See also Hoteles*, 763 F.2d at 40 ("Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.").

[8] *Accord Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582-88 (2008) (FAA disfavors post hoc substantive tinkering with arbitral awards, which extends to judicial orders designed to cure "legal errors" in arbitral awards, restricting the availability of vacatur to "egregious departures"

Finally, unless the award is vacated, it must be confirmed.  9 U.S.C. § 9 ("the court ***must***

grant such an order [confirming an award] unless the award is vacated, modified, or corrected as

prescribed in sections 10 and 11 of this title"); *FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 78 n.8

(1st Cir. 2011) ("absent vacating or modifying an award under [the FAA], an arbitral award must

be enforced."); *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 932 F.3d 1, 14 (1st Cir. 2019).

## ARGUMENT

### I.  Arbitrator Duncan Did Not Engage In Misconduct Or Refuse To Hear Pertinent And Material Evidence

Meijer argues that the Final Award should be vacated because the Arbitrator engaged in

misconduct by striking Meijer's unauthorized sur-response dated July 13, 2023.  Mot. to Vacate

at 11-13.  Meijer is wrong for several reasons.

*First*, and as a threshold matter, Arbitrator Duncan did not refuse to hear any *evidence* at

all—Meijer's sur-response contained only *legal arguments*.  Section 10(3) is facially inapplicable.

*Second*, as Arbitrator Duncan determined, ████████████████████████████████

████████████████████████.[9] *See* Barnes Decl., Ex. 8.  Arbitrator Duncan's decision

was not rendered "in bad faith or so gross as to amount to affirmative misconduct."  *United*

*Paperworks*, 484 U.S. at 40.  If Arbitrator Duncan was not required to consider every piece of

***evidence*** presented (*see Doral*, 725 F.3d at 31), she was certainly not required to consider

cumulative or redundant ***argument***.  *Hoteles*, 763 F.2d at 39-40.

*Third*, Meijer had an additional opportunity to make further submissions during oral

argument on August 16, 2023, and it took full advantage of that opportunity.  In fact, Meijer's

---

and "extreme arbitral conduct").

[9] Meijer suggests it did not seek leave because the "very act of seeking leave would have been
construed as an endorsement by Meijer of the Arbitrator's jurisdiction."  Mot. to Vacate at 6, n.18.
████████████████████████████████████████████, Barlow Decl., Exs. B, C, rendering Meijer's *post-hoc* rationalization nonsensical.

slide-deck, which it submitted to Arbitrator Duncan, includes much of the same material as Meijer's stricken sur-response (as well as in its opposition). *Compare, e.g.*, Barlow Decl., Ex. F at 2, *with* Barnes Decl., Ex. 7 at 1-2. Meijer's stricken brief was hardly the "only evidence" in support of its position (*Hewlett*, 636 F. Supp. 3d at 264); Meijer was not deprived of an "adequate opportunity" to present its evidence and arguments (*Hoteles*, 763 F.2d at 39-40); its right to be heard was not "grossly and totally blocked" (*Jules*, 2023 WL 5935626, at *5); and it was not in any way "prejudiced" by the Arbitrator's reasoned decision to strike its unauthorized and redundant sur-response. *Id.*

*Fourth*, Arbitrator Duncan in fact considered Meijer's arguments, including those stricken. Specifically, Meijer's three-page sur-response argued that Meijer never agreed to bifurcate resolution of Shire's fee request.[10]  *See* Barnes Decl., Ex. 7; Mot. to Vacate at 11-12. That same argument appears in Meijer's opposition brief and in Meijer's slide-deck. *See* Barnes Decl., Ex. 5 at 3; Barlow Decl., Ex. F at 2. Arbitrator Duncan addressed and rejected that argument, concluding that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Barnes Decl., Ex. 9.[11]

---

[10] Meijer's smear that Shire deliberately waited to seek fees so that only Shire could take advantage of the Agreements' fee-shifting provisions (Mot. to Vacate at 13 n.51) is false and also wrong as a matter of law. *See, e.g.*, 2022 WL 18143882, at *11-13 (C.D. Cal. Nov. 9, 2022) (affirming award finding (i) non-signatory liable for fee shifting under arbitration agreement where non-signatory sought itself to enforce the agreement, and (ii) no requirement of detrimental reliance for equitable estoppel), *aff'd*, 2024 WL 163371, at *2 (9th Cir. Jan. 16, 2024). Meijer also misrepresents Arbitrator Duncan's comment that a certain rule "is more honored in the breach." Barnes Decl., Ex. 9 at 7. Contrary to Meijer's suggestion, Arbitrator Duncan was referring to Meijer's contention that a bifurcation request must be made at the outset of an arbitration, rather than to any "jurisdictional limitations" or "rules governing her authority." Mot. to Vacate at 6, 8.

[11] Meijer also argues that Arbitrator Duncan failed to consider "relevant authority" that was referenced in the stricken sur-response. Mot. to Vacate at 12. The single authority—*InfoTek Corp. v. Preston*—addressed a motion to reopen discovery and did not address an arbitrator's continuing

Meijer also contends that Arbitrator Duncan failed to consider "the parties' joint representation to this Court that the arbitration already had concluded" and that "Shire did not mention, much less attempt to justify" that fact.  Mot. to Vacate at 11-12.  But Shire specifically highlighted this fact in its fee petition as a basis ███████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████.  *See* Barnes Decl., Ex. 5 at 3; Ex. 4 at 10-11; Barlow Decl., Ex. F at 2; *see Doral*, 725 F.3d at 31 ("§ 10(a)(3) does not require arbitrators to consider every piece of relevant evidence presented to them.").  In short, Arbitrator Duncan did *not* refuse to hear evidence pertinent and material to the controversy, let alone engage in "misconduct."[12]

## II.   Arbitrator Duncan Did Not Exceed Her Powers

Meijer argues that Arbitrator Duncan exceeded her authority because she (i) lacked jurisdiction to award attorneys' fees and costs at all; and (ii) "improperly awarded fee-shifting not permitted by any agreement."  Mot. to Vacate at 8-11, 14-19.  Both arguments fail.

### A.  Arbitrator Duncan Had Continuing Jurisdiction To Award Attorneys' Fees

Meijer's first argument is based on two strained premises: (i) that Shire sought an untimely "modification" of the Arbitrability Order under AAA Rule 52 (formerly Rule 50); and (ii) that Arbitrator Duncan relinquished her jurisdiction upon rendering the Arbitrability Order.  *See, e.g.*, Mot. to Vacate at 1, 8-11.  Meijer advanced the same flawed arguments in the arbitration.  *See, e.g.*, Barnes Decl., Ex. 5 at 2.  Both were rejected there and should be rejected here.

---

jurisdiction to award fees.  *See generally* 626 F. Supp. 3d 885 (D. Md. 2022).

[12] While Shire does not address each individual point raised by Meijer in this Opposition (*e.g.*, that Shire somehow "disclaimed" the Agreements by pursuing arbitration under the Agreements through equitable estoppel, Mot. to Vacate at 17-18)—given that this is not a *de novo* review or a place to reargue Shire's fee application—Shire has previously addressed each of Meijer's arguments presented here in the briefing before Arbitrator Duncan.  *See, e.g.*, Barnes Decl., Ex. 6 at 14-15.  In any event, Shire denies any argument by Meijer not expressly addressed herein.

*First*, as Arbitrator Duncan correctly concluded, "Shire d[id] not seek to revisit the merits" of the Arbitrability Order, and the Final Award left the Arbitrability Order "undisturbed."  Barnes Decl., Ex. 9 at 4 & n.1.  AAA Rule 52 is therefore irrelevant.[13]   *Second*, as Arbitrator Duncan found, it is apparent from (1) the face of the Arbitrability Order, (2) the parties' conduct, (3) the applicable arbitration rules, and (4) the Agreements at issue, that Arbitrator Duncan retained jurisdiction to address ancillary issues—including the allocation of attorneys' fees—after issuing the Arbitrability Order.  *See* Barnes Decl., Ex. 6 at 3-10; *id.* Ex. 9 at 6-7.

**(1) Arbitrability Order.**  The Arbitrability Order on its face did not relinquish the Arbitrator's jurisdiction.  To the contrary, Arbitrator Duncan expressly instructed the parties ▮



Barnes Decl., Ex. 2 at 14.

**(2) The parties' conduct**.  As instructed, ***Meijer's counsel*** submitted a joint submission, stating that ▮▮▮ *Id.*, Ex. 3; *see also id.*, Ex. 9 (Final Award), at 2.  Nowhere did Meijer object to Shire's intentions, question the Arbitrator's jurisdiction to hear such an application, or otherwise reserve any rights to do so.  Rather, Meijer agreed that ▮

▮ *Id.*[14]

---

[13] In both the arbitration and its Motion to Vacate, Meijer invoked the "*functus officio*" doctrine. Specifically, Meijer relies on *Legion Ins. Co. v. VCW, Inc.*, in which the Eighth Circuit applied the doctrine of *functus officio* to find that it "prevented an arbitration panel from rescinding a final arbitration award after a federal district court decided to vacate in part and confirm in part that award."  198 F.3d 718, 719 (8th Cir. 1999).  Shire, however, did *not* request that the Arbitrator rescind or modify the Order on Arbitrability.  Barnes Decl., Ex. 6 at 3-10.  Accordingly, as the Arbitrator determined, the *functus officio* doctrine is inapplicable.  *Id.*, Ex. 9 at 4 n.1.

[14] *Cf. Crawford Grp., Inc. v. Holekamp*, 2007 WL 844819, at *3 (E.D. Mo. Mar. 19, 2007) (interim award that "determined the substantive issues on the merits" was "properly before this Court on

Moreover, Shire later 

████████. Barlow Decl., Ex. A at 3.  In addition, ***after*** this Court

denied Meijer's motion to vacate and confirmed Arbitrator Duncan's Arbitrability Order, ███

████████████████████

████  *Id.*, Ex. A at 2.  Again, ████████.  *Id.* ████

████████████████████

████  Barnes Decl., Ex. 9 at 7.[15]

Meijer argues here—as it did to Arbitrator Duncan—that it did not *expressly* agree to

bifurcation.  Mot. to Vacate at 13.  But as Shire explained, and as Arbitrator Duncan recognized,

parties may *impliedly* agree—*i.e.*, through an agreement that is "never formally stated"—to

bifurcate proceedings.  *See, e.g.*, *Providence J. Co. v. Providence Newspaper Guild*, 271 F.3d 16,

18-20 (1st Cir. 2001) (parties' intent to bifurcate could be implied from the parties' actions, even

though the parties never formally bifurcated arbitration);[16] Barnes Decl., Ex. 9 at 7; *id.*, Ex. 6 at 5.[17]

---

plaintiff's motion to vacate," while "[t]he language of the interim award [] indicates that both the parties and the arbitrators agreed that the arbitration would be bifurcated" such that a subsequent "final award" that "merely addressed the ancillary issues of attorneys' fees and expenses" was proper).  Meijer's agreement in this regard is no surprise, as it would have been entirely inefficient for either party to seek costs at an earlier stage, given that the identity of the "prevailing party" and a tabulation of its attorneys' fees could only be known after Arbitrator Duncan had rendered her Arbitrability Order.  *See, e.g.*, *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451-52 (1982) (a determination of attorneys' fees for a "prevailing party" is "an inquiry that cannot even commence until one party has 'prevailed.'").

[15] *See also, e.g.*, *Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*, 861 F.3d 287, 294 (1st Cir. 2017) (Souter, J. (Ret.), sitting by designation) (describing "the rule that a party who does not reserve an issue or contest the arbitrator's authority to decide it, but rather submits the issue to arbitration, cannot complain that the arbitrator reached it").

[16] *See also Notre Dame*, 861 F.3d at 291-92 (reiterating that "an informal agreement to [bifurcate] will suffice," and noting that *Providence J. Co.* "[is] supported by the Supreme Court's position that the [FAA] lets parties tailor some, even many, features of arbitration by contract, including...procedure").

[17] Likewise, the doctrine of *functus officio* includes a similar caveat: *i.e.*, it only applies "***absent*** an agreement by the parties to the contrary."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,

In such circumstances, an arbitrator may issue an interim decision that finally resolves the first bifurcated issue, and a court may treat that interim decision as a "final" award for purposes of vacatur/confirmation under the FAA, without the arbitrator abdicating jurisdiction.[18]   That is exactly what happened here: the Arbitrability Order finally resolved the dispute as to arbitrability, and the Court confirmed that Order.   ECF No. 613.   Arbitrator Duncan retained jurisdiction to resolve the separate issue of attorneys' fees, as agreed to by the parties and required by the Agreements.   Arbitrator Duncan's determination that Meijer manifested its agreement to bifurcation is fully consistent with the facts.

Meijer invokes *Chen v. Kyoto Sushi, Inc.*—as it did before Arbitrator Duncan (*see* Barnes Decl., Ex. 5 at 4-5)—to argue that Arbitrator Duncan lacked continuing jurisdiction to award fees. Mot. to Vacate at 9-10.   *Chen* is inapposite.   In *Chen*, the arbitrator issued a "***final*** award" and then the claimant unilaterally "emailed AAA to request a briefing schedule regarding attorney's fees" as to which "***the arbitrator*** requested briefing as to her continuing jurisdiction over the matter given that she had ***already issued a final award***."   2021 WL 1224377, at *2 (E.D.N.Y. Apr. 1, 2021).   ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████   Further, in *Chen*, the claimant moved to "modify the arbitration award to include attorney's fees under § 11 of the FAA[,]"—something

---

592 F.3d 329, 342 (2d Cir. 2010).

[18] *See, e.g.*, *Providence*, 271 F.3d at 18-20; *Notre Dame*, 861 F.3d at 291-92; *Arriola v. Martinez*, 2016 WL 11582656, at *1-2 (W.D. Tex. May 20, 2016) (confirming interim arbitration award, which resolved liability issues between the parties and left to the final award only "a wholly separate question" of "whether Respondents were required to pay the Claimants' attorney fees and costs."); *First Federal Finance Corp. v. Carrion-Concepcion*, 2014 WL 12726391, at *1 (D.P.R. Aug. 6, 2014) (noting, in the context of requests to vacate and confirm an interim arbitral award, that "the Supreme Court recently made clear that decisions on the merits are 'final' despite unresolved claims for attorney's fees").

14

Shire never requested.  *Id.* at *2.  The court also relied on the fact that "Chen's counsel had the opportunity to submit post-hearing briefing to the arbitrator" and that such would have been "an appropriate juncture at which to submit an explicit request for, and to provide proof of, his fees and costs prior to the arbitrator's final decision."  *Id.* at *5.  Again, such was not the case here.

**(3) The AAA Rules and (4) the Agreements.**  It is also evident from the applicable arbitration rules and the Agreements that, notwithstanding the Arbitrator's Arbitrability Order, the Arbitrator retained jurisdiction to resolve outstanding ancillary issues, including attorneys' fees. For example, under the AAA Rules, Arbitrator Duncan was required to address in a "final award" certain ancillary issues, including, at a minimum, the allocation of the AAA's administrative fees, the Arbitrator's expenses, and the Arbitrator's compensation.  AAA Rules, Rule 47(c) ("In the final award, the arbitrator ***shall*** assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55."); *see also id.*, Rules 53-54.  Likewise, the applicable Agreements ███████ ████████████████████████████████████████████████████.  *See* ECF No. 476, Ex. 1 (RPA), § 14.2 ███████████████████████████████████████████████████ ████████████████████████████  ECF No. 476, Ex. 4 (GPPA), § 14.3(b) (same).  That Arbitrator Duncan had not addressed such issues in the Arbitrability Order further confirms that she retained jurisdiction to render a further and "final" award, including as to Shire's fees.

In view of the foregoing facts and considerations, Arbitrator Duncan concluded that ███ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████  Barnes Decl., Ex. 9 at 7.[19]  That conclusion undoubtedly "draws its

---

[19] Further, as Shire explained to the Arbitrator (*see* Barlow Decl., Ex. E at 7-8), whether a fee request itself is arbitrable should be determined by an arbitrator and not a court.  *See, e.g.*, *Ky. Peerless Distilling Co. v. Fetzer Vineyards Corp.*, 2023 WL 2160851, at *4-5 (W.D. Ky. Feb. 22,

essence from the [Agreements] that underlie[] the arbitration proceeding," as well as from the

District Court's referral, and the Arbitrator was "acting within the scope of [her] authority" under

those instruments, and this Court therefore may not disturb the Final Award.  *See Axia*, 973 F.3d

at 141; *Hoolahan*, 947 F.3d at 111.[20]  Arbitrator Duncan retained and properly exercised

jurisdiction to award Shire its reasonable attorneys' fees.

## B.  The Fee Award Was Properly Based On And Required By The Agreements

Meijer's final argument for vacatur is that Arbitrator Duncan "improperly awarded fee-

shifting not permitted by any agreement."  Mot. to Vacate at 14.  This argument comprises two

prongs, both of which were submitted to and rejected by Arbitrator Duncan.

*First*, Meijer argues, in essence, that the Supreme Court's decision in *Morgan v. Sundance*

forbids an award of attorneys' fees on the basis of an "arbitration-specific version of equitable

estoppel" and that Arbitrator Duncan "disregarded...*Morgan*."  Mot. to Vacate at 14-16.  ████

████████████████████████████████████████████████████████████████████████

████████—*again*!  Barnes Decl., Ex. 9 at 4.  In fact, this is at least the *sixth* time that Meijer has

invoked *Morgan* to try to salvage its position before Arbitrator Duncan and this Court.  *See* Barnes

Decl., Ex. 6 at 12.[21]  Both the Arbitrator and this Court have consistently rejected Meijer's

_____

2023) (holding that the court had no jurisdiction where "the threshold issue of arbitrability of the
parties' disputes must be decided by an arbitrator" and if "the issue of fees (or any issue) is not
expressly designated as an arbitrable or non-arbitrable one by the parties' agreement, that threshold
issue (here, the arbitrability of fees) should be determined by an arbitrator."); *see also* AAA
Rules 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including
any objections with respect...to the arbitrability of any claim or counterclaim.").

[20] Notably, in *Hoolahan* the losing party argued that the arbitrator exceeded his authority by
awarding attorneys' fees.  947 F.3d. at 116.  The AAA Rules applied in that arbitration, but unlike
here, the underlying agreement in *Hoolahan* did *not* expressly provide fees to the prevailing party.
*Id.*  Nonetheless, the First Circuit affirmed the arbitrator's authority to award attorneys' fees under
Delaware law because the losing party had acted in bad faith.  *Id.* at 117.  Arbitrator Duncan's
authority to award fees is even clearer given the Agreements' express fee-shifting provisions.

[21] Meijer erroneously argues that the Court can revise its prior decision concluding that Meijer's
*Morgan*-related arguments did not permit the Court to vacate the Arbitrability Order.  Mot. to

exaggerated reading of *Morgan*. *See* ECF No. 575 at 2, 6, 10; ECF No. 613 at 14-15.

As Shire has repeatedly explained, *Morgan* is limited and inapposite. Barnes Decl., Ex. 6 at 12; *id.*, Ex. 9 at 4-5; ECF No. 613 at 14-15. *Morgan* says nothing at all about compulsory fee-shifting provisions in an arbitration agreement, let alone about the application of equitable estoppel or any other doctrine, to such provisions. In the Final Award, the Arbitrator considered Meijer's *Morgan* argument and again determined that *Morgan* is inapplicable. *See* Barnes Decl., Ex. 9 at 4-5 & n.2. And as this Court previously held, even if Arbitrator Duncan had interpreted *Morgan* incorrectly (she did not), that would be no basis for vacatur. ECF No. 613 at 14-15 ("While Meijer may not agree with [the Arbitrator's] analysis, the Court does not find that it is 'unfounded in reason and fact' or 'based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling.'") (quoting *Hoolahan*, 947 F.3d at 119).[22]

*Second*, Meijer argues that the Agreements' fee-shifting provisions "are narrowly confined and do not permit shifting fees in a proceeding to compel arbitration." Mot. to Vacate at 16-19.

 *see* Barnes Decl., Ex. 5 at 8-11,

---

Vacate at 14 n.53. But that decision was immediately appealable, and Meijer's opportunity to appeal has lapsed, rendering the decision final. *See infra* section III.

[22] *See also Hoolahan*, 947 F.3d at 116-18 ("[Even if] a court is convinced [that the arbitrator] committed serious error does not suffice to overturn [her] decision."). In its motion to vacate the Arbitrability Order, Meijer argued that Arbitrator Duncan's analysis of *Morgan* constituted a "manifest disregard of the law." *See* ECF No. 575 at 1, 15. As noted above, Meijer has not expressly invoked the "manifest disregard" vacatur ground, the continuing availability of which is in question. *See supra* n.6. In any event, Arbitrator Duncan's treatment of *Morgan* in the Final Award does not constitute a manifest disregard of the law for the same reasons found in the Court's order confirming the Arbitrability Order.



Barnes Decl., Ex. 6 at 13-14 (emphasis in original); *see also Remote Sol. Co. v. FGH Liquidating Corp.*, 349 F. App'x 696, 700 (3d Cir. 2009) ("Remote Solution...contends...that the provision...does not allow for recovery of ***pre-arbitration*** attorneys' fees and costs because it does not 'unmistakably' address these costs.  But the arbitrator considered the language of the contract and determined these fees and costs were 'incurred in the conduct of [the] arbitration.'  Its determination was not in manifest disregard of the law."); *cf. Sparton Corp. v. O'Neil*, 2018 WL 3025470, at *6 (Del. Ch. June 18, 2018) (granting fee petition where other party's "own conduct" necessitated much of the work).  Shire also distinguished the same cases that Meijer cites here.[23]

At bottom, the parties disputed the proper interpretation of the Agreements' fee-shifting language.  Arbitrator Duncan adopted Shire's interpretation and rejected Meijer's, holding:

Barnes Decl., Ex. 9 at 6.  As shown and as Meijer admits, Arbitrator Duncan unquestionably interpreted and applied the Agreements to determine the scope of the fee-shifting provisions.  *See* Mot. to Vacate at 19.  While Meijer faults the Arbitrator for not "substantively address[ing]

---

[23] For example, Meijer relies on *Toddle Inn Franchising, LLC v. KPJ Associates, LLC*, 8 F. 4th 56, 66 (1st Cir. 2021).  Meijer's Obj. at 9.  But that decision did not address whether an arbitrator could award attorneys' fees incurred in arbitration-related litigation, but rather whether the district court had authority to award such fees—and the First Circuit found that it could.  *Toddle Inn*, 8 F. 4th at 67-68.  Similarly, in *Crossville v. Glenwood*, the court determined, based on the applicable contractual language, that only the arbitrator could award arbitration-related fees.  610 F. App'x 464, 468-70 (6th Cir. 2015).  Nothing in *Toddle* or *Crossville* remotely suggests that Arbitrator Duncan was prohibited from awarding fees incurred in arbitration-related litigation (absent an express prohibition to that effect in Agreements).  *Cf. Remote Sol. Co.*, 349 F. App'x at 700.

Meijer's arguments nor mention[ing] the relevant case law" (*id.*), that is no basis for vacating the Final Award.  The Final Award clearly "draws its essence from the [Agreements]" and Arbitrator Duncan appropriately construed and applied the Agreements; nothing more is required.  *Axia*, 973 F.3d at 141.  Accordingly, even if the Arbitrator's interpretation of the Agreements was in error (it was not), the Final Award could not be vacated on that basis.  *Hoolahan*, 947 F.3d at 116-18.

### III.   The Court Should Confirm The Final Award And Deny Meijer's Request For A Stay Of Enforcement Of The Final Award

Should the Court reach the merits and deny Meijer's Motion to Vacate (as it should, for the reasons above), it should confirm the Final Award.  *See* 9 U.S.C. § 9.

Meijer also has failed to justify its half-baked request for "a stay of enforcement of the award pending appeals of the arbitration-related decisions in this case."  *See* Mot. to Vacate at 19. Nor could it.  No "arbitration-related decisions in this case" are appealable.  The Court's order confirming the Arbitrability Order was immediately appealable.  9 U.S.C. § 16(a)(1)(D).[24]  Meijer failed to appeal that decision within thirty days and it has therefore ***waived*** any right of appeal. *See* Fed. R. App. P. 4(a) (requiring notice of appeal "within 30 days after entry of judgment or order appealed from").  Accordingly, Meijer's request for a stay must be denied and the Final Award should be confirmed.[25]

### IV.   The Court Should Award Shire Its Fees For Responding To Meijer's Motion

The First Circuit "has long lamented the exasperating frequency with which arbitration awards are appealed," *Northern New England Tel. Operations LLC v. Loc. 2327, Int'l Bhd. of Elec.*

---

[24] *See also Hewlett-Packard Co. v. Berg*, 61 F.3d 101 (1st Cir. 1995) (order confirming arbitration award was immediately appealable despite lack of final judgment); *cf. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1266 (11th Cir. 2015) (finding timely notice of appeal "filed within thirty days of the district court's order confirming the arbitration award," but refusing to exercise jurisdiction over earlier arbitration-related order).

[25] Even if any arbitration-related issues were still subject to appeal (they are not), Meijer has not articulated any reason why confirmation and enforcement should be stayed pending any appeal.

*Workers, AFL-CIO*, 735 F.3d 15, 25 (1st Cir. 2013), and it has authorized the award of attorneys'

fees for responding to such repetitive and baseless motions. *Loc. 285, Serv. Empl. Int'l Union,*

*AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 737-38, 742 (1st Cir. 1995).[26]  Because

Meijer's arguments are wholly without merit, and only caused Shire to incur unnecessary expense

and imposed an unnecessary burden on this Court, the Court should not only deny Meijer's motion

but also grant Shire its resulting attorneys' fees and costs. *Colonial*, 549 F. Supp. 3d at 207 (D.

Mass. 2021) ("parties…should not feel free to bring a frivolous suit to vacate the award without

consequences" such as "reasonable attorneys' fees for the time spent contesting that initiative.").[27]

## RELIEF REQUESTED

For the reasons set forth above, if the Court does not transfer Meijer's Motion to Vacate to

SDNY, Shire respectfully requests that this Court (i) deny Meijer's Motion to Vacate; (ii) deny

Meijer's request for a stay; (iii) confirm the Final Award in all respects pursuant to 9 U.S.C.§ 9;

(iv) enter judgment on the Final Award pursuant to 9 U.S.C. § 13 in favor of Shire, and jointly and

severally against Meijer, Inc. and Meijer Distribution, Inc., in the amount of ███████████

███████████████████████████████████████████████; (v) award

Shire its costs, disbursements, expenses, and attorneys' fees incurred in responding to Meijer's

Motion and bringing this cross-motion to confirm; and (vi) grant Shire such further and other relief

as this Court deems just and proper.

---

[26] *See also Colonial Wholesale Bev. v. Loc. 59, Int'l Bhd. of Teamsters*, 549 F. Supp. 3d 198, 207 (D. Mass. 2021) ("there cannot be said to be any discernable line between frivolous arguments and those merely unpersuasive when courts review…a well-grounded [] arbitration award.").
[27] *Int'l Ass'n of Heat & Frost Insulators v. Thermo-Guard Corp.*, 880 F. Supp. 42, 48 (D. Mass. 1995) (granting fees where losing party presented "no rational argument for its refusal to comply with the arbitration decision.").

Dated: January 26, 2024        Respectfully submitted,

*/s/ Joshua S. Barlow*
Fred A. Kelly, Jr. (BBO #544046)
Joshua Barlow (BBO #667472)
ARNOLD & PORTER
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
Fred.Kelly@arnoldporter.com
Joshua.Barlow@arnoldporter.com

Michael F. Brockmeyer (pro hac vice)
David S. Shotlander (pro hac vice)
HAUG PARTNERS LLP
1776 I St NW, NW Washington, DC 20006
Telephone: (202) 292-1530
Facsimile: (202) 292-1531
mbrockmeyer@haugpartners.com
dshotlander@haugpartners.com

*Counsel for Shire LLC and Shire U.S., Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document will be filed through the CM/ECF system and thus will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 26, 2024.  The unredacted version of this document will be provided via email to the Court and counsel for DPP/Meijer.


Dated: January 26, 2024           *<u>/s/ Joshua S. Barlow</u>*
                                  Joshua S. Barlow