**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE INTUNIV ANTITRUST LITIGATION<br><br>This Document Relates to:<br>*Direct Purchaser Actions* | Civil Action No. 16-cv-12653-ADB (Lead) |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH SHIRE, APPROVAL OF**
**PROPOSED PLAN OF ALLOCATION, ENTRY OF FINAL JUDGMENT, AND**
**DISMISSAL OF THE DIRECT PURCHASER CLASS'S CLAIMS AGAINST SHIRE**

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................1

II.  SUMMARY OF THE CASE ...................................................................................2

III.  ARGUMENT ...........................................................................................................7

    A.  The proposed settlement is fair, reasonable, and adequate. ........................7

        1.  This case was factually and legally complex, costly, and vigorously litigated for more than seven years. ...........................9

        2.  All class members received direct mail and/or email notice, and no class member has objected. .......................................................10

        3.  The settlement occurred after the parties had completed extensive fact and expert discovery and reached the eve of trial twice. ...................11

        4.  The direct purchasers faced risks proving liability and damages at trial. .........................................................................................12

        5.  Maintaining a certified class posed a major obstacle for the direct purchasers. .................................................................................13

        6.  The ability of Shire to withstand a greater judgment does not weigh against approval of the settlement. ....................................14

        7.  The settlement amount is reasonable considering the risk and expense avoided. ........................................................................15

    B.  The direct purchaser proposed allocation plan is fair, adequate, and reasonable. .................................................................................................16

IV.  CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) .......................................................................................8

*Bezdek v. Vibram USA, Inc.*,
    809 F.3d 78 (1st Cir. 2015) .....................................................................................................8

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) .........................................................................................8

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .........................................................................................9

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
    No. 09-md-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014)............................................16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................................... 8, 15, 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).....................................................................................................7

*Granada Invs., Inc. v. DWK Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ...............................................................................................7

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)..................................................................................16

*Guevoura Fund Ltd. v. Sillerman*,
    No. 15-cv-7192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...........................................15

*Hill v. State Street Corp.*,
    No. 09-cv-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015)..........................................16, 17

*Hochstadt v. Boston Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) .....................................................................................16

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003) ....................................................................................12

*In re Lupron Mktg. & Sales Pracs. Litig.*,
    No. 01-cv-10861, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) ...........................................13

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)............................................................................7

*In re Motorsports Merchandise Antitrust Litig.*,
112 F. Supp. 2d 1329 (N.D. Ga. 2000) ...............................................................12

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
602 F. Supp. 2d 277 (D. Mass. 2009) .................................................................12

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................16

*In re Packaged Ice Antitrust Litig.*,
No. 08-md-1952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ..........................7

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
630 F. Supp. 3d 241 (D. Mass. 2022) ...................................................................8

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)...........................................................................15

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. 03-cv-85, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..............................11, 15

*Roberts v. TJX Cos., Inc.*,
No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..........................8

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000).............................................................................8

*Sesto v. Prospect CharterCARE, LLC*,
No. 18-cv-328, 2019 WL 4758161 (D.R.I. Sept. 30, 2019) ...............................11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-2503 (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018)...................17

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. 03-cv-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005)...............................9

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting*,
No. 02-cv-12102, 2006 WL 1766434 (D. Mass. June 28, 2006)...........................13

*United States v. Cannons Eng'g Corp.*,
899 F.2d 79 (1st Cir. 1990)..................................................................................7

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ...........................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................................................15

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)......................................................................................7

**Other Authorities**

Fed. R. Civ. P. 23(e)(2)......................................................................................7

William B. Rubenstein, *Newberg and Rubenstein on Class Actions* (6th ed. 2022
    & Suppl. 2024)................................................................................7, 17

## I.      INTRODUCTION

The proposed settlement between plaintiffs Meijer, Inc., Meijer Distribution, Inc. (together, "Meijer"), and QK Healthcare, Inc. ("QKH") and defendants Shire plc, Shire LLC, and Shire U.S., Inc. ("Shire") provides for a $58 million cash payment to the direct purchaser class in exchange for dismissal of the direct purchaser action with prejudice and the provision of certain releases from the direct purchaser class. The settlement follows a previous settlement with defendant Actavis for $19.9 million, and, if approved, will resolve the action entirely.

The proposed settlement is in all respects fair, reasonable, and adequate, satisfies the requirements of Rule 23(e), and should be granted final approval. The settlement was the culmination of years of contested, arm's-length negotiations between experienced and highly skilled counsel, and it provides the class with a certain, prompt, and significant cash benefit and avoids the risks and costs of further litigation.

All 50 members of the direct purchaser class received individual direct notice of the settlement, which summarized the terms of the agreement and class members' rights to object and to appear at the final fairness hearing, by U.S. First-Class Mail and/or email.[1] The settlement administrator also promptly posted copies of the notice, as well as the settlement agreement and all settlement-related filings and orders, on the settlement website (www.intunivantitrust settlement.com). The deadline for class members to postmark objections was September 5, 2024, and class counsel have received none. The favorable reaction of the class further confirms the fairness and reasonableness of the settlement.

---

[1] *See* Report on Distrib. of Shire Settlement Notice to Direct Purchaser Class, ECF No. 743.

The direct purchasers' plan of allocation[2] proposes distributing the settlement proceeds, net of attorneys' fees, expenses, and administration costs, *pro rata* to class members based on each class member's total direct purchases of brand and generic Intuniv. The plan is practical and efficient, using the methodology and data approved by the Court for allocation of the Actavis settlement fund, and fairly and reasonably apportions the net settlement fund to class members based on their respective overcharges.

The direct purchasers therefore respectfully request that the Court issue an order (i) finding that notice to the direct purchaser class satisfies due process, (ii) finding the settlement between the direct purchasers and Shire fair, reasonable, and adequate pursuant to Rule 23(e); (iii) approving the direct purchasers' proposed plan of allocation of the net settlement fund, and (iv) entering final judgment and dismissing the direct purchasers' claims against Shire with prejudice and without costs. The direct purchasers further request that the Court grant their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Class Representatives, filed August 22, 2024,[3] for the reasons provided in the supporting memorandum of law, declarations, and exhibits. A proposed order is submitted herewith.

## II.  SUMMARY OF THE CASE

The history of this case is well known to the Court and was recently recounted in detail in the direct purchasers' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Class Representatives,[4] so we provide only a brief summary here.

---

[2] *See* Direct Purchaser Pls.' Proposed Plan of Allocation for the Direct Purchaser Class, ECF No. 740-7 ("Allocation Plan"). The allocation plan is also available at https://intunivantitrustsettlement.com/media/xixk2mbw/proposed-allocation-plan.pdf.

[3] ECF No. 744.

[4] *Id.*

This is an antitrust class action brought by direct purchasers of the prescription drug Intuniv. After a lengthy factual investigation, class counsel filed the original direct purchaser complaint on December 30, 2016, and consolidated amended complaints on March 10, 2017, and April 2, 2019.[5] The direct purchasers alleged that the defendants Shire and Actavis violated federal antitrust laws by engaging in an unlawful anticompetitive scheme to delay market entry of less expensive, AB-rated generic versions Intuniv.[6]

On April 10, 2017, the defendants moved to dismiss the direct purchasers' consolidated amended complaint, which the Court denied in October 10, 2017.[7] The parties then began a wide-ranging, years-long discovery process. The defendants and ten subpoenaed non-parties produced over 700,000 pages of documents and hundreds of thousands of lines of data, which issue teams analyzed and summarized in white papers.[8] Class counsel deposed 16 fact witnesses and defended three depositions of class representatives.[9] They also retained 11 experts to prepare reports and testify at trial, generating 23 opening and rebuttal reports, and defended nine expert depositions.[10]

In April 2019, the parties completed briefing on the direct purchasers' motion for class certification.[11] On September 24, 2019, the Court certified a 48-member class of entities that purchased brand and/or generic Intuniv directly from Shire or Actavis during the class period.[12]

---

[5] Decl. of Lead Counsel Thomas M. Sobol in Supp. of Direct Purchaser Class Pls.' Mot. for Award of Attys.' Fees, Reimbursement of Expenses & Service Awards for Class Reps. ¶ 3, ECF No. 745-1 ("Sobol Decl.").

[6] *Id.*

[7] *Id.* ¶¶ 4–5.

[8] *Id.* ¶¶ 6–12, 17.

[9] *Id.* ¶ 20.

[10] *Id.* ¶¶ 22–27.

[11] *Id.* ¶ 29.

[12] *Id.* ¶¶ 28–29; Order Granting Direct Purchaser Class Pls.' Mot. for Class Certification, ECF No. 343.

On January 24, 2020, the direct purchaser class members, all of which are sophisticated businesses, were provided direct notice of the Court's class certification order by U.S. First-Class Mail.[13] No class member opted out of the class.[14]

In September 2019, the parties filed summary judgment motions, with the defendants moving on five issues and the plaintiffs on two.[15] The moving briefs and oppositions were lengthy and supported by detailed statements of fact and voluminous documentary and testimonial evidence.[16] Each side also filed multiple *Daubert* motions.[17] On September 10, 2020, the Court ruled on the parties' *Daubert* motions. On September 21, 2020, the Court issued a detailed opinion denying all the defendants' motions for summary judgment directed to the direct purchasers' claims and granting the plaintiffs' motion relating to causation.[18]

In April 2020, the defendants moved to decertify the class based on the bankruptcy filing of class representative Rochester Drug Cooperative ("RDC").[19] In July 2020, the Court denied the defendants' motion, but removed RDC as a class representative.[20] At the same time, the Court allowed Meijer's motion to intervene.[21] Shire then filed motions to compel arbitration of Meijer's claims.[22] The briefing, discovery, and arguments on these motions—which took place before both this Court and an arbitrator—was the heavy focus of the case for the better part of

---

[13] Decl. of Eric J. Miller Regarding Mailing of Notice & Report on Requests for Exclusion ¶ 6, ECF No. 401-1.

[14] *Id.* ¶ 13.

[15] Sobol Decl. ¶ 34.

[16] *Id.*

[17] *Id.* ¶¶ 30–33.

[18] *Id.* ¶ 35.

[19] *Id.* ¶ 43.

[20] *Id.*

[21] *Id.*

[22] *Id.* ¶ 44.

late 2020 through 2022.[23] Meijer's claims were ultimately sent to arbitration.[24] In response, the direct purchasers sought the appointment of BI-LO and RDC as alternative class representatives.[25] Shire opposed the request, and the briefing, discovery, and arguments related to the adequacy of these proposed class representatives ran from 2022 through most of 2023.[26] The Court ultimately denied direct purchasers' request on January 22, 2024.[27]

In August 2020, the direct purchasers settled with Actavis for a cash payment of $19.9 million in exchange for the direct purchasers' release of all claims against Actavis.[28] The Court granted final approval of the Actavis settlement on December 9, 2020, and the net settlement fund was distributed to class members on September 16, 2021.[29]

The trial of the case was set and rescheduled on multiple occasions. Trial was initially scheduled for July 2020. During the fall of 2019 and winter of 2020, while summary judgment motions were still pending, the parties diligently prepared for the trial, including designating deposition testimony and trial exhibits, preparing witness examinations, drafting jury instructions and a verdict form, and submitting dozens of motions *in limine* and other evidentiary motions.[30] In May 2020, the Court continued the July 2020 trial due to the coronavirus pandemic.[31] Trial was re-set for October 2, 2023, and then continued to February 26, 2024. In advance of these new dates, the parties again prepared extensively for trial, including working with a jury

---

[23] *Id.* ¶¶ 44, 47, 50.

[24] *Id.* ¶¶ 44, 47.

[25] *Id.* ¶ 47.

[26] *Id.* ¶¶ 48–54.

[27] *Id.* ¶ 66.

[28] *Id.* ¶ 55.

[29] *Id.*

[30] *Id.* ¶¶ 36–41.

[31] *Id.* ¶ 42.

consultant, engaging in extensive negotiations over deposition designations and trial exhibits, preparing witnesses, and drafting a pretrial memorandum.[32]

In late 2023, counsel for the direct purchasers and Shire began settlement discussions in earnest. This was done through two separate mediations, followed by multiple rounds of negotiations overseen by the parties' mediator, the Honorable Layn Phillips (ret.).[33] The negotiations finally culminated in the parties' settlement, which was formally executed on June 18, 2024.[34] On July 2, 2024 the Court granted preliminary approval of the settlement and appointed Meijer and QKH representatives of the previously certified direct purchaser class for purposes of the settlement.[35] On August 22, 2024, class counsel moved for an award of attorneys' fees, reimbursement of expenses, and service awards for the class representatives.[36]

On July 17, 2024, A.B. Data, the Court-appointed settlement administrator, disseminated settlement notice via U.S. First-Class Mail to 61 unique mailing addresses for the 50 class members.[37] A.B. Data also emailed the notice to 95 unique email addresses for class members' in-house employees, outside counsel, or other appropriate recipients.[38] Notice was successfully delivered by one or both methods to all class members.[39] A.B. Data also prominently displayed all important settlement dates and promptly posted copies of the settlement agreement, notice,

---

[32] *Id.* ¶¶ 56–65.

[33] *Id.* ¶ 69.

[34] *Id.* ¶ 70.

[35] *Id.* For settlement purposes, Shire waived any right to compel Meijer or QKH to arbitrate.

[36] ECF No. 744.

[37] Report on Distrib. of Shire Settlement Notice to Direct Purchaser Class ¶ 3, ECF No. 743. In addition to the 48 originally identified class members, A.B. Data also sent notice to two entities (CVS Pharmacy, Inc. and Wegmans) that had submitted approved claims for shares of the Actavis settlement based on documented assignments of rights from class members.

[38] *Id.* ¶ 4.

[39] *Id.* ¶¶ 5–6.

proposed allocation plan, and all settlement-related filings and orders settlement on the settlement website (www.intunivantitrustsettlement.com). The deadline for class members to object to the proposed settlement or class counsel's motion for fees and expenses was September 4, 2024. Class counsel have received no objections.

## III.   ARGUMENT

### A.   The proposed settlement is fair, reasonable, and adequate.

Courts encourage settlement of lawsuits.[40] Particularly in complex litigation, which is "notoriously difficult and unpredictable,"[41] settlement avoids the substantial resources required for and risk inherent in lengthy trials and appeals.[42] "Absent evidence of fraud or collusion," settlements of such cases "are not to be trifled with."[43] This policy "applies with equal force whether the settlement is partial, involving only some of the defendants, or complete."[44]

Rule 23(e)(2) of the Federal Rules of Civil Procedure provides that a court may approve a class action settlement if it is "fair, reasonable, and adequate." While the First Circuit has not provided guidance on the factors to be considered making this determination, courts in this

---

[40] *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts . . . ."); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements").

[41] *Granada Invs., Inc. v. DWK Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

[42] *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:44 (6th ed. 2022 & Supp. 2024) (settlement of complex litigation "is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation"),

[43] *Granada*, 962 F.2d at 1205 (quoting *Priddy v. Edelman*, 883 F.2d 483 (6th Cir. 1989)).

[44] *In re Packaged Ice Antitrust Litig.*, No. 08-md-1952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011).

district often consider those set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*[45]

The *Grinnell* factors are:

> (1) the complexity, expense, and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.[46]

The Court need not find all the *Grinnell* factors satisfied to grant final approval; rather, the Court

should conduct a holistic assessment that "involves balancing the advantages and disadvantages

of the proposed settlement as against the consequences of going to trial or other possible but

perhaps unattainable variations on the proffered settlement."[47] "Notwithstanding the

responsibility of the district court to carefully assess the settlement, there is a presumption in its

favor so long as parties engaged in arms-length negotiations after meaningful discovery."[48]

Here, each of the *Grinnell* factors supports or does not weigh against final approval.

---

[45] 495 F.2d 448 (2d Cir. 1974); *see, e.g., In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244 (D. Mass. 2022); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016); *Bezdek v. Vibram USA Inc*., 79 F. Supp. 3d 324, 343–44 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

[46] *Grinnell*, 495 F.2d at 463.

[47] *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015); *see also Bussie v. Allmerica Fin. Corp*., 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("This fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation.").

[48] *Ranbaxy*, 630 F. Supp. at 244 (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007)); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable, and adequate should be given significant weight." (citing *Bussie*, 50 F. Supp. at 72)).

1.    **This case was factually and legally complex, costly, and vigorously litigated for more than seven years.**

The complexity, expense, and duration of this litigation weigh in favor of the settlement. Antitrust class actions are "'arguably the most complex action[s] to prosecute' as '[t]he legal and factual issues involved are always numerous and uncertain in outcome.'"[49] This case was no exception. Class counsel discovered, investigated, and filed this case in 2016, alleging that two pharmaceutical companies entered an unlawful agreement to stymie competition and maintain supracompetitive prices for Intuniv, Shire's $327-million-per-year pediatric ADHD drug.[50] In the seven-and-a-half years since the complaint was filed, the parties have zealously prosecuted the case. They briefed, argued, and obtained rulings from the Court on myriad motions, including 12(b)(6), class certification, summary judgment, and *Daubert*, and *in limine* motions; completed fact and expert discovery, which encompassed the production and review of hundreds of thousands of pages of documents, nearly two-dozen depositions, substantial non-party document productions and depositions, and the exchange of reports from 21 different experts on issues ranging from pharmaceutical manufacturing to patent law to antitrust economics and damages; and completed extensive trial preparation, including drafting, exchanging, and negotiating witness lists, exhibits lists, and deposition designations, briefing and arguing numerous pretrial motions, and preparing fact and expert witnesses for trial.[51] In total, class counsel spent over 63,000 hours litigating this action, amounting to a lodestar of over $46 million at current billing

---

[49] *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-cv-4578, 2005 WL 1213926, at *11 (E.D. Pa. May 19, 2005) (second alteration in original) (quoting *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("Antitrust class actions are inherently complex" and "present[] a number of complicated factual and legal issues.").

[50] *See* Sobol Decl. ¶ 3.

[51] *See id.* ¶¶ 4–41, 56–65.

rates, and paid litigation expenses of nearly $3 million.[52] The first *Grinnell* factor supports the reasonableness of the settlement.

### 2. All class members received direct mail and/or email notice, and no class member has objected.

On July 17, 2024, A.B. Data, the Court-appointed settlement administrator, disseminated notice of the Shire settlement via U.S. First-Class Mail to the last known address for each of the 50 direct purchaser class members or their counsel.[53] A.B. Data also sent notice via email to 48 of the 50 class members for which it had a valid email address for an in-house employee, outside counsel, or other appropriate recipient.[54] The notice set forth in detail the significant terms of the settlement, the process and schedule for completing the settlement approval process, the proposed plan of allocation for the net settlement fund, the rights of class members to object in part or in full to the settlement or to class counsel's request for fees, expenses, and service awards and to appear and be heard at the final fairness hearing, and the binding effect of a class judgment on members of the class.[55] The deadline to postmark objections was September 5, 2024, and class counsel have received none. The class's acceptance of the settlement "is convincing evidence of the [s]ettlement's fairness and adequacy," especially when the "class is

---

[52] *See* Sobol Decl. ¶¶ 73–81 (attesting that class counsel had expended 63,449.3 hours prosecuting the case since inception and incurred $795,204.50 in unreimbursed litigation expenses since October 1, 2020); Order Granting Final Approval of Actavis Settlement ¶ 17, ECF No. 551 (granting class counsel's request for reimbursement of reasonable litigation expenses of $2,165,475.18 incurred through September 30, 2020).

[53] Report on Distrib. of Shire Settlement Notice to Direct Purchaser Class ¶ 3, ECF No. 743. A copy of the notice disseminated to class members is available at https://intunivantitrustsettlement.com/media/00alvggj/final-shire-settlement-notice.pdf.

[54] *Id.* ¶ 4.

[55] *See* Settlement Notice at ii, 4–9, https://intunivantitrustsettlement.com/media/00alvggj/final-shire-settlement-notice.pdf.

comprised of sophisticated business entities that can be expected to oppose any settlement they find unreasonable."[56] Accordingly, the second *Grinnell* factor supports final approval.

### 3. The settlement occurred after the parties had completed extensive fact and expert discovery and reached the eve of trial twice.

As discussed above, the settlement with Shire was reached at a very advanced stage of the litigation, and the parties were armed with ample information to assess the strengths and weaknesses of the case. Discovery in this case was extensive. The defendants and subpoenaed non-parties produced more than 700,000 pages of documents, and the proposed class representatives responded to 69 interrogatories and produced nearly 100,000 pages of documents.[57] Class counsel took 16 fact witness depositions and defended three depositions of class representatives.[58] The parties exchanged a total of 26 reports from 19 expert witnesses, and class counsel prepared for and defended nine expert depositions.[59] When the direct purchasers finally settled with Shire, discovery was long completed, the class had been certified, summary judgment, *Daubert*, and pretrial motions were decided, and the parties had invested substantial time and resources preparing for the trial originally set for July 2020, then rescheduled for October 2023 and then February 2024.[60] Class counsel and Shire counsel negotiated the

---

[56] *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-85, 2005 WL 3008808, at *6 (D.N.J. Nov. 9, 2005); *see also Sesto v. Prospect CharterCARE, LLC*, No. 18-cv-328, 2019 WL 4758161, at *3 (D.R.I. Sept. 30, 2019) ("[T]he lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement." (alteration in original) (quoting *Medoff v. CVS Caremark Corp.*, No. 09-cv-554, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016)).

[57] *See* Sobol Decl. ¶¶ 12–18.

[58] *See id.* ¶¶ 19–21.

[59] *See id.* ¶¶ 22–27.

[60] *See id.* ¶¶ 28–42, 56–66.

settlement with the benefit of a well-developed record and comprehensive knowledge of the factual legal issues. The third *Grinnell* factor therefore supports final approval.[61]

### 4.     The direct purchasers faced risks proving liability and damages at trial.

While class counsel believe strongly in the strength of the direct purchasers' claims against Shire, they recognize that success at trial is hardly a foregone conclusion. Federal courts have long recognized that, because of the highly complex nature of antitrust cases, their outcomes are always uncertain.[62] Here, the defendants chose to structure their alleged anticompetitive behavior through a patent litigation settlement and commercial licensing agreement, requiring the direct purchasers to investigate the merits of complex pharmaceutical patents and use economic expertise to establish how a commercial licensing deal functioned in this market to disincentivize competition and impact prices. As this Court observed in its summary judgment opinion, although the express terms of the patent litigation settlement agreement between Shire and Actavis were not dispositive of whether they had entered into an anticompetitive no-AG agreement, the agreement was not literally a "no-AG agreement" because it stated that Actavis could make and market a generic Intuniv product and that Shire retained the right to launch a generic by itself.[63] While this Court granted summary judgment to the direct purchasers as to whether Actavis was ready and able to launch a generic Intuniv at risk at the end

---

[61] *See, e.g.*, *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 282 (D. Mass. 2009) (finding third *Grinnell* factor satisfied where settlement followed "extensive discovery and motion practice and heads off what would likely be complex, expensive, and lengthy, albeit probably successful, litigation"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 255 (D. Del. 2002) (fact that class counsel had "pursued this litigation for over three years," "engaged in substantial discovery and coordinated these efforts with other plaintiffs' counsel," and "voluminous documents were reviewed and numerous depositions taken and motions filed" supported final approval), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

[62] *See, e.g.*, *Linerboard*, 296 F. Supp. 2d at 577; *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000).

[63] *See* Mem. & Order on Mots. for Summ. J. at 23–25 ECF No. 500 ("The Court therefore finds that the explicit terms of the Agreement do not alone establish whether Defendants agreed between themselves that Shire would not launch an AG.").

of its 30-month stay, it remained for the jury to decide whether Actavis would have been willing to launch at risk, either before or after a decision by the district court in the underlying patent litigation.[64] The fourth *Grinnell* factors therefore weighs in favor of final approval.

If the direct purchasers did secure a favorable jury verdict on liability, the jury would have to weigh competing economic expert testimony on the appropriate period for, proper methodology of calculating, and amount of damages. While the direct purchasers are confident in their ability to prove the alleged damages period and amount of damages, the defendants' economists have proffered arguments about when generic competition would have commenced and other arguments about why damages are lower than the direct purchasers claim. Establishing damages in an antitrust class action is a complex task, and federal courts have long observed that "market uncertainties 'usually deny us  sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation.'"[65] Antitrust jurisprudence is thus "replete with cases in which plaintiffs prevailed at trial on issues of liability, but recovered little or nothing by way of damages."[66] The fifth *Grinnell* factor also demonstrates the reasonableness of the settlement.

### 5. Maintaining a certified class posed a major obstacle for the direct purchasers.

While this Court certified a direct purchaser class on September 24, 2019,[67] the defendants have since continued to successfully challenge the adequacy of class representatives. On July 8, 2020, the Court granted the defendants' motion to remove RDC as class

---

[64] *See id*. at 43–47.

[65] *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting*, No. 02-cv-12102, 2006 WL 1766434, at *21 (D. Mass. June 28, 2006) (citing *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987)).

[66] *In re Lupron Mktg. & Sales Pracs. Litig.*, No. 01-cv-10861, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005).

[67] *See* Order Granting Direct Purchaser Class Pls.' Mot. for Class Certification, ECF No. 343.

representative based on its filing for bankruptcy.[68] Shire then successfully opposed the appointment of Meijer as class representative based on arbitration clauses in its agreements with its generic suppliers.[69] Finally, on January 22, 2024, the Court denied the direct purchasers' request to appoint RDC as class representative and stayed BI-LO's claims pending a decision from the arbitrator on whether they should be subject to arbitration.[70] In the same Order, the Court allowed Shire's motion to conduct limited discovery on absent class members on the issue of arbitrability.[71] This decision significantly shifted the landscape of the litigation, derailing the direct purchasers' path to trial and presenting a real threat that the Court would decertify the class. As the Court itself acknowledged, the ruling "will be costly, and cause further delay in getting this case to trial to reach a long-awaited resolution for the direct purchasers."[72] The Court therefore "encourage[d] the parties, in the interests of all concerned, to think about alternate paths to resolve this matter in the nearer term."[73] Class counsel heeded this advice, avoiding what would likely have been years of additional litigation and costs with no guarantee of a successful outcome at trial. Accordingly, the sixth *Grinnell* factor supports approval of the settlement.

### 6.   The ability of Shire to withstand a greater judgment does not weigh against approval of the settlement.

The direct purchasers do not maintain that Shire could not withstand a larger judgment than the settlement amount, but this does not weigh against approval. "[M]any settlements have

---

[68] *See* Sobol Decl. ¶ 43.

[69] *See id.* ¶ 44.

[70] *See id.* ¶ 66.

[71] *See id.*

[72] Mem. & Order. at 25–26, ECF No. 710.

[73] *Id.*

been approved where a settling defendant has had the ability to pay greater amounts,"[74] and "the fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more . . . ."[75] Courts therefore typically consider the seventh *Grinnell* factor, a "'defendant oriented' consideration," to be "largely neutral" when dealing with a defendant that has "classic deep pockets."[76] Consequently, this factor "does not favor nor disfavor the [s]ettlement."[77]

### 7. The settlement amount is reasonable considering the risk and expense avoided.

The last two *Grinnell* factors—the range of reasonableness in light of the best possible recovery and litigation risks—are typically analyzed together.[78] The issue is not whether the settlement represents the best conceivable recovery, but how the settlement relates to the strengths and weaknesses of the case.[79] As the First Circuit has recognized:

> A fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist. In any case, there is a range of reasonableness with respect to a settlement. . . . Moreover, a high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes.[80]

---

[74] *Remeron*, 2005 WL 3008808, at *9.

[75] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537–38 (3d Cir. 2004).

[76] *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005) (quoting *Lupron*, 228 F.R.D. at 97).

[77] *Remeron*, 2005 WL 3008808, at *9.

[78] *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-7192, 2019 WL 6889901, at *9 n.1 (S.D.N.Y. Dec. 18, 2019).

[79] *Grinnell*, 495 F.2d at 462 ("The court is . . . called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." (quoting *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971))).

[80] *Relafen*, 231 F.R.D. at 73 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), and *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002)).

The fact that a proposed settlement "may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."[81]

Here, the $58 million settlement with Shire, combined with the prior settlement with Actavis, would bring the total recovery in the case to $77.9 million. While the direct purchasers' alleged single damages were substantially higher, the combined recovery for the class is significant by any metric. And the amount is eminently reasonable when one considers the serious risks the direct purchasers faced had they not settled with Shire. As explained above, the Court's January 22, 2024 order would likely have required months, if not years, of additional, costly litigation and posed a real threat that the direct purchasers would be unable to proceed in the form of a class—with no guarantee of a recovery if and when they reached trial. The settlement, however, provides a certain, immediate recovery for the class. In light of the best possible recovery and the risks of continued litigation, the settlement is well within the range of reasonableness. Accordingly, the eighth and ninth *Grinnell* factors support final approval.

**B.**     **The direct purchaser proposed allocation plan is fair, adequate, and reasonable.**

A "plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate."[82] Allocations plans are generally considered reasonable

---

[81] *Grinnell*, 495 F.2d at 455; *see also id.* at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 697 (S.D.N.Y. 2019) ("While this may be only fraction of the best possible recovery, courts in this district have approved similar percentages."); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. 09-md-2067, 2014 WL 4446464, at *7 (D. Mass. Sept. 8, 2014) ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982))).

[82] *Hill v. State Street Corp.*, No. 09-cv-12146, 2015 WL 127728, at *11 (D. Mass. Jan. 8, 2015); *see also Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) ("As with the settlement itself, 'the plan of allocation must be fair, reasonable, and adequate.'" (quoting *Tyco Int'l*, 535 F. Supp. 2d at 262)).

when they reimburse class members in a manner commensurate with the type and extent of their injuries.[83] Courts favor allocation plans that apportion funds to class members on a *pro rata* basis because they tend to effectively correlate the amount of harm imposed with the amount of damages received.[84]

The proposed allocation plan here, which is identical to that approved by the Court for the Actavis settlement[85] and similar to those approved in other generic delay pharmaceutical antitrust cases,[86] is fair, reasonable, and adequate. As set forth in the plan and supporting declaration of the direct purchasers' economic expert, Dr. Jeffrey Leitzinger, the direct purchasers propose to distribute the settlement fund (net of Court-awarded attorneys' fees, reimbursed litigation expenses, and administration costs) to class members *pro rata* based on their total net unit purchases of brand and generic Intuniv directly from Shire and Actavis.[87]

The allocation plan will apportion the net settlement precisely using transactional sales data produced by Shire and Actavis in this litigation. To facilitate the process, the settlement administrator, working with Dr. Leitzinger and his staff, will prepare and send an individualized

---

[83] *See Hill*, 2015 WL 127728, at *11 ("A reasonable plan of allocation . . . may allocate funds based on the extent of class members' injuries and 'consider[s] the relative strength and values of different categories of claims.'")

[84] *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 12:15 (6th ed. 2022 & Suppl. 2024) ("For *pro rata* distribution, a class member receives damages in proportion to a certain benchmark that is correlated with, or thought to correlate with, the amount of harm that particular class member received.").

[85] *See* Direct Purchaser Pls.' Proposed Plan of Allocation, ECF No. 480-7; Order Granting Final Approval of Actavis Settlement, ECF No. 551.

[86] *See, e.g.*, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-2878 (D. Mass.), ECF Nos. 590-5, 613 (approved Sept. 19, 2022); *In re Glumetza Antitrust Litig.*, No. 19-cv-5822 (N.D. Cal.), ECF No. 654-7, 706 (approved Feb. 3, 2022); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.), ECF Nos. 1004-5, 1004-6, 1054 (approved Sept. 20, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503 (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018).

[87] *See* Allocation Plan; Decl. of Jeffrey J. Leitzinger, Ph.D. Related to Proposed Allocation Plan and Net Settlement Fund Allocation for Shire Settlement, ECF No. 740-8. The allocation plan and declaration are also available at https://intunivantitrustsettlement.com/court-documents/.

claim form to each member of the class setting forth that class member's qualifying total purchases based on the data.[88] Class members may then accept the pre-populated totals or, if they believe they are inaccurate, may submit their own records or data supporting a different amount.[89] Dr. Leitzinger will take each claimant's combined total net unit purchases of brand and generic Intuniv and divide it by the combined total net unit purchases by all claimants that timely submit valid, accepted claim forms to calculate each claimant's *pro rata* share of the net settlement fund.

The proposed allocation plan is practical and fair method of allocating shares of the net settlement fund proportionate to class members' respective overcharges, was implemented efficiently with the Actavis settlement, and should be approved here.

## IV.    CONCLUSION

For the foregoing reasons, the direct purchasers respectfully request that the Court enter an order (i) finding that notice to the direct purchaser class satisfies due process, (ii) finding the settlement between the direct purchasers and Shire is fair, reasonable, and adequate pursuant to Rule 23(e), (iii) approving the direct purchasers' proposed plan of allocation of the net settlement fund, and (iv) entering final judgment and dismissing the direct purchasers' claims against Shire with prejudice and without costs.

Dated: September 19, 2024

Respectfully submitted,

/s/ Thomas M. Sobol
Thomas M. Sobol (BBO #471770)
Abbye R. Klamann Ognibene (BBO #708584)
Rachel A. Downey (BBO #706639)
Claudia Morera (BBO #709507)
HAGENS BERMAN SOBOL SHAPIRO LLP

---

[88] Allocation Plan ¶ 1.1.

[89] *Id*. ¶ 2.4.

1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
(617) 482-3700
tom@hbsslaw.com
abbyeo@hbsslaw.com
claudiam@hbsslaw.com
racheld@hbsslaw.com

*Lead Counsel for the Direct Purchaser Class*

John D. Radice
Kenneth Pickle
Clark Craddock
April D. Lambert
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
(646) 245-8502
jradice@radicelawfirm.com
kpickle@radicelawfirm.com
ccraddock@radicelawfirm.com
alambert@radicelawfirm.com

Linda P. Nussbaum
Peter Moran
NUSSBAUM LAW GROUP, P.C.
1133 Avenue of the Americas, 31st Floor
New York, NY 10036
(917) 438-9189
lnussbaum@nussbaumpc.com
pmoran@ nussbaumpc.com

Peter Kohn
Joseph T. Lukens
FARUQI & FARUQI LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
(212) 277-5770
pkohn@faruqilaw.com
jlukens@faruqilaw.com

David F. Sorensen
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000

Joseph H. Meltzer
Terence S. Ziegler
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
jmeltzer@ktmc.com
tziegler@ktmc.com

Sharon K. Robertson
Donna M. Evans (BBO #554613)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
srobertson@cohenmilstein.com
devans@cohenmilstein.com

Joseph M. Vanek
Paul E. Slater
David P. Germaine
John P. Bjork
SPERLING & SLATER, LLC.
55 W. Monroe, Suite 3200
Chicago, IL 60603
(312) 641-3200
jvanek@sperling-law.com
pslater@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com

Steve D. Shadowen
Richard M. Brunell (BBO #544236)
Tina J. Miranda
HILLIARD SHADOWEN LLP
1717 W. Sixth St., Suite 370
Austin, TX 78703

dsorensen@bm.net                              (855) 344-2398
ccoslett@bm.net                               steve@hilliardshadowenlaw.com
                                              rbrunell@hilliardshadowenlaw.com
                                              tmiranda@hilliardshadowenlaw.com

*Additional Counsel for the Direct Purchaser Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was served by filing it on the

Court's CM/ECF system, which will deliver notification of filing to all counsel of record.

Dated: September 19, 2024

/s/ Thomas M. Sobol
Thomas M. Sobol